IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HIGHT, an Individual,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO, an Illinois Not for Profit Corporation,<br><br>    Defendant. | Case No.:_____<br><br>JURY TRIAL DEMANDED |

## FEDERAL JURISDICTION COMPLAINT

### I. INTRODUCTION

1. Plaintiff Robert Hight, ("Plaintiff"), by and through his attorneys, MacDonald, Lee & Senechalle, Ltd., files this Complaint against Defendant, University of Chicago ("Defendant"), seeking to vindicate Plaintiff's rights: (1) to be protected from disability discrimination; (2) and (2) for redress for violation of his contractual right as a graduate student enrolled with Defendant. This Complaint is based on personal knowledge as to allegations concerning Plaintiff, and on information and belief as to all other allegations.

### II. PARTIES

2. Plaintiff was, until September 6, 2023, a graduate student in Defendant's Medical Doctor program ("the Medical Program"). Plaintiff currently lives in Cook County, Illinois.

3. Defendant is an Illinois not for profit corporation which operates a university with its main administrative office and main campus located in Chicago, Cook County, Illinois.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction as to the first four counts of the complaint containing four causes of action which arise under federal statutes, and thus under 28 U.S.C.A. 1331, the Court has jurisdiction over the first four counts of the complaint. As to the remaining count of the complaint, the Court has supplemental jurisdiction over the one state law cause of action in said count because the fourth cause of action is so related to the first three claims so as to be part of the same case and controversy. The Court thus has jurisdiction over the final count of the Complaint pursuant to its supplemental jurisdiction under 28 U.S.C.A. 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the main office of the Defendant is located in this District.

### IV. FACTUAL BACKGROUND

**A. Plaintiff's Initial Enrollment, Disabilities, and Defendant's Accommodations**

6. Plaintiff was accepted into and enrolled in the Medical Program beginning in August, 2018, and continuing until September, 2023. During that time, Plaintiff was a medical student in the Defendant's Medical Program. Plaintiff was in his final year of the program prior to his dismissal for alleged unprofessional conduct.

7. Plaintiff has multiple disabilities which, if properly accommodated, would allow him to succeed in the Medical Program. Plaintiff achieved his academic success with appropriate accommodations despite having multiple diagnoses. Plaintiff also had surgery for removal of his gall bladder in May 2023.

8. Despite his numerous challenges, Plaintiff has been a successful science student prior to his enrollment in the Medical Program. Plaintiff had graduated from Emory and Tulane

Universities with bachelor's and master's degrees in biology and was admitted into Defendant's Medical Program.

9. The Defendant recognized Plaintiff's physical and psychological impairments affect major life activities which inhibit his ability to learn. However, he is able to complete his studies with reasonable accommodations and modifications to Defendant's Medical Program.

10. Defendant agreed Plaintiff had disabilities; agreed that it is and was subject to the provisions of the ADA; and Section 504 and agreed to accommodations at multiple points in time.

11. Defendant initially provided Plaintiff accommodations for breaks during testing and extra time on exams upon enrollment in the Medical Program.

**The Effect of Plaintiff's Disabilities and Defendant Accommodation of a Medical Leave of Absence**

12. In Summer, 2021, Plaintiff's physical and psychological disabilities became impossible to cope with when coupled with the stress of the Medical Program.

13. As a result of Plaintiff's difficulties caused by his disabilities, Plaintiff's grades suffered and he received a professionalism concern report associated with absences and failure to report absences. Plaintiff was also put on academic probation.

14. As a result of these issues, Plaintiff requested and received a one year leave of absence. Defendant agreed to the one year medical leave of absence in Summer, 2021.

15. Plaintiff returned from his leave of absence in June, 2022, and completed all outstanding third year coursework after his return. By April, 2023, Plaintiff's academic performance had improved to such a point that he was removed from academic probation and placed on monitored academic status.

