**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Robert Hight, *Plaintiff*, v. University of Chicago, *Defendant.* | No. 24 CV 2525 <br><br> Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Hight brings this action against Defendant University of Chicago (University) alleging violations of the Americans with Disabilities Act (ADA) on the basis of a disability and for refusal to accommodate; and under Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act) for discrimination on the basis of a disability and refusal to accommodate a disability. Hight also brings a claim for breach of tuition contract under Illinois law. [Dkt. 20 at 10–18.][1] The University moves to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. 25.] For the reasons explained below, the motion is granted in part and denied in part.

**I.  Legal Standard**

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–

---

[1]  Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). A plaintiff's claim must be "plausible, rather than merely speculative," which requires a plaintiff to allege "just enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up).

## II. Background[2]

In August 2018, Hight enrolled as a student in the University's medical program. [Dkt. 20, ¶ 6.] Throughout his time as a student, Hight paid tuition and fees. [*Id.* at ¶ 21.] Hight was in his final year of the program in the fall of 2023 when he was dismissed. [*Id.* at ¶ 6.]

Hight has multiple disabilities arising out of physical and medical diagnoses. [*Id.* at ¶ 8.] His diagnoses include sickle-cell anemia, asthma, autoimmune conditions, chronic fatigue, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and bipolar disorder. [*Id.*] Hight also had his gall blader removed in May 2023. [*Id.*] These conditions weakened Hight, which caused him to experience difficulties learning, thinking, and walking. [*Id.*] In addition, Hight's ability to think clearly and regulate his emotions are impeded by his

---

[2] The following factual allegations are taken from Hight's Amended Complaint and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018)

generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and bipolar disorder. [*Id.*] The University knew about Hight's disabilities and made reasonable accommodations and modifications to its medical program for him such as adding extra time and breaks when he took exams. [*Id.* at ¶¶ 10–12.]

During the summer of 2021, Hight struggled to cope with the stress of the medical program in combination with his disabilities. [*Id.* at ¶ 13.] His grades fell, and he received a professionalism concern report because of his absences and failure to report those absences. [*Id.* at ¶ 14.] Hight was put on academic probation and requested a one-year medical leave of absence. [*Id.* at ¶¶ 14–15.] The University granted this request, and his leave ended in June 2022. [*Id.* at ¶ 16.] Upon his return, Hight completed his outstanding coursework and was moved from academic probation to monitored academic status. [*Id.*] He remained on monitored academic status throughout the rest of his time in the program. [*Id.* at ¶ 17.]

In April 2023, Hight began taking a new medication, which caused a reaction inhibiting his ability to control his actions and emotions. [*Id.* at ¶ 18.] While taking this medication, Hight created an email account under the name of another student and used that account to send evaluations and feedback to one of his instructors. [*Id.*] This prompted the University to initiate disciplinary proceedings. [*Id.* at ¶ 19.] These disciplinary proceedings were referred to the University's Committee on Academic Promotions (CAP), which met after receiving Hight's arguments about why he should not be dismissed. [*Id.* at ¶¶ 24–25.] Five days later, the committee decided to dismiss Hight and listed four reasons for its decision: "(1) repeated unprofessional behavior;

3

(2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies." [*Id.* at ¶ 26.] The CAP decision did not make factual findings regarding whether the professionalism complaints brought against Hight were traceable to his disabilities or whether it was possible to accommodate any disability. [*Id.* at ¶¶ 28–31.]

Hight appealed his dismissal to the Academic Appeal Committee (AAC) in a timely manner but was not given the ten-day response period articulated in the University's Academic Guidelines. [*Id.* at ¶¶32–33.] Hight filed a written appeal expressing his belief that the incidents at issue resulted from or were exacerbated by his disability and that there was no evidence supporting a finding of academic problems following his return from the leave of absence. [*Id.* at ¶ 34.] Nevertheless, the decision to dismiss Hight was affirmed, but the affirmance did not make factual determinations regarding whether his disabilities could have been ameliorated through reasonable accommodations. [*Id.* at ¶¶ 36–38.]

