IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HIGHT, | |
| Plaintiff, | Case No: 24-cv-02525 |
| v. | Honorable Lindsay C. Jenkins |
| UNIVERSITY OF CHICAGO, | |
| Defendant. | |

**DEFENDANT UNIVERSITY OF CHICAGO'S RESPONSE TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

In his Motion for Leave to File Third Amended Complaint ("Motion"), Plaintiff seeks to amend his breach of contract claim by adding allegations claiming that the University of Chicago's Pritzker School of Medicine ("PSOM") somehow violated its Academic Guidelines by considering his academic performance deficiencies along with several other factors in deciding that Plaintiff should be dismissed after Plaintiff admittedly impersonated another student in creating a fake Gmail address and sending an e-mail to a supervising medical resident criticizing the resident's grading and evaluation practices. *See* Mot. at ¶¶ 8-16. Plaintiff's Motion should be denied because the proposed amendment is untimely, would be futile, and would prejudice the University. Plaintiff's Motion is premised on a mischaracterization of the deposition testimony of multiple University of Chicago ("University") witnesses. More importantly, it ignores the plain language of the provisions in the PSOM Academic Guidelines—which have been available to Plaintiff since long before he filed this lawsuit—that address grading, requirements for graduation, and the broad discretion afforded to the Committee on Academic Promotions ("CAP") and other PSOM decisionmakers when it comes to determining whether a student may be dismissed. In sum,

1

Plaintiff has not shown "good cause" to permit his untimely amendment, and his Motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on March 28, 2024. Dkt. 1. In response to the University's motion to dismiss, he filed his First Amended Complaint ("FAC") on July 3, 2024. Dkt. 22; *see also* Dkt. 9-10, 17, 21. The University again moved to dismiss, and on October 31, 2024, the Court granted the University's motion in part and denied it in part. Dkt. 25-26, 29, 32, 33. Plaintiff then filed his Second Amended Complaint ("SAC") on November 8, 2024. Dkt. 35. The University moved to dismiss the SAC. Dkt. 38, 39, 44, 48. Plaintiff also moved for reconsideration of the Court's order dismissing the FAC in part. Dkt. 36, 41, 45. The Court denied both the motion to reconsider and the motion to dismiss the SAC. Dkt. 49. The University then filed its Answer to the SAC on February 2, 2025, amending that Answer on May 12, 2025. Dkt. 51, 54. In the meantime, the Parties engaged in fact discovery through the fact discovery close date of August 29, 2025. *See* Dkt. 56. Now, more than a year after he filed the SAC and after the close of fact discovery, Plaintiff seeks leave to file a Third Amended Complaint ("TAC"). Dkt. 62.

## LEGAL STANDARD

Where—as here—leave to amend is sought after the deadline for amendments, Federal Rules of Civil Procedure ("Rules") 16(b)(4) and 15(a)(2) govern the district court's consideration of the request. *Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014). Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ P. 15(a)(2). Rule 16(b)(4) provides that "[a] schedule may be modified for only good cause and with the judge's consent." Fed. R. Civ. P. 16(a)(4).

2

While leave should be "freely give[n] when justice so requires" pursuant to Rule 15(a), the "court may deny leave for several reasons including: undue delay, bad faith, or dilatory motive, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Kessler v. Gross*, No. 21-CV-03852, 2024 WL 6884839, at *1 (N.D. Ill. Sept. 16, 2024), citing *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004); *see also* Fed. R. Civ. P. 15(a)(2). Rule 16(b)(4), however, sets a "heightened good-cause standard" for motions to amend that are filed after the deadline to amend has expired. *Adams*, 742 F.3d at 734; *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 719-720 (7th Cir. 2011). For such proposed amendments, the court should consider whether there is good cause to permit a late amendment before assessing whether the requirements of Rule 15(a)(2) are met. *Adams*, 742 F.3d at 734; *Alioto*, 651 F.3d at 719-720. "The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022).

**ARGUMENT**

Plaintiff's Motion is both untimely and futile, and his rationale for the dilatory nature of his filing is not supported by the record evidence. Moreover, the University would be prejudiced if Plaintiff were granted leave to amend for a fourth time. For these reasons, the Motion should be denied. Prior to turning to these grounds for denial, the University addresses Plaintiff's mischaracterization of the record evidence he cites in support of his Motion.

