IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HIGHT, an Individual, | |
|      Plaintiff, | |
| v. | Case No.: 2024 CV 02525 |
| THE UNIVERSITY OF CHICAGO, an Illinois Not for Profit Corporation, | Judge Lindsay C. Jenkins |
|      Defendant. | JURY TRIAL DEMANDED |

**Plaintiff Reply in Support of Motion for Leave to File Third Amended Complaint**

Now Comes the Plaintiff, Robert Hight, through his attorneys, MacDonald, Lee & Senechalle, Ltd., and replies in support of his motion for leave to file a third amended complaint and offers the specific rebuttals of Defendant, University of Chicago's ("Defendant") as follows.

**I.    No Order Has Been Entered Regarding Deadline for Amendments to the Pleadings**

As an initial matter, the Defendant sets forth an improper standard in its response for allowing amendment of pleadings (pgs. 2 to 3 of Defendant's Response). Defendant wrongly claims that an order has been entered setting a deadline for amendment of pleadings under Rule 16 of the Federal Rules of Civil Procedure. Since there was a motion to dismiss pending at the time of the initial status report, no deadline on amendments to pleadings was ever entered (See Docket #52, Par. 13). Defendant took advantage of this fact by filing an amended answer on May 12, 2025 (See Docket # 51, Par. 11). In Defendant's motion to file an amended answer, the Defendant specifically admitted that no order setting a deadline to file amended pleadings has been entered in this case (in its Motion for Leave to File Amended Answer filed on May 9, 2025, See Docket

1

Entry #52, Par. 13).  The standards set out by Defendant (in their response) apply to situations where the Court has entered an order setting a deadline for pleading amendments.  In this case, the Court has not set a deadline for pleading amendments under Rule 16 of the Rules of Civil Procedure[1].  All parties understood this (as Defendant admitted in May, 2025), and what's good for the goose should be good for the gander.

The Defendant should know that it is providing the Court with an inapplicable standard to decide whether to grant leave to amend.  This is because Defendant provided the Court with the correct standard in its motion for leave to file an amended answer in May, 2025. (See Docket #52, Par. 11).  To quote the Defendant in its Motion for Leave to File an Amended Answer (*Id.*):

> The Supreme Court has held that Rule 15(a)(2)'s mandate to freely give leave to amend is a mandate to be heeded. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (reversing denial of leave to amend by citing to Rule 15(a)(2)'s mandate to freely give leave to amend); *see also Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019) (quoting *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015)) ("The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend.")

When the Court uses the proper standard in this case (the standard set forth by the Defendant when it chose to amend its pleadings in Docket #52, Par. 11) the Court must allow amendment for the reasons discussed below.

---

[1] Defendant's erroneous factual contention (that an order has been entered setting a deadline for filing amended pleadings) and erroneous use of a legal argument (applicable only to situations where the court ordered deadline for filing amended pleadings has passed) constitute violations of Rule 11.  Defendant should withdraw the erroneous factual contention and erroneous argument.  If Defendant fails or refuses to do so, the Court should reprimand Defendant on the record for Defendant's violation of Rule 11.

## II.    There is No Undue Delay in Bringing this Claim

### A.  In Light of the Procedural Posture of this Case, Delay Alone Cannot be a Basis to Deny Leave to Amend

Since there was no order setting a deadline for amendments, delay alone is not a reason to deny amendment. *Soltys v. Costello,* 520 F.3d 737, 743 (7th Cir. 2008). Thus, to the extent delay is the only reason shown by Defendant against amendment, this is not a reason to deny Plaintiff's motion.

### B.  There Was No Undue Delay in Filing Request for Leave to Amend in Light of the Testimony of Dr. Farnan and Dean Anderson

