# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-02525 |
| | ) | |
| v. | ) | Honorable Lindsay C. Jenkins |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT UNIVERSITY OF CHICAGO'S REPLY
### IN SUPPORT OF ITS MOTION FOR SANCTIONS
### <u>PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT AUTHORITY</u>

Scott L. Warner
Mary E. Deweese
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500 (tel.) | (312) 655-1501 (fax)
scott.warner@huschblackwell.com
mary.deweese@huschblackwell.com

***Attorneys for Defendant
University of Chicago***

This case presents a textbook example of a plaintiff failing to fulfill a basic obligation to preserve evidence that lies at the very heart of his case.[1] The record is not meaningfully in dispute. Plaintiff created and used a Gmail Account to send the very e-mail that triggered his dismissal proceedings and referenced a contemporaneously-created journal entry in those same proceedings. He was under a clear obligation to preserve both sources of evidence, but he failed to do so even though **both** sources of evidence were squarely within his custody and control. In his Response, Plaintiff and his counsel continue their pattern of shifting narratives. Plaintiff testified that he has no memory of the Gmail Account and never accessed it. Yet he ***now maintains*** that he has produced everything relevant from that account. This not only undermines Plaintiff's credibility, but it also underscores the prejudice caused by his clear failure to preserve the very evidence that would allow the University to test his theory of the case that he developed only after the CAP voted to dismiss him—which is that he was experiencing a medication reaction when he wrote the e-mail at issue and it was thus discriminatory to dismiss him for such conduct. *See* Dkt. 22 ¶¶ 18-19. Plaintiff insists that the University has nothing more than "speculation" about what the Gmail Account or journal might have contained. But that is precisely the problem. The inability to reconstruct or verify what was in the Gmail Account or the journal is the very prejudice that spoliation sanctions are designed to address. The record leaves no doubt that serious sanctions are warranted.

I.      **The Record Confirms Plaintiff's Failure to Preserve Relevant Evidence.**

Plaintiff concedes that the Gmail Account "was deactivated at some point after its creation" and that he "believes [the journal entries] were lost in a move." Dkt. 89 at 2, 3. These cursory

---

[1] Plaintiff appears to misapprehend why this Motion is being brought in the first place, stating it is merely because he "failed to turn over some requested [ESI]" or "fail[ed] to reactivate the Gmail Account and turn over its contents." Dkt. 89 at 1. It is Plaintiff's failure to preserve two important sources of relevant evidence that underlie this Motion.

1

admissions do not address the significant evidence, which Plaintiff does not meaningfully dispute, demonstrating Plaintiff's failure to *preserve* relevant evidence in the first place.

On June 13, 2023, the April 30, 2023 e-mail at issue was forwarded from the Gmail Account to Plaintiff's significant other. Dkt. 87 (Ex. I).[2] This was, ostensibly, the last time the Gmail Account was accessed; according to Plaintiff's own testimony, this was done to save the e-mail "for purposes of litigation." Dkt. 87 (Ex. D at 166:3-25). After Plaintiff filed this action on March 28, 2024, the University served discovery requests on July 22, 2024, seeking all relevant documents, including e-mails, journals, and diaries. Dkt. 83-6. When Plaintiff's initial production proved deficient, the University sent a Discovery Deficiencies Letter on November 25, 2024, asking Plaintiff's counsel to "indicate whether [he] and/or Plaintiff has conducted a search of text messages, e-mails, and other sources *within Plaintiff's custody or control* for potentially responsive records and provide any search terms used to search electronically stored information." Dkt. 83-11 at 2 (emphasis added).[3] The University's counsel engaged in multiple attempts to meet-and-confer with Plaintiff's counsel. *See* Dkt. 83 at 4. During an April 21, 2025 meet-and-confer, Plaintiff's counsel agreed to produce relevant portions of the journal and identify the e-mail accounts that had been searched. Dkt. 83-13. On April 29, 2025, the University again requested confirmation that all known e-mail accounts, *including the Gmail Account*, had been searched. Dkt. 83-15 (emphasis added). Plaintiff's counsel stated in an April 30, 2025 letter: "Please note that Robert has no access to [redacted]03191994@gmail.com and thus there are no e-mails related to that account other than the one e-mail already in the University's possession." Dkt. 83-16 at 2.

