**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-02525 |
| | ) | |
| v. | ) | Honorable Lindsay C. Jenkins |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF CHICAGO'S MOTION FOR SUMMARY JUDGMENT**

Defendant University of Chicago (the "University"), by and through its undersigned counsel, respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the remaining claims in Plaintiff Robert Hight's ("Plaintiff") Second Amended Complaint ("SAC"). In support of this Motion, the University states as follows:

1. The University dismissed Plaintiff from its Pritzker School of Medicine after Plaintiff sent an email impersonating another student to a medical resident who had evaluated him in a clerkship and criticizing the resident for not just giving all students the highest possible grade (the "April 30, 2023 email incident"). Plaintiff admits that he created a fake Gmail account impersonating the other student and drafted the email at issue under that student's name. The University's decision to dismiss Plaintiff was based not only on the April 30, 2023 email incident but also on an assessment of Plaintiff's performance as a student, including his other professionalism lapses and academic deficiencies.

2. After a seven-member faculty committee (known as the "CAP") unanimously recommended that Plaintiff be dismissed, he claimed for the first time in his internal appeal of that decision that he was under the influence of the sleep medication zolpidem (Ambien) at the time of

the April 30, 2023 email incident. The six-person appeal committee (known as the "AAC") determined that this explanation, even if true, did not excuse the April 30, 2023 email incident or Plaintiff's prior instances of poor professionalism and other academic deficiencies. The PSOM Dean affirmed the decisions of the CAP and AAC, thus making Plaintiff's dismissal final. In total, the 12 PSOM faculty members on the CAP and the AAC, the one PSOM student member of the AAC, and the PSOM Dean all unanimously determined after an extensive review of his academic history that, in their academic judgment, Plaintiff should be dismissed.

3. In this action, Plaintiff claims that he was dismissed from PSOM based on a disability, in violation of Title III of the Americans with Disabilities Act, as amended (the "ADA") (Count I) and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") (Count II). Second Amended Complaint ("SAC"), Dkt. 35, at ¶¶ 40-81; Dkt. 34 at 5-9;[1] *see also* Dkt. 54 at ¶¶ 49-81. Plaintiff further claims that the University failed to accommodate him by "refusing to consider modifications of the disciplinary process to determine whether [his] Medical Reaction Disability could have been accommodated," in violation of both the ADA (Count IV) and the Rehabilitation Act (Count V). SAC ¶¶ 95-133; Dkt. 34 at 9-11; Dkt. 50 at 1-2. Finally, Plaintiff alleges the breach of his contract with the University premised upon the alleged violation of certain procedural protections set forth in the University's published procedures (Count III). SAC ¶¶ 39, 82-94; Dkt. 34 at 11-14; Dkt. 50 at 2-3.[2] The University is entitled to summary judgment on all of Plaintiff's claims.

---

[1] Although Counts I and II of the SAC, on their face, each include a failure-to-accommodate claim, the Court dismissed the failure-to-accommodate claims in Counts I and II in ruling on the University's motion to dismiss these claims from Plaintiff's First Amended Complaint. Dkt. 34 at 9-11. The failure-to-accommodate claims that remain pending are those that Plaintiff included in Counts IV and V of the SAC, which are premised on the theory that the University failed to accommodate what he labels as a "Medication Reaction Disability." SAC ¶¶ 95-133. Counts I and II only remain pending to the extent they allege that the decision to dismiss Plaintiff was discriminatory based on his disability.
[2] Although Count III of the SAC also alleges the University breached an obligation to comply with anti-discrimination law and a "breach of implied tuition contract" theory, the Court has already ruled that Plaintiff cannot proceed under either of these theories and that his breach of contract claim is limited to his allegations regarding the University's

4. First, Plaintiff cannot establish that any of his claims under the ADA or the Rehabilitation Act in Counts I-II and IV-V because the record demonstrates that he was not "otherwise qualified" to continue as a medical student at PSOM in that he failed to comply with PSOM's professionalism requirements. After receiving accommodations for multiple disabilities, Plaintiff was a low performer in three of his first- and second-year courses, failed a total of three required shelf exams during his clerkship years, engaged in at least two instances of unprofessional behavior, and was placed on Monitored Academic Status and Academic Probation. He then took a leave of absence and, upon his return, not only created the fake Gmail account and sent the April 30, 2023 email impersonating another student, but also submitted an abstract to a conference in which he failed to credit his co-authors. Because Plaintiff failed to adhere to PSOM's professionalism standards, the undisputed evidence shows that he was not qualified within the meaning of the ADA and Rehabilitation Act and the University is entitled to summary judgment on all of Plaintiff's ADA and Rehabilitation Act claims (Counts I-II and IV-V) for this reason alone.