**Plaintiff's Progress After his Return in June, 2022 Until the April, 2023, Incident**

16. Plaintiff remained on monitored academic status from April, 2023, until his termination in July, 2023. After he returned from his leave of absence, he was able to both complete his unfinished work and continue to make progress in the Medical Program.

**The Final Incident Which Led to Plaintiff's Dismissal**

17. On or about April 21, 2023, Plaintiff began taking a new medication. This medication caused a reaction in an unexpected way. Specifically, while under the influence of the medication, Plaintiff created an e-mail of another medical student and sent an e-mail regarding evaluations and feedback to one of his instructors.

18. As a result of this e-mail, Defendant began disciplinary proceedings against Plaintiff which ultimately resulted in Plaintiff's dismissal from the Medical Program. For the reasons set forth below, the dismissal proceedings and ultimate dismissal both violated disability discrimination laws and constituted a breach of contract between Plaintiff and Defendant.

**The Contract Between Plaintiff and Defendant**

19. Plaintiff applied and was accepted to Defendant's Medical Program and enrolled in Fall, 2018.

20. Thereafter, Defendant charged tuition and fees to Plaintiff, and Plaintiff paid the tuition and other fees to remain in Defendant's Medical Program.

21. As a result of accommodations, Plaintiff was able to successfully complete the academic requirements of the Medical Program.

22. Defendant published handbooks, catalogs, and policy manuals which became part of a contract between Plaintiff and Defendant.

**The Disciplinary Proceedings Before the CAP**

23. On or about late June or early July, 2023, the disciplinary proceedings against Plaintiff, were referred to the Committee on Academic Promotions("CAP").

24. The CAP met on July 14, 2023, after soliciting Plaintiff's arguments as to why he should not be dismissed.

25. On July 19, 2023, the CAP decided to dismiss Plaintiff from the Medical Program. The CAP listed four reasons in support of CAP's decision to dismiss Plaintiff from Defendant's Medical Program. Specifically, the stated reasons which the CAP used to support its decision to dismiss Plaintiff were: (1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies.

26. Most of the reasons for dismissal were caused by Plaintiff's disabilities and/or caused by the ongoing process of developing appropriate accommodations for Plaintiff.

27. Specifically, Plaintiff's professionalism concern complaints (including the one for which he was dismissed) were caused by manifestations of his disabilities.

28. Plaintiff's monitored academic status was also a direct result of the process where Defendant and Plaintiff worked through and determined appropriate accommodations for Plaintiff. Moreover, after Plaintiff's leave of absence and accommodations, Plaintiff was able to complete his academic work successfully.

29. In making its decision to dismiss, CAP did not make any objective determination whether the reasons for Plaintiff's dismissal were caused by Plaintiff's disability and/or whether Plaintiff's disabilities could have been accommodated.

30. In making its decision to dismiss, CAP did not make any objective determination as to whether Plaintiff's previous academic and professionalism complaints had been ameliorated by the accommodations provided by Defendant.

**Plaintiff's Appeal to the Academic Appeal Committee**

31. Plaintiff timely appealed the CAP decision to dismiss to the Defendant's Academic Appeal Committee ("AAC").

32. Plaintiff was not given the ten days to respond directly to CAP as allowed by the University's Academic Guidelines.

33. Plaintiff was allowed to file a written appeal of the CAP's decision which he completed on August 9, 2023. In his written appeal, Plaintiff pointed out: (1) that the last incident which led to dismissal was a manifestation of his disability; (2) that the previous professionalism complaint was likewise caused and/or exacerbated by disability; and (3) that any claim of academic problems was not supported by evidence after Plaintiff's return from his leave of absence.

34. Plaintiff also produced numerous evaluations and statements showing that Plaintiff could succeed in the program with appropriate accommodations.

35. On September 6, 2023, the AAC affirmed the CAP's decision to dismiss Plaintiff.

36. The AAC did not make any effort to determine whether his professionalism complaints (especially the final professionalism complaint) were manifestations of disability. The AAC likewise did not determine whether the manifestations could be accommodated. The AAC also did not consider that Plaintiff was able to complete his studies with the accommodations provided.