Hight identifies eight procedural violations that he claims tainted the decision to dismiss him. [*Id.* at ¶ 39.] These include, for instance, alleged violations of the University Grievance Policy's "Statement of Non-Retaliation" and not adhering to the policies articulated in the University's Academic Guidelines. [*Id.*] Hight characterizes the tension between the promised procedural protections in these guidelines and a lack of enforceability as bad faith on the University's part. [*Id.*] This lawsuit followed.

4

## II. Analysis

### A. Disability Discrimination Claims

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Discrimination" under this provision includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

A plaintiff must demonstrate the following to establish a prima facie case of discrimination within the frameworks of both the ADA and the Rehabilitation Act: "(1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (*citing Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). Under the ADA, a plaintiff need only show that his disability was *a* reason for the discrimination he experiences, whereas under the Rehabilitation Act, the plaintiff's disability must be the sole reason for the discrimination. *Compare* 42 U.S.C. § 12132, *with* 29 U.S.C. § 794. Under the

5

Rehabilitation Act, the plaintiff also bears the additional burden of showing "that the program in which he was involved received federal financial assistance." 29 U.S.C. § 794(a).[3]

The University argues that Hight's Amended Complaint fails to adequately plead the second and third elements of a disability discrimination claim. As to the second element, the University says Hight has failed to plead that he was "otherwise qualified" for the program; as to the third element, it maintains that the Amended Complaint does not contain facts supporting an inference that dismissal was "based on" his disability. Rather, the University argues the pleading "concedes that [Hight] was dismissed for conduct that the University deemed to fall below its academic and professionalism standards." [Dkt. 26 at 6–9.] Hight counters that he has properly alleged he was qualified to complete the academic portion of the medical program and has adequately alleged the reasons for his dismissal were traceable to his disability. [Dkt. 29 at 5, 8.]

The Court agrees Hight has pled facts sufficient to establish these elements of his claims. As to the second element, to satisfy the "otherwise qualified" requirement in the university setting, all Hight must allege is an ability "to meet all of the program's requirements in spite of [his] disability, with or without a reasonable accommodation." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). The Amended Complaint alleges Hight could do so and that the University had previously

---

[3] There is no dispute that Hight adequately alleges he suffers from a "disability" as defined by the pertinent statutes, and that he has alleged the University receives federal financial assistance. [Dkt. 20 at ¶ 62.]

6

provided accommodations that allowed Hight to complete his requirements, such as additional time and breaks on exams. [Dkt. 20 at ¶ 10 ("Plaintiff is able to complete his studies and comply with the requirements of the Medical Program with reasonable accommodations and modifications to Defendant's Program."); ¶ 12 ("Defendant initially provided Plaintiff accommodations for breaks during testing and extra time on exams upon enrollment in the Medical Program.").] He also alleges that following an agreed upon leave of absence, Hight completed his outstanding course work, moved from academic probation to monitored academic status, and progressed to the medical program's final year.[4] [*Id.* at ¶¶ 1, 15–17.] This is sufficient at the pleading stage.

As to the third element, both the Rehabilitation Act and the ADA prohibit discrimination "on the basis of disability" or "by reason of" a disability. *Khan*, 879 F.3d at 843; *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (the "statutory language in both the Rehabilitation Act and the ADA requires proof of causation.") The University argues that it is not a violation of the ADA or Section 504 to dismiss a university student "because of misconduct, even where such misconduct is allegedly related to a disability." [Dkt. 26 at 7.] In support, the University cites *Brumfield v. City of Chicago* for the proposition that "[a]n employer may fire an employee for engaging in unacceptable workplace behavior without

---

[4] Readmission after an academic break also allows for the reasonable inference that an institution believed a student was otherwise qualified. *See Santa Maria v. Loyola Univ. of Chi. Stritch Sch. of Med.*, No. 24 C 1698, 2024 WL 4119159 at *6 (N.D. Ill. Sept. 9, 2024) (noting that "[p]resumably, Stritch would never have offered Santa Maria readmission if the school felt that her failures rendered her genuinely unqualified to be a medical student").