**I.**     **Plaintiff Mischaracterizes the Deposition Testimony of Multiple University Witnesses.**

In his Motion, Plaintiff mischaracterizes the deposition testimony of multiple University witnesses in attempt to justify his late request to amend his complaint again. As explained in Section III below, this is a distraction from the plain language of the Academic Guidelines that

3

form the basis of the additional allegations Plaintiff seeks to add to his breach of contract claim at this late stage and therefore should not even be relevant to the Court's consideration of this Motion. Moreover, as explained in Section II below Plaintiff ignores the fact that the deposition testimony upon which he seeks to rely does not present any new information to justify a further amendment at this stage of the case; rather, all relevant information has been available to Plaintiff since July 2023 when he was notified in writing of the reasons underlying the recommendation of the CAP that he should be dismissed.

In his Motion, Plaintiff alleges that he "learned of an additional procedural violation related to grading practices" through the depositions of Dr. James Woodruff, Dr. Jeanne Farnan, Dr. Chelsea Dorsey, Dr. Vineet Arora, and Dr. Mark Anderson. Mot. ¶¶ 5-6. He argues that while Dr. Dorsey testified that CAP dismissed Plaintiff "(in part) for consistent poor academic performance," Mot. ¶ 11, Dr. Farnan allegedly testified that "Plaintiff should not have been subject to dismissal for being at the bottom of his class according to the published policies of the Defendant." Mot. ¶ 10 (citing Mot. Ex. E at pages 11-12, 27-30). This misrepresents the record evidence, particularly Dr. Farnan's testimony, in multiple ways.

As a preliminary matter, Dr. Farnan testified as a corporate representative pursuant to Rule 30(b)(6) on the topic of PSOM's clerkship grading policies. Dep. of Jeanne Farnan, August 20, 2025, 7:4-11 (filed under seal at Dkt. 66).[1] She was not designated to address PSOM's grading practices in the first and second year didactic courses that precede the clinical clerkships, which begin in the third year. *See id.*; *see also* Ex. 1 (Farnan Exhibit 101) at UC0001141-UC0001143,

---

[1] In his Motion, Plaintiff cited to the deposition testimony of Dr. Farnan as "Exhibit E," and then filed the deposition of Dr. Farnan as a sealed document at Dkt. 66. Because Plaintiff has already filed this deposition testimony under seal, the University cites to the sealed document in lieu of attaching it as a separate exhibit here. *See* also Dkt. 61 (granting leave to file deposition testimony under seal).

UC0001145.[2] Nor was she designated to testify about whether the CAP or other decisionmakers may take a student's overall academic performance into account in determining whether the student should remain enrolled in PSOM.

Plaintiff's Motion misrepresents Dr. Farnan's testimony in significant ways. First, at the referenced pages 11-12 of her deposition transcript, *see* Mot. ¶ 10, Dr. Farnan discussed that ***clerkship grading*** was criterion-referenced, not normative-referenced. Dkt. 66 at 7:12-14, 9:19-11:2, 11:6-12:10. Second, at the referenced pages 28 and 29 of her deposition transcript, *see* Mot. ¶ 10, Dr. Farnan agreed that a "pass" in a clerkship indicated that the student had met that clerkship's core competencies. Dkt. 66 at 27:11-14, 28:18-24. When asked about the relevance of a student's performance compared to his peers, as set forth at the referenced pages 29-30 of her deposition transcript, Dr. Farnan did not agree, as Plaintiff now claims, that this was "irrelevant." *See* Mot. ¶ 10. Rather, Dr. Farnan stated that for purposes of clerkship grades, "[a] student's performance is measured against the criteria that are specified and not against the performance of other students." Dkt. 66 at 29:20-30:3. The cited testimony fails to lend any support to Plaintiff's assertion that Dr. Farnan provided testimony about the propriety of dismissing a student for being at the "bottom of his class" or that she testified that a student's academic performance may not be considered by the CAP when deciding whether to dismiss a student. *See* Mot. ¶ 10.

In fact, Dr. Farnan's own testimony elsewhere directly contradicts the assertions in Plaintiff's Motion. For example, Plaintiff further argued in his Motion that the University has "admitted through Dr. Farnan" that "as long as a student receives passing grades, the student has achieved competence and should be allowed to continue in the medical program and ultimately

---

[2] Farnan Exhibit 101, attached hereto as Exhibit 1, is Bates-stamped UC0001132 and was produced to Plaintiff on or about February 18, 2025. It was entered to the record as Farnan Exhibit 101 during Dr. Farnan's deposition. Farnan Exhibit 101 is the PSOM Academic Guidelines for 2022-2023. *See* Ex. 1.