Even if delay is a factor in deciding leave to amend, there is no undue delay because Plaintiff needed to depose multiple witnesses prior to seeking amendment (especially in light of the Court's ruling on Plaintiff's Motion to Reconsider). Plaintiff's need for clarity arose from the nature of Plaintiff's dismissal process. Initially, Plaintiff was recommended for dismissal by the Committee on Academic Promotions ("CAP") (Docket #64, Ex. C, Dr. Dorsey Dep.pg. 26, 36). The CAP recommended dismissal based (in part) on Plaintiff's poor academic performance (Docket #64, Ex. C, Dr. Dorsey Dep. pg. 26). Plaintiff then appealed to the Academic Appeals Committee ("AAC") (Docket #78, Ex. F, Dr. Arora Dep. pp. 24-26). The AAC downplayed Plaintiff's alleged poor academic performance as a reason for dismissal (Docket #78, Ex.F, Dr. Arora Dep. pp. 121-125). Finally, Dean Mark Anderson made the ultimate and final decision to dismiss Plaintiff (Docket #63, Ex. B, Dr. Anderson Dep. pg. 9). Dr. Anderson never articulated what factors he was relying on the until his deposition where he admitted poor academic performance was a reason for making the final decision to dismiss Plaintiff (Docket #63, Ex. B, Dr. Anderson Dep, pg. 15-16).

Only at this point was Plaintiff able to plead an additional breach of contract based on the Court's rulings in this matter.

Defendant's contention that Plaintiff glean the violation of the University's own procedures from the opaque appeal process and documents provided during discovery is simply not supported by the record. Plaintiff needed the testimony of the corporate representatives and Dr. Anderson to determine the actual <u>ultimate</u> reasons for dismissal to comply with Rule 11 before seeking amendment.

**C. <u>The Proposed Amendment and Previous Amendments are Understandable and Excusable Given the Lack of Clarity of the Law in this Case</u>**

In its ruling on Plaintiff's motion to reconsider, the Court dismissed Plaintiff's claim that Plaintiff was dismissed for arbitrary and capricious reasons (Docket #50). The Plaintiff contended that, under Illinois law, Plaintiff only had to show he was progressing toward a degree and that he was dismissed for arbitrary and capricious reasons (Docket #36, pp. 2-4, Plaintiff Motion to Reconsider). The Court held that Illinois courts and Seventh Circuit disagree on Illinois law requirements for a breach of tuition contract case ( Docket #50). Moreover, the parties have had significant disagreements on the needs to accommodate a reaction to medication in light of amendments to federal disability discrimination laws (Docket #29. pp. 6-13 and Docket #44, pp. 5-11). The lack of clarity in the law made pleading difficult and required multiple amendments to the Complaint (which the Court allowed) after the Court issued rulings clarifying the Court's understanding of the law in the area. Plaintiff's requests to amend should not be held against Plaintiff in light of this lack of clarity.

**III. <u>There is No Prejudice to Defendant as Disregard of the Criterion Assessment System is the Basis for an Existing Claim (Plaintiff's Claim under Section 504) and the Parties Have Thus Conducted Appropriate Discovery</u>**

4

Defendant also makes an argument that it would be prejudiced by the amendment. Defendant provides no concrete reason why it would be prejudiced by the amendment. Apparently, because fact discovery is closed, Defendant contends it would be prejudiced.

There is (or should be) no issue because there has been extensive fact discovery regarding whether Defendant followed its own grading procedures in dismissing Plaintiff. The proposed amendment seeks liability for a breach of contract for the Defendant not following its own grading procedures and using these procedural violations as a basis to dismiss Plaintiff from the Defendant's medical program. The parties have already completed extensive discovery on whether the Defendant has followed its grading procedures and whether the violation of Defendant's own procedures were used as a basis for Plaintiff's dismissal. Defendant also has knowledge of its own publications and grading procedures. So it is unclear why Defendant would need more discovery on the matter.

Specifically, the Parties have been engaging in extensive discovery regarding whether the Defendant followed its own grading procedures in determining whether Defendant discriminated against Plaintiff based on disability under Section 504 and the ADAAA. In order to prove the discrimination claims, Plaintiff has alleged discrimination claims against Defendant based on disability (under Section 504 and the ADAAA). in order to prove the discrimination claims, Plaintiff must show he is qualified to continue in program and the purported reasons for dismissal was a pretext for discrimination. *Royan v. Chicago State University,* 145 F.4[th] 781, 790-791 (7th Cir. 2025). A departure from published grading procedures is evidence of pretext. *See Rudin v. Lincoln Land Community College,* 420 F>3d 712, 727 (7th Cir. 2005); *Jordan v. Evans,* 2019 U.S.Dist. Lexis 153559 at 29-30 (N.D. Ill. 2019) The parties have thus been conducting discovery necessary to show: (1) Plaintiff is (or is not) qualified under Defendant grading standards; and (2)

whether Defendant in fact followed its procedures in order to determine pretext. There can thus be no prejudice in this case because the parties have been conducting discovery on the factual bases of the proposed breach of contract claim.