The Response cites to this statement about having "no access" in now asserting that "Plaintiff's counsel informed Defendant's counsel that the Gmail Account *could not be reactivated*

---

[2] Sealed Dkt. 87 contains Exs. A-D, H-I, Q, and T-V to Dkt. 83.
[3] Page cites are to the pagination in the file-stamp (not the footer) of the documents cited herein.

on April 30, 2025, by e-mail." Dkt. 89 at 2 (emphasis added). This mischaracterizes counsels' communications. The April 30, 2025 communication from Plaintiff's counsel referred generally to "access," not to the account being deactivated or efforts to reactivate it. Moreover, based on Google's own policies, the Gmail Account would not have been ***deactivated*** until June 13, 2025 at the earliest—nearly six weeks after the April 30, 2025 letter from Plaintiff's counsel. *See* Dkt. 83 at 7-8; Dkt. 83-16; Dkt. 83-24; Dkt. 89 at 2. Google's policies state that a Google account ***may*** be deleted after the account "has not been used within a 2-year period." Dkt. 83-24. There is documented access to the Gmail Account on June 13, 2023. Dkt. 87 (Ex. I). Therefore, the earliest the Gmail Account would have been deleted due to inactivity would have been two years later, on June 13, 2025. Plaintiff's current representation that he informed the University on April 30, 2025 that the Gmail Account could not be reactivated—thus meaning it had been deactivated—is devoid of factual support. Plaintiff's counsel also stated in his April 30, 2025 letter: "Robert does not keep a ***daily journal***. If you have some document you believe refers to such a journal, please tell us. We will explain what Robert meant." Dkt. 83-16 at 4 (emphasis added). The University then reminded him of Plaintiff's own prior statements to the University during the 2023 dismissal proceedings regarding his *"**emotional journal**.*" Dkt. 83-14 (emphasis added); *see also* Dkt. 87 (Exs. A & B); Dkt. 83 at 5. Plaintiff's counsel reported on May 12, 2025, and again on May 15, 2025, that the journal had been lost during Plaintiff's move in the summer of 2024. Dkt. 83-14, 83-17.

The University explored these representations during Plaintiff's May 27, 2025 deposition. Plaintiff testified that he did not "recall any details" about the Gmail Account and that he "never went back to the Gmail [A]ccount" after April 30, 2023. Dkt. 87 (Ex. D at 153:16-154:8, 164:11-25). He also testified that he produced the April 30, 2023 e-mail, as forwarded to his significant other on June 13, 2023, because it was in a "saved documents" folder on his computer. *Id.* at 154:9-

18, 158:16-161:9. Plaintiff testified that he did not know whether the Gmail Account had been deleted, testifying: "***Because I haven't accessed it***, I don't know what the outcome of it was," referring to the current status of the Gmail Account. *Id.* at 165:1-19 (emphasis added).[4] He explicitly testified that he "ha[d] not tried to access that account" during this litigation and that it was "possible" the Gmail Account still existed. *Id.*

With respect to his representation to the CAP in July 2023 that he had been "writing in [his] emotional journal" on April 30, 2023, Plaintiff testified: "I don't really remember the events of that night, so I don't know exactly what could have been or what was written about during that night." *Id.* at 211:12-25. He confirmed that he previously had a journal and had told the CAP he had been writing in his journal that night. *Id.* at 212:18-213:18, 217:10-18; 218:2-5. Plaintiff further testified: "I don't remember anything that I wrote regarding this situation ***because I don't even have access to the journal.***" *Id.* at 216:19-25 (emphasis added). When asked what happened to the journal, Plaintiff testified, "I don't really know. I mean, when I moved from Chicago to Nashville, like things got disorganized" and that "movers [] packed up our stuff and moved things for us." *Id.* at 218:7-12, 218:19-23. Plaintiff explicitly testified that ***he "didn't really do much to preserve [his] belongings"*** as part of the move. *Id.* at 220:6-16 (emphasis added).