5. Second, the University is also entitled to summary judgment on Plaintiff's failure-to-accommodate claims in Counts III and IV for separate and additional reasons. His alleged "Medication Reaction Disability" does not qualify as a disability as a matter of law because Plaintiff has taken other medications for sleep issues and therefore zolpidem was not a necessary treatment; nor was zolpidem disabling because the April 30, 2023 email incident was a one-time occurrence that did not substantially limit a major life activity. An even more fundamental defect with these same claims is that Plaintiff's request was only made as part of his appeal ***after*** the April 30, 2023 email incident occurred and ***after*** the CAP had already reached its unanimous decision recommending that Plaintiff be dismissed, and thus was an unreasonable request for retroactive

---

alleged breach of "specific procedural protections articulated in the University's guidelines regarding disciplinary proceedings." Dkt. 34 at 13-14; *see* Dkt. 50 at 2-3; *see also* SAC ¶¶ 39, 88-90.

leniency or a second chance. Moreover, Plaintiff's requested accommodation would have required PSOM to lessen its professionalism standards, which is not a reasonable accommodation even if Plaintiff's egregious professionalism lapse in connection with the April 30, 2023 email was related to a disability.

6. Third, the evidence shows that Plaintiff was not dismissed from PSOM because of his disability, which is fatal to his discrimination claims under both the ADA and the Rehabilitation Act in Counts I-II. As an initial matter, the record clearly shows that the decision makers at all three levels of the internal process that culminated in Plaintiff's dismissal based their decisions on legitimate, non-discriminatory reasons and exercised their academic judgment in reaching their decisions. There is no evidence that these rationales were pretextual, as the record also shows that PSOM engaged in extensive efforts to help and support Plaintiff while he was a student, including by implementing the approved accommodations he actually requested, allowing him to take multiple leaves of absence and utilize an extended curriculum option that allowed him to take a lighter academic load, and covering the cost for him to have approximately 89 hours of academic support services. Moreover, even if Plaintiff's underlying unprofessional conduct were related to a disability, it is well-established that a university does not need to excuse a student's past misconduct in such a circumstance. Finally, there is no record evidence of any students with similarly egregious professionalism issues that were treated more favorably than Plaintiff. Ultimately, there is no evidence upon which a reasonable jury could find that Plaintiff's disability played any role in Plaintiff's dismissal, let alone that it was the ***sole*** reason for Plaintiff's dismissal as required under the Rehabilitation Act. As a result, the University is also entitled to summary judgment on Counts I and II for these additional reasons.

7. Finally, Plaintiff's breach of contract claim also fails in fact and as a matter of law both because he cannot identify the breach of any specific identifiable contractual promise and because, even if he could, no reasonable jury could find that the University's decision to dismiss Plaintiff was arbitrary and capricious. The record shows that the University complied with the procedures that applied to the internal proceeding that resulted in Plaintiff's dismissal. The record also precludes a finding that the University failed to exercise its academic judgment at all or that there was no discernible rational basis for the decision to dismiss Plaintiff, as is required under well-established law to prove arbitrary and capricious conduct. Accordingly, the University is also entitled to summary judgment on Count III.

8. The University is also filing a supporting Memorandum of Law and a Local Rule 56.1 Statement of Material Facts in support of this Motion.

WHEREFORE, for the foregoing reasons and those set forth in the University's supporting Memorandum of Law, the University is entitled to summary judgment as a matter of law on all of Plaintiff's remaining claims in the Second Amended Complaint (Counts I-V) and respectfully requests that the Court dismiss all of those claims and this action in their entirety with prejudice.

Date: October 30, 2026

Respectfully submitted,

s/ Scott L. Warner

Scott L. Warner
Mary E. Deweese
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500 (tel.) | (312) 655-1501 (fax)
scott.warner@huschblackwell.com
mary.deweese@huschblackwell.com

*Attorneys for Defendant*
*University of Chicago*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following counsel of record this 30th day of October 2026:

Joseph P. Selbka
MacDonald, Lee, & Senechalle, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
pleadings@pmllegal.com
(847) 310-0025

s/ Scott L. Warner________________

***Attorney for Defendant***
***University of Chicago***