37. Rather, the AAC rejected Plaintiff's assertions regarding his disability by relying on various post hoc reasons for dismissing Plaintiff including alleged professionalism concerns which none of Defendants' agents considered important enough to bring up at the time the alleged

conduct occurred. The AAC also relied on Plaintiff's protected conduct to request feedback and challenge evaluations to dismiss Plaintiff.

**Procedural Irregularities in Violation of Defendant's Policies**

38. The CAP and AAC decisions were tainted by multiple procedural violations of the Defendant's own policies including:

    a. The Defendant, through AAC and CAP, used as a basis supporting dismissal, that Plaintiff used the Defendant's University Grievance Policy for Graduate Students. Plaintiff requested clarification and feedback for grades and evaluations. Plaintiff followed the published policy sections titled "Complaints or Disputes about Grades and Academic Evaluations" and "Informal Resolution Options". The CAP and AAC then listed instances of Plaintiff requesting feedback for grades and evaluations as supporting evidence for his dismissal. This is in violation of the University Grievance Policy's "Statement of Non-Retaliation."

    b. Defendant retaliated against Plaintiff in violation of its own Student Treatment Policy (published by the Medical Program). Plaintiff reported two residents for mistreatment, following the section titled "Reporting Mistreatment" in the Student Treatment Policy. The Defendant, through the CAP and AAC, listed those instances as supporting evidence for his dismissal. This is in violation of "Reporting Mistreatment" subsection 5, which states, "The University prohibits retaliation against any person who exercises any rights or responsibilities under this policy."

    c. The Defendant failed to disclose known information that could impact Plaintiff's standing as a student prior to CAP's meeting to dismiss Plaintiff, as required by page 21 of the Defendant's Academic Guidelines. Information known to the Dean

7

      before the meeting and deliberated at the meeting was not disclosed to Plaintiff until after the meeting in violation of the Academic Guidelines.

d. The Defendant failed to allow Plaintiff ten (10) days to respond to CAP's decision to dismiss him (before the formal appeal), as outlined on page 21 of the Academic Guidelines. The Defendant took advantage of this failure. To wit, the AAC stated in response to Plaintiff's formal appeal that Plaintiff failed to provide information regarding his prescription medication reaction to CAP. Plaintiff would have been able to provide such information if given the allowed 10 days to respond to the CAP's decision.

e. The Defendant failed to allow Plaintiff ten (10) days before CAP's decision became effective as allowed by page 21 of the Academic Guidelines. His dismissal became effective immediately with access to campus completely revoked.

f. The Defendant failed to notify the Plaintiff of all committee members of the CAP and AAC. The University Student Manual section on Area Disciplinary Systems indicates: "The Dean of Students (or designee) will notify the respondent of the members of the Area Disciplinary Committee as soon as practicable before the hearing." The Defendant's failure prevented Plaintiff from being able to request a substitution if the participation of any individual on the Committee poses a conflict of interest. Plaintiff was never notified of the committee members, depriving him of his right to request substitution despite having prior substantive interactions with at least two committee members.

g. Plaintiff was not allowed to make an appeal and oral presentation to the AAC. Page 26 of the Academic Guidelines states : "The student may request to appear before

      the Academic Appeal Committee to answer questions or to present any new relevant information. This request will be granted unless the appearance would raise issues of safety for the committee members." Plaintiff was not allowed to present information to the AAC. He was allowed only three (3) minutes to introduce himself, which was wholly insufficient given the gravity of the appeal and the amount of information Plaintiff had prepared to present.

    h.  Defendant's handbook contains an insertion that the handbook does not constitute a contract. The Defendant's simultaneous: (1) promise of procedural protections in said handbook; (2) with a claim that the procedural protections are not enforceable contractual promises; constitutes bad faith.

    i.  Defendant has a published policy which prohibits disability discrimination as defined by the anti-discrimination laws.