7

violating the ADA (or the Rehabilitation Act), even if the behavior was precipitated by a mental illness." 735 F.3d 619, 630–31 (7th Cir. 2013). But *Brumfield* is distinguishable insofar as "Brumfield never actually allege[d] that the City suspended or fired her by reason of her alleged disability." *Id.* at 630 ("We note first that her complaint is vague on nearly everything and provides few specifics on the nature of her disability or the circumstances surrounding her suspensions and discharge.")

Here, by contrast, Hight alleges he has a disability and alleges that events the University characterized as "unprofessional conduct," which ultimately led to his dismissal, were traceable to his disability. [Dkt. 20 at ¶ 28 (connecting "professionalism concern complaints" he received to his disabilities); ¶ 29 (stating his "monitored academic status was also a direct result of the process where Defendant and Plaintiff worked through and determined appropriate accommodations" for Hight's disabilities); ¶ 52 (identifying the email incident as "a manifestation of disability which could have been accommodated.").] Hight further alleges that the additional reasons for his dismissal "were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated." [*Id.* at ¶¶ 51, 71.] These allegations distinguish this case from the deficiencies in *Brumfield* such that Hight has alleged his dismissal was based on his disability.

The University also argues that Hight has pled himself out of court by citing "the many reasons why he was dismissed that have nothing to do with any purported

8

disability." [Dkt. 26 at 8.] It points to Hight's allegations that he began taking a new medication in April 2023; that his medication caused him to create and send an inappropriate email; that there were "multiple academic reasons justifying his dismissal"; and that the Amended Complaint acknowledges "repeated unprofessional behavior" and "significant and sustained academic performance deficiencies." [*Id.*]

It is true, as the University argues, that Hight alleges that when he began taking a new medication in April 2023, it "impaired" his ability to "think and control his emotions and actions," resulting in the inappropriate e-mail. [Dkt. 20 at ¶18.] But he also alleges that the "professionalism concerns" cited by CAP in its decision to dismiss him were "manifestations of his disabilities" and "were caused by [his] disabilities and/or caused by the ongoing process of providing Plaintiff with appropriate accommodations." [*Id.* at ¶¶ 27–28.] He also alleges that CAP "did not make a determination . . . on whether the final professionalism complaint was caused by the medication reaction" or determine whether his "medication reaction which caused the final professionalism concern could be accommodated." [*Id.* at ¶ 28.] And he claims that his "monitored academic status" itself was an accommodation for his disabilities. [*Id.* at ¶¶ 27, 29.] Taken together, these allegations suffice, at least at the pleading stage, to proceed with his claim that the discrimination he suffered was "on the basis of disability" or "by reason of" a disability.

## B. Refusal to Accommodate Claims

To establish a failure to accommodate claim, Hight must allege the following: "(1) [he] is a "qualified individual with a disability"; (2) the defendant was aware of [his] disability; and (3) the defendant failed to reasonably accommodate [his]

9

disability." *Gratzl v. Off. of Chief Judges of the 12th, 18th, 19th, & 22nd Jud. Circs.*, 601 F.3d 674, 678 (7th Cir. 2010) (*quoting EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir.2005)). Generally, a plaintiff "must *request* an accommodation for his disability in order to claim he was improperly *denied* an accommodation under the ADA." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

The University argues that Hight did not request an accommodation and even if he had, the school had no obligation to accommodate him by lessening the program's professionalism standards. [Dkt. 26 at 10–12.] Hight responds that the dismissal proceedings themselves should have included an accommodation in the form of an individualized assessment and that the University failed to accommodate his medication reaction. [Dkt. 29 at 10–12.]