5

graduate." Mot. ¶ 13. Dr. Farnan said no such thing in her testimony. Rather, Dr. Farnan testified, "Passing grades in individual courses are necessary **but not alone sufficient for attainment of the MD degree from the Pritzker School of Medicine. Failure to demonstrate appropriate ethical or professional behavior may in itself be a cause for dismissal from the Pritzker School of Medicine despite passing academic performance**." Dkt. 66 at 39:12-40:9 (emphasis added). This language was quoted from the 2022-2023 Academic Guidelines, which were in effect when Plaintiff was a student and at the time of his dismissal, and were available to him long before this lawsuit was initiated. *See id.* at 36:2-8, 39:12-40:9; *see also* Ex. 1 at UC0001145.

Moreover, Plaintiff has long known that his deficient academic performance was one of the reasons why he was dismissed. Indeed, in his SAC, Plaintiff alleged that on July 19, 2023 the CAP decided to dismiss him and "listed four reasons" in support of their decision: "(1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies." SAC ¶ 26. Following notification of the CAP's decision, Plaintiff e-mailed Dr. Dorsey with the following inquiry:

> In preparing my appeal of the CAP decision, I am reviewing the statements in the CAP decision letter. There is mention of "significant academic challenges that you experienced during your time as a medical student, most notably during the clerkship year but including the pre-clerkship years as well." Can you provide the basis for this statement [for the pre-clinical years]?

Ex. 2 (Hight Exhibit 47) at PLAINTIFF0000115.[3] In response to this e-mail, Dr. Dorsey informed Plaintiff on August 3, 2023, that he had been a "low performer" in three specific courses during

---

[3] Hight Exhibit 47, cited herein as Exhibit 2, is Bates-stamped PLAINTIFF0000113 – PLAINTIFF0000116 and was produced by Plaintiff to the University on or about October 7, 2024. It was entered to the record as Hight Exhibit 47 during Plaintiff's deposition on May 28, 2025, and is an e-mail exchange between Plaintiff and Dr. Dorsey on August 2 and 3, 2023. Although the document was not stamped CONFIDENTIAL at the time Plaintiff produced it, it contains information regarding Plaintiff's academic performance and the CAP's confidential deliberations. As such, the University intends to file this email

6

the pre-clerkship/pre-clinical phase of the PSOM curriculum during his first and second years. *Id.* at PLAINTIFF0000113, PLAINTIFF0000114-PLAINTIFF0000115.

Consistent with the information provided to Plaintiff at the time of his dismissal, in her deposition Dr. Dorsey testified that the CAP considered Plaintiff's "overall academic performance" in recommending dismissal.[4] Dep. of Chelsea Dorsey, August 21, 2025, 15:21-16:2 (filed under seal at Dkt. 64).[5] Dr. Dorsey testified that Plaintiff was a poor performer in three classes in his first two years at PSOM, **which preceded the clerkships that were the subject of Dr. Farnan's testimony**. *See* Dkt. 64 at 16:7-20, 17:24-19:19; *see also* Dkt. 66 at 7:4-11; Ex. 1 at UC0001141-UC0001143. Dr. Dorsey further testified that, during his third year (which took three years to complete) when his clerkships began, Plaintiff failed a shelf exam in his pediatrics clerkship, twice failed the shelf exam in his obstetrics and gynecology ("ob/gyn") clerkship, and failed the entirety of his ob/gyn clerkship (on his first attempt at completing that clerkship). Dkt. 64 at 19:23-24, 20:14-21:1. Dr. Dorsey also testified that while the CAP considered Plaintiff's overall academic performance, the focus of the CAP's reasoning for recommending dismissal was on Plaintiff's professionalism issues. *Id.* at 26:8-13. More specifically, she testified that the "primary reason" the CAP decided to dismiss Plaintiff was due to the "egregious nature of the professionalism issue" related to Plaintiff impersonating another medical student while e-mailing a resident. *Id.* at 39:9-14. Dr. Dorsey testified that based on this serious professionalism issue, the

---

exchange under seal, but refers to it herein as Exhibit 2. *See* Dkt. 68 (granting "leave to file confidential documents needed to decide the motion for leave to amend under seal").

[4] Dr. Dorsey testified as a corporate representative pursuant to Rule 30(b)(6) on, in relevant part, the topic of the deliberations of the CAP regarding the decision to dismiss Plaintiff.

[5] In his Motion, Plaintiff cited to the deposition testimony of Dr. Dorsey as "Exhibit C," and then filed the deposition of Dr. Dorsey as a sealed document at Dkt. 64. Because Plaintiff has already filed this deposition testimony under seal, the University cites to the sealed document in lieu of attaching it as a separate exhibit here. *See* also Dkt. 61 (granting leave to file deposition testimony under seal).