This fact is demonstrated by the fact that the Defendant's own counsel in a corporate deposition who elicited the testimony establishing the proposed breach of contract (See sections on Futility set forth in Section IV B below).

Finally, expert discovery is ongoing. If Defendant truly believes it would be prejudiced, Plaintiff has no objection to reopening fact discovery on the limited issue created by the proposed amendment. This would guarantee no prejudice to Defendant.

IV.     **Amendment of the Complaint Would Not Be Futile**

A.   **Under the Court's Interpretation of Illinois Law, a Violation of Grading Procedures Which Results in Dismissal Will Support a Cause of Action**

Contrary to Defendant's arguments, Plaintiff's amendment is not futile in light of the evidence revealed in the depositions of Dean Anderson, Dr. Dorsey, and Dr. Farnan. In ruling on Plaintiff's Motion to Reconsider (Docket #50) and on the Defendant's initial Motion to Dismiss (Docket #34, pp. 11-14), the Court made clear that, under the Court's understanding of Seventh Circuit Precedent, Plaintiff must make a specific showing to prove a breach of contract. Specifically, the Court held that a violation of his procedural rights granted by published materials which was a reason for dismissal supported a breach of contract claim. *Id.*

Departures from published student assessment procedures which lead to dismissal is a breach of tuition contract. *McConnell v. Le Mayne College,* 808 N.Y.S.2d 860, 861-862 (S.C. App. Div. N.Y. 2006) (when a university establishes rules for dismissal, such rules must be substantially followed. It was unlawful to dismiss a student based upon evaluation criteria not set forth in published documents); *Elliott v University of Cincinnati,* 730 N.E.2d 996, 1002-

6

1003 (Ohio Ct App. 1999) (university breaches its contract when oral exam is reviewed by four faculty members when published bulletin requires five faculty members to review exam); *Weidemann v. State University of New York College at Cortland,* 188 A.D. 974, 975 (failure to provide five day notice of additional evidence as published in bulletins justified reversing university decision to expel); *Tedeschi v. Wagner College,* 427 N.Y.2d 652,662 (C.A. N.Y. 1980) (college breached its contract when it denied student a hearing for suspension); *Morrison v. University of Oregon Health Sciences Center,* 685 P.2d 870, 872-873 (C.A. Or. 1984) (university decision to dismiss for lack of adequate clinical performance reversed because university violated its own rules in reviewing grades). Illinois has adopted this rule. To quote the Court of Claims applying Illinois law in *Bullock v. State of Illinois,* 54 Ill. Ct. CL 292, 294 (2002), *and Singletary v. Southern Illinois University,* 62 Ill.Ct. Cl. 198, 200-201 (2010):

> Thus, when a university establishes fixed rules and standards for assessment and then departs from those fixed rules and standards, this is arbitrary and capricious conduct. "The educational contract between the student and the educational institution inherently and implicitly adopts the academic standards of the institution... That, indeed, is a critical element of the student's contractual bargain with the institution: he or she agrees to be judged academically according to the prevailing (or duly established) standards of academic performance. Among other things, the application and enforcement of those academic standards are one of the underlying premises of higher education programs that maintains the value of the degree or certificate that the student agrees to earn. Thus the court enforces the parties' educational bargain by upholding the academic standards set by the academic professionals.

To quote the Illinois Appellate Court in *Bosch v. Northshore University Health System,* 2019 IL App(1st) 190070, Par. 39:

> That doesn't mean that other promises, contained in written materials distributed by the School, couldn't also play a role in a case like this involving wrongful dismissal. Of course, they could. For example, a student might point to a set of procedural protections contained in a student handbook, allege that the school failed to follow them, and offer the school's substantial deviation from published procedures as

evidence of the arbitrary and capricious nature of the school's academic decision.

Here, Dr. Farnan's testimony (as corporate representative) and the academic standards quoted and relied by her when coupled with Dean Anderson and Dr. Dorsey's testimony and Dr. Woodruff's testimony show that the University departed from its published criterion based assessment system in deciding to dismiss Plaintiff (Docket #66, Ex. E, Dr. Farnan Dep. pp. 11-12, 27-31, Docket #64, Ex. C, Dr. Dorsey Dep. pp. 15-24; Docket #65, Ex. D, Dr. Woodruff Dep. pp. 112-113. ). This is a breach of tuition contract under Illinois law.