In light of Plaintiff's sworn testimony regarding his failure to preserve relevant evidence, the University issued a second set of discovery requests seeking detailed documentation regarding the Gmail Account, its contents, and "documentation of all steps taken to attempt to recover access" to the account—which the Response entirely ignores. *See* Dkt. 83-19 at 6. After two emails regarding his failure to respond to these requests, Plaintiff's counsel then stated on September 11, 2025: "According to Google, the account no longer exists. We have no way to access it any longer.

---

[4] This testimony that, on May 27, 2025, Plaintiff ***did not know*** if the Gmail Account was inactive refutes the Response's assertion that the University was told on April 30, 2025 that the Gmail Account could not be reactivated.

4

Thus, we possess no documents responsive to this request." Dkt. 83-20 at 3-4. The University's counsel provided Google's account recovery steps to Plaintiff's counsel on September 11, 2025 (and again on September 24, 2025). *See* Dkt. 83-20 at 3; Dkt. 87 (Ex. U). Plaintiff's counsel forwarded an email from his client on September 18, 2025 stating that there were no options to recover the account and asserting that this response satisfied their discovery obligations. Dkt. 87 (Ex. U). The University's counsel also twice offered (on September 11, 2025 and September 18, 2025) to meet-and-confer regarding the status of the Gmail Account, both of which offers were ignored by Plaintiff's counsel. *See* Dkt. 83-20 at 2-3, 5. Plaintiff's counsel never responded to the University's latest e-mail regarding this discovery issue, sent September 24, 2025, nor has he served written responses to the University's second set of discovery requests. *See* Dkt. 87 (Ex. U).

## II. Plaintiff Failed to Comply With His Duty to Preserve the Gmail Account.

According to Plaintiff, Rule 37 only requires preservation of "information" and he therefore had "[n]o [d]uty to [k]eep the Gmail Account [o]pen" because the account itself is not ESI. Dkt. 89 at 8-9. There is no support for this assertion. Plaintiff had a duty to preserve ESI—including the e-mails, drafts and metadata contained within an e-mail account—that is reasonably expected to be "relevant and proportional to the claims or defenses in the litigation," which is "triggered when litigation is commenced or reasonably anticipated." *See DR Dist., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977-78 (N.D. Ill. 2021). Additionally, under Rule 34, "a party is required to produce documents that are within its ***'possession, custody, or control,'*** with the relevant "test" being "whether the party has a legal right to obtain [the documents]." *Meridians Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (emphasis added). All emails (including any drafts and metadata) within the Gmail Account and the "last account activity" are entirely within the scope of evidence that, prior to the Gmail Account's

deletion on or after June 13, 2025, Plaintiff had the legal right to obtain *and* the duty to preserve. *See, e.g., Wright v. Nelson*, 2025 WL 1235842, at *3 (S.D. Ind. Apr. 29, 2025); *In re JMO Wind-Down, Inc.*, 2021 WL 665741, at *4 (Bankr. D. Del. Feb. 17, 2021); *Lalumiere v. Willow Springs Care, Inc.*, 2017 WL 6943148, at *2 (E.D. Wash. Sept. 18, 2017).

The Response also asserts: "There is no evidence that any e-mail, draft, or any other information, even if it existed, was relevant to this proceeding" and that "all known [ESI] located in the account was preserved." Dkt. 89 at 8-9, 11. Yet Plaintiff testified under oath that ***he has no independent memory of creating the Gmail Account or drafting the April 30, 2023 e-mail*** and that he never reviewed or accessed the account in the two years since that time. *See* Dkt. 87 (Ex. D at 153:16-166:25). If Plaintiff's testimony is to be credited, he cannot possibly know whether there was additional relevant information in the Gmail Account—such as drafts, metadata, or additional communications—that could be relevant to the University's defense to Plaintiff's "medication reaction" theory or to Plaintiff's own credibility and state of mind at or around the time of the April 30, 2023 e-mail. *See, e.g., Littler v. Martinez*, 2020 WL 42776, *37 (S.D. Ind. 2020) ("[i]n civil litigation, of course, parties do not only produce evidence that they can recall; were that the case, countless discovery requests would be virtually meaningless"). Plaintiff's duty to preserve extended to the full contents of the Gmail Account. He breached this duty when he allowed it to be deleted on or after June 13, 2025, after failing to take any steps to preserve it—or even review its contents—on or before the date this action was filed.