## FIRST CLAIM FOR RELIEF
**Violation of the Americans with Disabilities Act and Americans with Disabilities Amendments Act, Title III- Discrimination on the basis of disability and for Refusal to Accommodate**

39.    Plaintiff incorporates by reference Paragraphs 1-38 above.

40.    Plaintiff has disabilities and is a member of the protected class under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act ("ADA and ADAAA"). 42 U.S.C.A. Sec. 12101 et seq. He has impairments that affect major life activities; or in the alternative, has a record of said impairments; and/or, in the alternative, was regarded by the Defendants as having impairments which affected his major life activities. Plaintiff's impairments are set forth above.

41. Plaintiff's impairments affect major life activities of learning, walking, thinking, and working. Defendant agrees that Plaintiff has disabilities within the meaning of the statute and has agreed to provide accommodations to Plaintiff.

42. Defendant is in the business of providing public accommodations within the meaning of Title III of the ADA and ADAAA. As a result, Defendant is required to not discriminate based on disability and to provide reasonable modifications to its Medical Program in order to allow Plaintiff to participate in the Program.

43. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

44. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

45. Plaintiff can complete his studies if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence.

46. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism were subject to reasonable modifications to accommodate Plaintiff's disability.

47. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable modifications could and had accommodated Plaintiff allowing him to succeed in the Medical Program

48. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and determining whether reasonable modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff.

49. Defendant's actual reasons for dismissal: (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance; both could have been or were accommodated through reasonable modifications of the Medical Program as required by the ADA and ADAAA.

50. Upon information and belief, Defendant's additional reasons for dismissal listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

51. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of disability which could have been accommodated.

52. Defendant is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. Defendant is engaged in an industry affecting commerce and, at all times pertinent hereto, was providing public accommodations within the meaning of the ADA and ADAAA.

53. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

54. Plaintiff is subject to irreparable harm in not being able to complete his studies.

11

55. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

56. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

57. Plaintiff is entitled to injunctive relief under 28 CFR 36.501 for violations of the ADA and ADAAA.

58. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

WHEREFORE, Plaintiff, Robert Hight, respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as student in Defendant's Medical Program and entry of an injunction overturning the Defendant's decision to expel Plaintiff from Defendant's Medical Program;

B. Declaratory relief removing all professionalism complaints and all disciplinary proceedings from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct;and

D. An award for damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### Violation of Section 504 of the Rehabilitation Act of 1973 for Discrimination on the Basis of Disability and Refusal to Accommodate Disability

59. Plaintiff incorporates by reference Paragraphs 1-58 above.

60. Plaintiff has a disability/handicap and is a member of the protected class under Section 504 of the Rehabilitation act of 1973 ("Section 504"). 29 U.S.C.A. 794. He has an impairment that

affects major life activities; or in the alternative, has a record of said impairment; and/or, in the alternative, was regarded by the Defendants as having an impairment which affected his major life activities for the reasons set forth above.

61. Defendant receives federal aid in the form of federal tuition grants, guaranteed federal tuition loans and other federal student aid programs. Defendant also receives research grants from the federal government. Defendant is thus subject to the requirements of Section 504 to accommodate students with handicaps.

62. Beginning in 2018, Defendant agreed to accommodate Plaintiff's handicaps and admitted Defendant was subject to the requirements of Section 504.

63. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

64. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

65. Plaintiff can complete his studies if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence. Plaintiff can perform the academic requirements of Defendant's Medical program with a reasonable accommodation.

66. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism could be reasonably accommodated.

67. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable accommodations could be and had been allowing Plaintiff to succeed in the Medical Program

68. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and determining whether reasonable modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff.

69. Defendant's actual reasons for dismissal: (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance; both could have been or were accommodated through reasonable accommodations of the Medical Program as required by Section 504.

70. Upon information and belief, Defendant's additional reasons for dismissal listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

71. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of disability which could have been accommodated.

72. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

73. Plaintiff is subject to irreparable harm in not being able to complete his studies.

74. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

75. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

76. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

77. Defendant's agents have discriminated against Plaintiff in lieu of properly accommodating Plaintiff's Disabilities as required by Section 504 by harassing Plaintiff, disciplining Plaintiff; ; and ultimately dismissing Plaintiff from the Program.

78. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner or would have been able to perform his academic duties with a reasonable accommodation.

79. Plaintiff has a handicap within the meaning of Section 504 of the Rehabilitation Act of 1973.

80. Plaintiff has a statutory right to be free from discrimination.  Plaintiff will be subject to irreparable harm if the Court fails to enjoin further discrimination or craft other relief necessary to make Plaintiff whole.  29 U.S.C.A. 794(a).  Plaintiff thus seeks an injunction and reinstatement to the Program to allow Plaintiff to complete his studies.

81. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of time, earning potential, and loss of tuition and fees, and emotional distress and will suffer further if he is not reinstated to the Medical Program.

WHEREFORE, Plaintiff, Robert Hight respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as a graduate student in the Program with all rights and privileges;

B. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for liquidated damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## THIRD CLAIM FOR RELIEF
### Breach of Tuition Contract Under Illinois State Law

82. Plaintiffs restate and reallege Paragraphs 1-81 above.

83. Plaintiff entered into a tuition contract with Defendant by applying to the Program in 2018 and paying tuition and fees to the Defendant until his dismissal.

84. Plaintiff was completing the academic requirements of the Program satisfactorily until his improper expulsion on September 6, 2023.

84. Defendant published academic guidelines and handbooks for the Medical Program. The relevant portions of said policies are fully set forth in Paragraph 38 of this Complaint.

85. Defendant's policy protects Plaintiff from discrimination based on disability and guarantee the right to reasonable accommodation for Plaintiff's disabilities.

86. For the reasons set forth above in Counts I and II, Plaintiff has violated the disability discrimination laws and thus breached the tuition contract with Plaintiff.

87. Defendant's publications constitute contractual promises to Plaintiff. Defendant breached its promise to not discriminate against Plaintiff based on his disability. Defendant's professionalism complaints and subsequent discipline and dismissal were a breach of contract for the reasons set forth in Counts I and II. Plaintiff's dismissal was undertaken in bad faith and for arbitrary reasons.

88. Defendant also provided procedural protections which it violated in dismissing Plaintiff as set forth in Paragraph 38 of this Complaint.

89. Defendant violated the procedural protections set forth in Defendant's published material when conducting Plaintiff's dismissal proceedings.

90. Defendant's disregard and failure to follow its own published procedures resulted in Plaintiff's dismissal for arbitrary and bad faith reasons.

91. Plaintiff has a clear right to finish his studies in light of the breaches of contract.

92. Plaintiff is subject to irreparable harm if he is not immediately reinstated to the Program.

93. Plaintiff has a right to specific performance given the unique nature of the services provided.

94. In the alternative to the allegations in Paragraph 90, Plaintiff has been damaged by the breaches of contract in the form of lost possible wages, lost opportunities, and lost time as a result of Defendant's breaches of contract.

WHEREFORE, Plaintiff, Robert Hight, requests the following of the Court:

A. That a judgment of breach of contract be entered against the Defendant;

B. That the Court order and mandate the Plaintiff be fully reinstated to his position in the Program with all rights and privileges;

C. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

D. In the alternative, that Plaintiff be awarded damages for Defendant's breach of contract.

E. For such further and additional relief as the Court deems appropriate.

**95. DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                  Respectfully Submitted,
                                                  By: _____/S Joseph P. Selbka_____
                                                           One of Plaintiff's Attorneys

Joseph P. Selbka
MACDONALD, LEE & SENECHALLE, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
Attorney No.: 06238063
pleadings@pmllegal.com
(847) 310-0025