Overall, Hight's amended complaint fails to sufficiently plead all three elements of a refusal to accommodate claim under either the ADA or the Rehabilitation Act. He easily pleads the first two requirements—that he had a disability and that the accommodations provided by the University demonstrated its awareness of that disability. [Dkt. 20 at ¶¶ 8, 10–12, 18.] Hight does not appear to challenge the sufficiency of those accommodations, indeed, he mentions them as effective tools for helping him complete his studies. [*Id.* at ¶¶ 10, 22.] Hight's response brief confusingly suggests that the University's duty when making dismissal decisions in this context required an "individualized assessment," citing to the "direct threat" language of 28 C.F.R. § 36.208. [Dkt. 29 at 6–8.] But as the University points

10

out, the "direct threat" regulation applies when a student "poses a direct threat to the health or safety of others," which is not the case here. [Dkt. 32 at 3–5.][5]

Here, the University's dismissal proceedings evaluated conduct that already occurred, rendering any "direct threat" analysis irrelevant to the question of whether Hight requested and was denied an accommodation. And more fundamentally, even if this were an appropriate theory for Hight to pursue, nothing about the need for an "individualized assessment" is alleged in the Amended Complaint. The failure to plead this element is therefore fatal to his accommodation claims.

Seventh Circuit precedent is clear that the Court should err on the side of allowing an amendment; "a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). The Court, therefore, dismisses Counts I and II without prejudice to the extent they proceed on a refusal to accommodate theory. Hight may file an amended complaint if he believes he can do so consistent with this opinion and Rule 11. Otherwise, the dismissal will convert to one with prejudice.

### C. Breach of Contract Claims

"To establish a breach of contract in Illinois, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the

---

[5] The full text of 28 C.F.R. § 36.208(b) illustrates how inapposite it is to Hight's case: "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices or procedures or the provision of auxiliary aids or services will mitigate the risk."

11

plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). A contract between a student and a university can be express or implied-in-fact, but either way "a student must point to an identifiable contractual promise that the defendant failed to honor." *Id.* at 883–84. When a student sues a university because of "rejections, expulsions, and dismissals" the "student bringing such a claim must show that the adverse academic decision was made arbitrarily, capriciously, or in bad faith." *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 670 (7th Cir. 2023) (cleaned up).

The University argues that the policies identified in Hight's complaint are not contractual, and even if those policies created a contract, Hight has neither identified a specific contractual promise that was violated nor specified arbitrary, capricious, or bad faith behavior. [Dkt. 26 at 14–16.] Hight insists that the cited policies did create a contract, which the University breached by wrongfully dismissing him, a move Hight characterizes as bad faith. [Dkt. 29 at 12–13.]

In the breach of contract setting, the Seventh Circuit has recognized that a "formal university-student contract is rarely employed" so "the general nature and terms of the agreement are usually implied. As such, the school's catalogs, bulletins, circulars, regulations, and other publications, and customs become part of the contract." *Gociman*, 41 F.4th at 883 (cleaned up) (*quoting Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)). Here, Hight's complaint alleges two separate breaches of contract: (1) violating the policy not to discriminate based on disability and (2) failing to provide promised procedural protections. As to the first alleged

12

policy breach, the University has a policy prohibiting disability discrimination. But as the University points out, Illinois law does not recognize a contractual obligation arising from a party's preexisting legal obligations. *Moehling v. W. E. O'Neil Constr. Co.*, 170 N.E.2d 100, 106 (1960) ("[A] promise to do something one is already obligated to do is no consideration and creates no new obligation."). This premise extends to statutory obligations such as those created by the ADA and Rehabilitation Act. *Doe v. McHenry Cnty. Coll.*, No. 17 CV 4247, 2020 WL 5209834, at *5 (N.D. Ill. Sept. 1, 2020) ("The statement by the College that it prohibits discrimination and harassment based on disability in compliance with the ADA is a general statement of compliance with existing anti-discrimination law. It did not give rise to a specific independent contractual obligation.") Therefore, dismissal is appropriate to the extent the breach is premised on the University's policy of complying with the ADA.