CAP was concerned about patient safety and about Plaintiff's future interactions with colleagues. *Id.* at 39:15-24. Dr. Dorsey further testified that it was a "big deal" that this professionalism issue arose while Plaintiff was on "monitored academic status," which followed after Plaintiff had been on academic probation due to his poor academic performance. *Id.* at 43:6-44:1.

In his Motion, Plaintiff claims that he recently learned through discovery that the University breached its own procedures by dismissing Plaintiff for poor academic performance despite the fact he ultimately had passed his clerkships. *See* Mot. ¶¶ 5, 16. This theory is not supported by the evidence. The referenced testimony reiterates that passing clerkship grades were not sufficient for successful completion of the medical program. The testimony demonstrates that the CAP dismissed Plaintiff not simply for being a comparatively low performer in his coursework and clerkships. Rather—as was made clear to Plaintiff at the time of his dismissal—the CAP recommended dismissal based on the following factors: "(1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies." *See* SAC ¶ 26; Dkt. 64 at 39:9-15, 43:6-44:1. Accordingly, the actual record evidence makes clear that Plaintiff's Motion is not supported by good cause.

II. **Plaintiff's Request to Amend at this Juncture is Untimely.**

Plaintiff's Motion also fails to meet the requirements of either Rule 15(a)(2) or Rule 16(b)(4) because it is untimely and shows a lack of diligence. "When determining whether undue delay has occurred, courts will consider the similarity of the factual basis for the claims in the original complaint to the new claims raised in the amended complaint, the moving party's explanation for waiting to raise the new claims, whether the moving party is attempting to introduce a new theory of the case, and whether granting the motion to amend will require new or

8

duplicated discovery efforts." *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010) (denying motion to amend). Critically, "[i]f the moving party fails to provide any explanation for not filing its amendment sooner ***or if the explanation it provides is inadequate***, that will weigh towards denying leave to amend." *Id.* (emphasis added).

Plaintiff refers to information about his "poor academic performance" as addressed in the deposition testimony of Drs. Dorsey and Woodruff, but this information was not new. *See* Mot. ¶¶ 8-9; *see also* § I, *supra.* Indeed, as noted above, Plaintiff alleged in the SAC that the CAP's July 2023 dismissal letter stated he was dismissed due to "(1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) ***significant and sustained academic performance deficiencies***." SAC ¶ 26 (emphasis added); *see also* Exs. 2 & 3 (to be filed under seal).[6] Similarly, there was nothing new in Dr. Farnan's testimony about clerkship (not course) grading practices; this information was also set forth in the Academic Guidelines, available to Plaintiff while he was a student and produced to Plaintiff on or about February 18, 2025. *See* Ex. 1; *see also* § I, *supra.*

Courts have consistently held that where newly-alleged information in a proposed amended complaint was previously known to the party seeking amendment, the court should deny the proposed amended on the grounds of undue delay. *See, e.g., Su v. Johnson*, 68 F.4th 345, 355 (7th Cir.) (where "supposedly new documents had been in defendants' possession from the start," defendants were dilatory in seeking amendment of answer to pursue affirmative defense based on

---

[6] Plaintiff produced the CAP's July 2023 dismissal letter to the University on or about October 7, 2024, which was then Bates-stamped (by the University) as PLAINTIFF0000420. The same dismissal letter was also produced by the University to Plaintiff on or about October 17, 2025 and Bates-stamped UC0000327. Both documents were also stamped CONFIDENTIAL at the time of production. Then, PLAINTIFF000420 was entered into the record as Hight Exhibit 46 during Plaintiff's deposition. Due to the CONFIDENTIAL designation of the document, the University intends to file the dismissal letter under seal, but refers to it herein as Exhibit 3. *See* Dkt. 68 (granting "leave to file confidential documents needed to decide the motion for leave to amend under seal").

such documents); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297–98 (7th Cir. 1993) (affirming "refusal to permit amendment" of affirmative defense and counterclaim where "the facts of the [] transaction [at issue] and representations preceding it did not change and must have been known to defendants" and "[t]hese facts could have been pled at any time after the filing of the initial complaint"); *In Matter of J. O'Brien Leasing, Inc.*, No. 96 B 6789, 1997 WL 769550, at *3 (N.D. Ill. Dec. 4, 1997) (denying leave to amend where party "had sufficient information to support the proposed breach of fiduciary duty claim at the time that he filed his initial complaint"); *see also Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, No. 17 C 01130, 2018 WL 11189789, at *2 (N.D. Ill. July 30, 2018), *aff'd*, 922 F.3d 827 (7th Cir. 2019); *Kuryakyn Holdings, Inc. v. Abbe*, No. 09-CV-702-WMC, 2013 WL 12234625, at *2 (W.D. Wis. Mar. 4, 2013).