## B. The Scope of the Testimony of Dr. Farnan (Corporate Representative), and Exhibits Authenticated by Dr. Farnan Extended to All Aspects of the University's Grading System)

Defendant's claims that amendment would be futile arise from Defendant's contentions that testimony regarding the criterion system applied only to Plaintiff's clerkships and not Plaintiff's academic performance as a whole. However, Dr. Farnan's testimony (in questions elicited from Defendant counsel) applied the criterion assessment system to both academic classes and clerkships (Docket #66, Ex. E, Dr. Farnan Dep. pp. 37-40). Defendant counsel also introduced and authenticated the academic guidelines and standards in place when Plaintiff was a student (Docket #66, Ex. E, Dr. Farnan Dep. pp. 37-40). Dr. Farnan, as corporate representative, testified that passing grades for both classes and clerkships was the necessary academic component to graduating (Docket #66, Ex. E Dr. Farnan Dep .pp. 37-40). Defendant counsel also introduced the academic guidelines and standards in place when Plaintiff was a student. The academic guidelines and standards apply the criterion system to both classes and clerkships (Docket #66, Ex. E, Dr. Farnan Dep. pp. 37-40, Dep. Ex. 101, Academic Standards and Guidelines).

The only other criteria for graduating was Plaintiff's compliance with ethical and professionalism standards (Docket #66, Ex. E, Dr. Farnan Dep. pp. 38-39). Plaintiff's compliance

with professionalism standards (which is the other component for graduating) is addressed in other portions of Plaintiff's Complaint.

### C. Dr. Woodruff, as Corporate Representative, Admitted Plaintiff's Performance Prior to the Final Incident Was Adequate to Graduate

There is an additional reason why the alleged differentiation between clerkships and classes is a red herring. Dr. Woodruff, in testifying as corporate representative, admitted that even though Plaintiff was at the bottom of his class, he was progressing sufficiently academically in the program to avoid dismissal (Docket #65, Ex. D, Woodruff Dep. pp. 112-113).

It is important to remember the timeline of this case. Plaintiff was progressing sufficiently to graduate until the final incident which Plaintiff contends was a manifestation of a disability. The Defendant then, through the CAP, created a series of post hoc justifications (including alleged academic deficiencies in Plaintiff's performance in clerkships) to bolster Defendant's decision to dismiss Plaintiff. In doing so, the CAP (who's reasoning was adopted by Dr. Anderson, the final decisionmaker) departed from the Defendant's published criterion based assessment procedures.

### D. The Other Reasons Given for Plaintiff's Dismissal are Irrelevant to this Motion

Defendant also claims that because of the criterion based assessment system was not the only basis for dismissal, leave to amend would be futile. As Dr. Dorsey admitted, Plaintiff was dismissed for four separate reasons including alleged poor academic performance (See. Docket #64, Ex. C, Dr. Dorsey Dep. pg. 44). The other reasons given for Plaintiff's dismissal are addressed in other portions of Plaintiff's complaint. Moreover, the Court has already held that procedural violations can be the basis for a breach of contract claim (See. Docket #34, pp. 11-14, Ruling on Initial Motion to Dismiss). Amendment is not futile for this reason as one basis for breach of contract resulting in wrongful dismissal is Defendant's departure from criterion based assessment

9

procedures. The Court's previous ruling on Defendant's original motion to dismiss is law of the case in this matter. Defendant should not be allowed to challenge it.

**V.    <u>Conclusion</u>**

For the above stated reasons and in the Plaintiff's motion for leave to amend, Plaintiff, Robert Hight, requests the Court give leave to file a third amended complaint in this matter.

Respectfully Submitted,

By: _____/S Joseph P. Selbka_____

One of Plaintiff's Attorneys

Joseph P. Selbka
PLUYMERT, MACDONALD, HARGROVE & LEE, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
Attorney No.:  06238063
pleadings@lawpmh.com
(847) 310-0025

# EXHIBIT  F- DEPOSITION  OF  DR.  VINEET  ARORA

# FILED SEPARATELY UNDER SEAL