Plaintiff attempts to avoid responsibility by claiming the University should have subpoenaed Google. Dkt. 89 at 2. The University was never in a position to pursue such third-party discovery. After Plaintiff testified in late May 2025 that he made no effort to review the Gmail Account in response to earlier discovery requests, the University served additional requests on July

21, 2025, related to the Gmail Account. *See* Dkt. 83-19. Yet Plaintiff did not disclose that the Gmail Account "no longer exists" until September 11, 2025. Dkt. 83-20. By this time, fact discovery had closed, *see* Dkt. 56, and the account was permanently lost. There is no reason to believe the Google Account is even recoverable. *See* Dkt. 83-24. And any attempt to subpoena Google likely would have been futile, as the Stored Communications Act generally prohibits Google and other e-mail providers from disclosing the contents of user e-mails in response to civil subpoenas. *See, e.g., Doe v. Socy. of Missionaries of Sacred Heart*, 2014 WL 51333, at *4 n.5 (N.D. Ill. Jan. 3, 2014); *Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *2 (N.D. Ill. May 2, 2012).

Moreover, the duty to preserve and produce relevant ESI rests squarely on the party in possession, custody, or control of the evidence. See *Meridian Lab'ys,* 333 F.R.D. at 135. Courts routinely hold that a party's personal e-mail account is within that party's "possession, custody, or control." *See, e.g., Lalumiere*, 2017 WL 6943148, at *2. It is thus Plaintiff—not the University—who had both the obligation and the practical ability to preserve and produce the contents of the Gmail Account. His failure to do so is precisely the spoliation Rule 37(e) is designed to address.

### III. Plaintiff Failed to Comply With His Duty to Preserve the Journal.

As noted above, the duty to preserve relevant evidence arises when litigation is reasonably anticipated and applies to all such evidence in a party's possession, custody, or control. *See Bryant v. Gardner*, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. 2008). Plaintiff attempts to downplay the significance of the journal by claiming it is only relevant to his dismissed claim for emotional distress damages. Dkt. 89 at 12-13. This is absurd. The journal is critical because Plaintiff, himself, stated during his dismissal proceedings in July 2023 that he wrote in the journal on the night of April 30, 2023, immediately before sending the e-mail that led to his dismissal. *See* Dkt. 87 (Ex. A); *see also* Dkt. 83 at 2-3, 14. The journal thus would have provided a contemporaneous account of Plaintiff's state of mind, motivations, and recollections at the very moment in question. This

7

goes to the heart of Plaintiff's credibility regarding his theory, **_which he developed only after the CAP voted to dismiss him_**, that he was incapacitated by a medication reaction. Plaintiff's assertion that he "had forgotten ever creating a journal," Dkt. 89-2, also lacks credibility and does not relieve him of his duty to preserve the journal. Plaintiff referenced the journal in his July 2023 CAP submission, which he retained and produced in this litigation. Dkt. 87 (Ex. A). Plaintiff's failure to preserve the journal thus warrants sanctions as well. *See* Dkt. 87 (Ex. D at 211:12-220:16).

### IV. The Failure to Preserve the Gmail Account and Journal Warrant Sanctions.

Plaintiff wrongly contends that the standard for sanctions has not been met because there was no court order that Plaintiff violated, there is no evidence of bad faith, and the University failed to hold an IT meet-and-confer regarding the Gmail Account. Dkt. 89 at 6-7. Plaintiff misunderstands the standards for sanctions, which are warranted here.

#### A. The University's Motion is Procedurally Proper.

Plaintiff argues that sanctions for his failure to comply with his discovery obligations are not warranted because the University failed to comply with this Court's requirement that an IT meet-and-confer occur prior to the filing of certain discovery motions. Dkt. 89 at 7-8. The University met its meet-and-confer obligations under Local Rule 37.2 through telephonic meetings on January 3 and April 21, 2025 and numerous follow-up emails and offers to confer further through September 2025. *See* Dkt. 83 at 4-6. The Standing Order only requires that IT representatives attend a meet-and-confer "[i]f an impasse arises about the recovery of [ESI]." Here, there was no impasse. According to Plaintiff, the Gmail Account has been deleted and his counsel merely "planned to reiterate" at any meet-and-confer that the account was unrecoverable. Dkt. 89 at 2. Google itself states that accounts that are inactive for more than two years may be permanently deleted. *See* Dkt. 83-24. Because the University does not dispute that the Gmail Account is now

unrecoverable, there is no impasse about its recoverability, and thus no requirement to convene an IT meet-and-confer prior to the filing of the University's Motion.