As to the second alleged policy breach, Hight has pled sufficient facts to establish that an implied contract arose from the specific procedural protections articulated in the University's guidelines regarding disciplinary proceedings. [Dkt. 20 at ¶¶ 87–88.] Though he does not use the phrase, the Amended Complaint alleges that an implied contract arose out of the procedural protections outlined in the University's student handbooks. [*Id.* at ¶¶ 21–23, 39, 88–89.] Hight identifies specific procedures in the handbooks that he believes were not adhered to during his dismissal proceedings, such as violating nonretaliation policies, failing to comply with disclosure requirements, and not following specified timelines. [*Id.* at ¶ 39.] This "suffices for the present" to show there was an "identifiable contractual promise"

13

regarding procedural protections for the disciplinary process. *Hernandez*, 63 F.4th at 668 (breach of implied contract claim survived dismissal based on university's identifiable contractual promise to provide an in-person, on-campus university experience to students in exchange for tuition and fees, which student alleged were based on representations made, among other places, in a course catalogue and other official materials.) At this stage, the procedural protections Hight describes provide enough for the Court to reasonably infer "an identifiable contractual promise" as required to survive a motion to dismiss. *Id.* at 667–68.

Finally, Hight alleges sufficient facts to meet the arbitrary, capricious, or bad faith standard that applies to breach of contract claims arising out of university dismissal proceedings. When a student challenges an adverse academic action under a breach of contract theory, the student must meet a heightened pleading standard by also showing that the institution acted in an arbitrary or capricious way or in bad faith. *Id.* at 670. It is true that Hight uses the phrase "bad faith" in a somewhat conclusory fashion. [Dkt. 20 at ¶¶ 39(h), 87, 90.] But taken as true, the allegations plausibly suggest that, for an unknown reason, the University departed from its usual disciplinary process by, among other things, not providing Hight a full ten days to appeal CAP's decision, which allowed Hight's dismissal to become effective immediately rather than in the usual ten-day period. [*Id.* at ¶ 39(d), (e).] As such, the motion to dismiss the breach of contract claim is denied.

### D. Monetary and Emotional Distress Damages

Finally, the University requests that the court strike Hight's requests for monetary damages regarding his ADA claim, and for emotional distress damages on

14

his Rehabilitation Act and breach of contract claims pursuant to Federal Rule of Civil Procedure 12(f). The University is correct. Private parties cannot recover monetary damages under Title III of the ADA; only injunctive relief is available. 42 U.S.C. § 12188(a)(1); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) ("[T]he statute itself makes clear that injunctive relief under Title III of the ADA (and only injunctive relief—damages are not available under Title III) is available.") Emotional distress damages are not available for violations of the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022); *McDaniel v. Syed*, 115 F.4th 805, 823 n.12 (7th Cir. 2024) (a plaintiff can win compensatory damages under the Rehabilitation Act but not damages for emotional distress). And Illinois generally does not allow plaintiffs to recover "punitive and emotional distress damages for breaches of contract." *Parks v. Wells Fargo Home Mortg., Inc.*, 398 F.3d 937, 940 (7th Cir. 2005) (*citing Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 183–84 (Ill. 1986)).

Hight's complaint primarily seeks equitable remedies in the form of reinstatement to the medical program and removing professional complaints from his student files. For a few claims, however, he seeks "damages in the alternative." [*See, e.g.*, Dkt. 20, ¶¶59, 82, 94.] To the extent Hight's complaint seeks any form of relief (including damages) which are unavailable as discussed above, the motion is granted.

## IV.    Conclusion

For these reasons, the University's motion to dismiss is granted in part and denied in part. Hight's refusal to accommodate claims under the ADA and Rehabilitation Act are dismissed without prejudice. Hight's breach of contract claim for discriminating based on disability is dismissed with prejudice. The motion is otherwise denied.

Enter: 24-cv-2525
Date:  October 31, 2024

_____
Lindsay C. Jenkins
United States District Judge