Here, there is no "newly discovered" information that would justify Plaintiff seeking leave to amend his complaint again after the close of fact discovery. As such, Plaintiff's Motion should be denied for this reason as well.

### III. The Proposed Amendment is Futile Because the Academic Guidelines Make Clear that the University Had Every Right to Consider Plaintiff's Academic Performance in Deciding to Dismiss Him.

Additionally, even if the requested amendment was not untimely, it is futile. "[T]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Adams*, 742 F.3d at 734. Here, Plaintiff seeks to state a breach of contract claim based on an alleged failure to follow the applicable grading procedures. Mot. ¶ 11. Plaintiff's request should be denied because it is based on Plaintiff's mischaracterization of the record evidence. *See* § I, *supra*. Again, PSOM's Academic Guidelines state as follows: "Passing grades in individual courses are necessary but not alone sufficient for attainment of the MD degree from the Pritzker School of Medicine. Failure to demonstrate appropriate ethical or professional behavior may in itself be a cause for dismissal from

the Pritzker School of Medicine despite passing academic performance." Ex. 1 at UC0001145. There simply is no support for the allegation that the University violated its Academic Guidelines by considering Plaintiff's poor academic performance—which was, of course, poor with respect to both his performance relative to his peers *and* in light of his shelf exam and clerkships failures.

Where a proposed amendment is futile, courts routinely deny a motion to amend. *See Adams*, 742 F.3d at 734; *Malhotra v. CVS Health Corp.*, No. 24 C 4769, 2025 WL 2453807, at *3 (N.D. Ill. Aug. 4, 2025); *Kuryakyn*, 2013 WL 12234625, at *2; *Su*, 68 F.4th at 355; *Bd. of Forensic Document Examiners, Inc.*, 2018 WL 11189789, at *3. Here, Plaintiff's allegations cannot be taken at face value, because they are refuted by the very record evidence upon which he seeks to rely in support of his Motion. As a result, there is no basis for any claim that the University violated its own grading procedures. Any breach of contract claim premised on the University's consideration of Plaintiff's poor academic performance would fail, and the proposed amendment is therefore futile. For this additional reason, Plaintiff's Motion should be denied.

**IV.     Permitting Plaintiff to Amend a Fourth Time, After the Close of Discovery, Will Prejudice the University.**

Finally, Plaintiff's Motion should be denied on the grounds of prejudice. Prejudice "is a 'significant factor' in determining whether to grant leave to amend, and it is often considered together with undue delay." *J.P. Morgan Chase, N.A.*, 265 F.R.D. at 352. Here, Plaintiff seeks to amend his claims for the fourth time, and does so after the close of fact discovery. Motions for leave to amend coming years into the litigation and/or after the close of discovery often are denied on the grounds of prejudice. *See J.P. Morgan Chase, N.A.*, 265 F.R.D. at 353 (citing cases); *see also Allen v. Brown Advisory, LLC,* 41 F.4th 843, 853 (7th Cir. 2022). If Plaintiff were to seek additional discovery to support his amended breach of contract claim—which the University would oppose—the resolution to this matter would be delayed and the University would be forced

11

to incur additional costs. Any such delay itself would be problematic, as witness memory is diluted over time.

The prejudice to the University, coupled with undue delay and futility, are all grounds for denial of Plaintiff's Motion.

## CONCLUSION

For the reasons stated herein, the University respectfully requests that this Court (1) deny Plaintiff's Motion and (2) deny Plaintiff's request to file his proposed TAC. Should the Court decide to permit Plaintiff to file his proposed third amended complaint, the University respectfully requests that it be granted fourteen (14) days to file an answer to that complaint, which the University proposes to do in lieu of filing a motion to dismiss, despite the futile nature of the proposed amendment, to avoid further motion practice at this stage while reserving its right to address all remaining claims and allegations in a motion for summary judgment.

Date: December 10, 2025

Respectfully submitted,

/s/ *Scott Warner*

Scott L. Warner
Mary E. Deweese
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500 (tel.) | (312) 655-1501 (fax)
scott.warner@huschblackwell.com
mary.deweese@huschblackwell.com

***Attorneys for Defendant***
***University of Chicago***

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the foregoing document to be served on Plaintiff's counsel via email at the following address on December 10, 2025:

Joseph P. Selbka
MacDonald, Lee, & Senechalle, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
pleadings@pmllegal.com
(847) 310-0025

/s/ *Scott Warner*

***Attorney for Defendant***
***University of Chicago***