### B. The Standards to Impose Sanctions Have Been Met Here.

Plaintiff asserts that because he did not violate a court order, it would be "very difficult" for the Court to grant sanctions under its inherent authority. *See* Dkt. 89 at 3, 6. As Plaintiff's own cited authority makes clear, however, violation of a court order is not a prerequisite for sanctions. *See* Dkt. 89 at 4; *see also Fuery v. City of Chi.*, 900 F.3d 450, 463 (7th Cir. 2018) (upholding entry of judgment in favor of defendants based in part on destruction of notes regarding incident that gave rise to lawsuit). Inherent authority sanctions may be imposed for bad faith or for willful or reckless disregard of preservation obligations. *See O'Connor v. Ford Motor Co.*, 683 F. Supp. 3d 793, 798 (N.D. Ill. 2023); *see also Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at *6-9 (N.D. Ill. May 25, 2010). The duty to preserve arises when litigation can reasonably be anticipated—not when a court enters a specific order. *See Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016). And sanctions for failure to preserve evidence under the Court's inherent authority are warranted upon a finding of "bad faith, designed to obstruct the judicial process, *or* a violation of a court order." *Fuery*, 900 F.3d at 463-64 (emphasis added). As explained in the University's opening brief, this standard has been met. *See* Dkt. 83 at 14-16.

Moreover, for purposes of Rule 37(e), sanctions are warranted where the nonmoving party intended to deprive the moving party of ESI and the moving party suffered prejudice. *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022). Intent can be shown through circumstantial evidence such as shifting narratives. *Pable v. Chi. Transit Auth.*, 2024 WL 3688708, at *8 (N.D. Ill. Aug. 7, 2024), *aff'd* 145 F.4th 712 (7th Cir. 2025). Plaintiff seeks to avoid the consequences of his shifting explanations, claiming they only "came during discovery" and were

9

simple "miscommunication[s]." Dkt. 89 at 9-10. To the contrary: shifting explanations are classic hallmarks of intent. *See Pable*, 2024 WL 3688708, at *8; *see also* Dkt. 89 at 10-11. These shifting narratives—which Plaintiff has continued in his Response—were neither mere miscommunications nor "clumsy lawyering." Rather, they support the imposition of sanctions.

Additionally, even if the Court does not find intent under Rule 37(e) or bad faith, willfulness, or recklessness under its inherent authority, the University is still entitled to curative measures for the reasons set forth in its brief. *See Hollis*, 603 F. Supp. 3d at 617; *Jones*, 2010 WL 2106640, at *6; Dkt. 83 at 13, 16. The Response entirely fails to address these grounds for curative relief, resulting in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). More than curative measures are warranted here, however; Plaintiff failed to take even the most basic steps to preserve two key sources of evidence and now offers implausible and contradictory explanations for this failure. This pattern of conduct has deprived the University of evidence that goes to the heart of Plaintiff's claims and credibility. Where, as here, a party's actions render a fair adjudication impossible, the most severe sanction of dismissal is warranted. *See Pable*, 2024 WL 3688708, at *9 (imposing dismissal under Rule 37(e) due to "evasive tactics and dishonesty"); *Fuery*, 900 F.3d at 463-64 (affirming entry of judgment under inherent authority).

**V.     Conclusion.**

For the reasons set forth above and in the University's Motion for Sanctions and opening brief, the University respectfully requests that the Court grant its Motion, dismiss this action in its entirety with prejudice, and order any other relief the Court deems just and proper.

Date: March 3, 2026                             Respectfully submitted,


                                                s/ Scott L. Warner

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all registered counsel of record this 3rd day of March 2026:

Joseph P. Selbka
MacDonald, Lee, & Senechalle, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
pleadings@pmllegal.com
(847) 310-0025

                                                   s/ Scott Warner