IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HIGHT, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO, an Illinois Not for Profit Corporation,<br><br>Defendant. | Case No.: 2024 CV 02525<br><br>Judge Lindsay C. Jenkins<br><br>JURY TRIAL DEMANDED |

**Plaintiff's Memorandum in Support of Motion for Summary Judgment as to Counts I and III of Plaintiff's Second Amended Complaint (Liability only as to Count III)**

**I. Table of Contents- See Appendix 1**

**II. Table of Cases- See Appendix 2**

**III. Introduction**

NOW COMES the Plaintiff, Robert Hight ("Plaintiff"), by and through his attorneys, MacDonald, Lee, & Senechalle, Ltd., and submits the following memorandum in support of its motion as to summary judgment as to Count I of the Plaintiff's Second Amended Complaint and as to liability for Count III of the Second Amended Complaint against Defendant, the University of Chicago ("Defendant").

**IV. Summary of Arguments**

Plaintiff seeks summary judgment as to Count I of the Second Amended Complaint based on the fact that Plaintiff suffered from multiple disabilities over a long period of time, some of which were accommodated. Nonetheless, Defendant took adverse actions against Plaintiff for matters which had been successfully accommodated. Second, Plaintiff seeks summary judgment against Defendant as to liability for Count III (breach of contract) based on the fact that conclusive evidence shows Defendant dismissed Plaintiff for arbitrary and capricious reasons.

## V. Statement of Facts Which Require Entry of Summary Judgment on Counts I and III

### A. Parties and Their Relationship

Defendant is a university located in Chicago, Illinois which operates a medical school (Rule 56.1, #1;Ex. A, Second Amended Complaint #3, Ex. B, Amended Answer to Second Amended Complaint #3). Defendant's medical school operates a program where Defendant awards a medical doctor degree ("Defendant's Program")(Rule 56.1, #2; Ex. A, Second Amended Complaint #2,6, Amended Answer to Complaint #2,6). Plaintiff was a fourth year medical student who applied to Defendant's Medical Program (Rule 56.2, 3,4; Ex. A, Second Amended Complaint #6, Ex. B, Amended Answer to Second Amended Complaint #6). Plaintiff was accepted into Defendant's Medical Program in August, 2018 (Rule 56.1, #3; Ex. A, Second Amended Complaint #6, Exhibit B, Answer to Second Amended Complaint #6). In or about September, 2023, Plaintiff was dismissed from the Defendant's Program purportedly for the reasons set forth below (Rule 56.1, #5; Ex. A, Second Amended Complaint #36, Ex. B, Amended Answer to Second Amended Complaint #36).

### B. Plaintiff's Disabilities from August, 2018 to September, 2023

Plaintiff has multiple disabilities within the meaning of the ADAAA (Rule 56.1, #6-8,; Ex. D, Sworn Statement of Robert Hight, #4-12, 14). For purposes of this motion, there were three

specific impairments which required accommodation (Rule 56.1, ##6-9; Ex. C, Dep. of Robert Hight, pp. 22-24, Hight Dep. Ex. 3,Answers to Interrogatories, #5).

First, Plaintiff has Attention Deficit Hyperactivity Disorder ("ADHD") (Rule 56.1, #6; Ex. C, Robert Hight Dep. pp. 22-24, Hight Dep. Ex. 3, Answers to Interrogatories #5; Ex. E, Medical Records of Robert Hight, pg. UHealth 21). Plaintiff received testing accommodations soon after enrolling with Defendant (Rule 56.1, #7; Ex. F, Dorsey Dep. pg. 37, Dorsey Dep. Ex. 103, pg.15).

Second, and more importantly for purposes of this motion, Plaintiff sought and received a leave of absence as an accommodation due to multiple physical impairments including sickle cell anemia, gallstones, hypertension, inflammatory arthritis, anxiety and bipolor disorder (Rule 56.1, #10-11; Ex. C. Dep. of Robert Hight pp. 22-24; Hight Dep Ex. 3, Answers to Interrogatories #5 ; Ex. G, Dep. of Mark Anderson, pg. 29, Ex. F, Chelsea Dorsey Dep. pg. 24-26, 37, Dorsey Ex. 103, pg. 15; Ex. E, Medical Records of Robert Hight, pg. Uhealth 21).

At the time of the leave of absence, these conditions combined to cause physical weakness; affected Plaintiff's to concentrate; affected Plaintiff's ability to sleep; affected Plaintiff's ability to walk; and affected Plaintiff's ability to study (Rule 56.1, #9; Ex. C, Dep. of Robert Hight pp. 45; Ex. D. Sworn Statement of Robert Hight #4). Together, these conditions in combination constitute an impairment or impairments which affected multiple major life activities of studying, concentrating, sleeping, and walking (Rule 56.1, #9, Ex. C., Dep. of Robert Hight, pp. 45, Ex. D, Sworn Statement of Robert Hight #4).

In July 2021, Plaintiff sought an accommodation for his second disability in the form of a leave of absence (Rule 56.1, #10, Ex. C, Dep. of Robert Hight, pp. 126; Hight Dep. Ex. 24). Defendant granted the accommodation (Rule 56.1, #10, Exhibit G, Dep. of Mark Anderson, pg.

29, Ex. F Chelsea Dorsey Dep. pg. 24-26, 37, Dorsey Ex. 103, pg. 15). Plaintiff took a leave of absence from August, 2021 to January, 2022 (Rule 56.1, #11, Ex. C, Dep. of Robert Hight, pp. 126; Ex. F, Chelsea Dorsey Dep. pg. 21). Defendant successfully accommodated Plaintiff with the leave of absence, and Plaintiff's academic performance and professionalism improved markedly (Rule 56.1, #15, Ex. F. Dep. of Chelsea Dorsey, pp. 22-23, 26-27).

Finally, on April 30, 2023, Plaintiff suffered a reaction to one of his medications, Zolpidem (Rule 56.1, #16, Ex. H, Alberto Augsten Dep. pp. 50-53). This reaction caused memory loss, loss of judgment, and difficulty in controlling his inhibitions (Rule 56.1, #16, Ex. H, Dep. of Alberto Augsten, pp. 50-53). On April 30, 2023, Plaintiff sent an e-mail where he impersonated another doctor to one of his instructors challenging her teaching methods (Rule 56.1, #17, Ex F., Dorsey Dep. Ex. 103 at pg. 14). This e-mail was sent as a result of Plaintiff's lowered inhibitions due to the medication reaction (Rule 56.1, #17). As a result of the April 30, 2023, e-mail, Dr. Carrie Smith issued a professional concern report regarding the incident ("2023 PCR") in July, 2023 (Rule 56.1, #17; ex. F, Dorsey Dep. ex. 103 at 16; Ex. C, Hight Dep, pp. 226-227, Hight Dep. Ex. 43).

Dr. Anderson, Defendant's Dean who made the final decision to dismiss Plaintiff, agreed that a medication reaction could affect Plaintiff's responsibility for sending the April 30, 2023, e-mail and hence judgment of Plaintiff's professionalism (Rule 56.1 #27, Ex. G, Dep. of Mark Anderson, pg. 35-42). Defendant's agents acknowledged that Plaintiff suffering the claimed medication reaction was a possibility (Rule 56.1, #24, Ex. I, Vineet Arora Dep. pp 50-52). Although Defendant has now retained an expert claiming Plaintiff did not suffer a medication reaction, no person evaluated how Plaintiff's claim of a medication reaction affected his responsibility for his actions prior to dismissal (Rule 56.1, #27 Ex. G, Dep. of Mark Anderson, pp. 35-42).

**C. Plaintiff's Academic Performance and Professionalism from 2018 until his Dismissal**

Plaintiff received lower academic grades in Defendant's Program from August, 2018 to August, 2021 compared to his performance after returning from his leave of absence (Rule 56.1, #12; Ex. F, Chelsea Dorsey Dep. pg. 15-21). Plaintiff was a low performer in some lecture classes, but he passed all of his lecture classes (Rule 56.1, #13; Ex. F, Chelsea Dorsey Dep. pp. 16-17). Plaintiff failed one shelf exam on his first try in his pediatrics rotation, but was able to pass the clerkship (Rule 56.1, #13; Ex. F. Chelsea Dorsey Dep. pg. 20). Plaintiff failed his ob-gyn clerkship on the first try (Rule 56.1, #13, Ex. F, Chelsea Dorsey Dep. pg. 20). Plaintiff's poor academic performance resulted in Plaintiff being placed on academic probation in August, 2021 (Rule 56.1, #14, Ex. F, Chelsea Dorsey Dep. pg. 23). After his leave of absence in 2021-2022, Plaintiff's academic performance improved (Rule 56.1, #14, Ex. F, Chelsea. Dorsey Dep. pg. 22-23). After returning from his leave of absence, Plaintiff improved considerably (Rule 56.1, #14, Ex. F, Chelsea Dorsey Dep. pg. 26-27). The Defendant's Committee on Academic Promotions ("CAP") removed Plaintiff from academic probation and moved him to monitored academic status (Rule 56.1, #14, Exhibit F, Chelsea Dorsey Dep. pg. 26-30). This was an indication that Plaintiff improved academically after returning from his leave of absence (*Id.*).

Prior to his leave of absence in 2020, Plaintiff received a professionalism concern report ("2020 PCR") for chronic lateness and absenteeism as well as issues around failing to take responsibility for unexcused absences ( Rule 56.1, #15, Exhibit C, Hight Dep. pg. 89-90 Hight Dep. Ex. 12 ). Plaintiff's issues set forth in the 2020 PCR improved after he returned from his leave of absence (Rule 56.1, #15, Ex. F, Chelsea Dorsey Dep. pg. 64).

**D. The Final Incident Where Plaintiff Had a Reaction to Medication**

On or about April 30, 2023, Plaintiff had a reaction to Zolpidem (Rule 56.1, #16, Ex. H, Augsten Dep. pp. 50-52). The medicine reaction lowered Plaintiff's inhibitions and affected his judgment (Rule 56.1, #16, Ex. H, Augsten Dep. 50-52, 73-75, 87-94). The medicine reaction also affected Plaintiff's memory (*Id.*). As a result of the medication reaction, Plaintiff impersonated another doctor and sent an e-mail challenging his instructor's teaching methods (Rule 56.1, #17, Ex. F, Chelsea Dorsey Dep. Ex. 103, pg. 14). As a result of the e-mail, Dr. Carrie Smith issued a professional concern report against Plaintiff in July, 2023 (Rule 56.1, #17, Exhibit F, Chelsea Dorsey Dep. Ex. 103, pg 16, Exhibit C, Hight Dep. 226-227, Hight Dep. Ex. 43). The CAP used this incident and subsequent professional concern report as one reason to recommend dismissal of Plaintiff (Rule 56.1, #18, Ex. F, Chelsea Dorsey De. Pg. 39. 44). ("2023 PCR").

## E. <u>The Dismissal Proceedings against Plaintiff and Plaintiff's Dismissal</u>

### *i.* <u>The Proceedings Before the CAP and the Reasons Given for Dismissal</u>

After the 2023 PCR, the CAP began considering dismissal of Plaintiff (Rule 56.1, #19, Ex. F, Dep. of Chelsea Dorsey, pg. 39, Dorsey Dep. Ex. 103). The CAP ultimately recommended dismissal for Plaintiff in September, 2023, based on four factors: (1) a pattern of unprofessional conduct during his time as a student in Defendant's Program; (2) consistently low academic performance while Plaintiff was a student in Defendant's Program; (3) unprofessional conduct while on Monitored Academic Status; and (4) the 2023 PCR (Rule 56.1, #20, Ex. F, Chelsea Dorsey Dep. pg. 41; Dorsey Ex. 103). Plaintiff appealed the CAP's recommendations to the Defendant's Academic Appeals Committee ("AAC")(Rule 56.1, #23, Ex. C, Robert Hight Dep. pp. 181-182, 188).

In regard to the pattern, in addition to the April 30, 2023, e-mail, the CAP cited: (1) the 2020 PCR; (2) Plaintiff's challenging his evaluations from 2018 until his dismissal; (2) a concern

in two rotations that Plaintiff did not accept feedback well; and (3) filed mistreatment reports and complaints when Plaintiff believed he was being mistreated (Rule 56.1, #21, Ex, F, Chelsea Dorsey Dep. pp 52-53; Dorsey Ex. 103, pg. 15-18; Exhibit G, Mark Anderson Dep pp.18-20; Ex. I, Vineet Arora Dep. pp. 86-89; Ex. J, JamesWoodruff Dep. pp. 62-66). Defendant's various corporate representatives and agents also testified that the Defendant's agents found Plaintiff's challenges to his evaluations; filing of mistreatment reports; and methods of seeking feedback unprofessional (*Id.*).

CAP also treated an authorship issue over an abstract as a professionalism issue (Rule 56.1, #22, Ex. F, Chelsea Dorsey Dep, Dorsey Ex. 103, pp. 15-18). Dr. Barbosa was Plaintiff's supervising faculty member regarding this issue (Rule 56.1, #22, Ex. K, Barbosa Dep. pp.16-17). Dr. Barbosa did not file a professionalism concern report over the issue (Rule 56.1, #22, Ex. K, Barbosa Dep. pg. 20). Dr. Barbosa did not intend for the abstract issue to be a basis for dismissal of Plaintiff (Rule 56.1, #22, Ex. K, Barbosa Dep. pg. 21).

### ***ii.*** **<u>The Reasons Before the AAC and the Reasons Given for Dismissal</u>**

Plaintiff was first able to challenge the CAP accusations against him before the AAC (Rule 56.1, #23, Ex. C, Robert Hight dep. pp. 181-182, 188). During the AAC deliberations, the AAC acknowledged that a reaction to medication was a possibility, but concentrated on the sincerity of Plaintiff's apology for sending the April 30, 2023 e-mail (Rule 56.1, #24, Ex. I, Vineet Arora Dep. pp. 50-52). Most importantly, for purposes of this motion, the AAC made no determination as to whether Plaintiff's judgment or ability to control his inhibitions were affected by the medication reaction (Rule 56.1, #24, Ex. I, Vineet Arora Dep. pp. 50-52). The AAC also never made a definitive determination whether Plaintiff actually had a medication reaction (Rule 56.1, #24, Ex. I, Arora Dep. pp. 50-52, 126-131). The AAC then submitted its recommendation to Dean Mark

Anderson who made the final decision to dismiss Plaintiff (Rule 56.1, #25, Ex.I, Vineet Arora dep. pp. 126-131).

### *iii.* The Decision of Dean Anderson to Dismiss Plaintiff

Dean Anderson ultimately decided to affirm the dismissal recommendation of the CAP (Rule 56.1, #26, Ex. G, Mark Anderson Dep. pp. 17). Dean Anderson based his decision on the findings and reasoning set forth by the CAP (Rule 56.1, #26, Ex G, Mark Anderson Dep. pp. 17-18*)*. Dr. Anderson admitted that, to judge Plaintiff's professionalism regarding the April 30, 2023, e-mail, the Defendant would have had to have determined the extent of Plaintiff's responsibility in light of the medication reaction (Rule 56.1, #27, Ex. G, Mark Anderson Dep. pg. 35-42). Dr. Jeanne Farnan who testified as to procedures for assessment noted that culpability was an important component in determining a professionalism violation. Rule 56.1, #27, Exhibit L, Farnan Dep. pg. 23). Dr. Anderson also admitted that no decision maker for Defendant actually made a determination as to Plaintiff's responsibility in light of the medication reaction for the April 30, 2023 e-mail prior to dismissing Plaintiff (Rule 56.1, #28, Ex. G, Mark Anderson Dep. pg. 35-42).

### F. Defendant's Academic and Professionalism Standards and Plaintiff's Performance and Deviations from Procedures in Plaintiff's Case During his Dismissal

Dr. Jeanne Farnan testified as Defendant's corporate representative as to Defendant's evaluation procedures and academic guidelines (Rule 56.1, #29, Ex L. Jeanne Farnan Dep. pp. 11-12). Dr. Farnan testified that, as to grading Plaintiff's academic performance, the Defendant uses a criterion based model where students are graded to determine competency as opposed to a system where Plaintiff is compared to his peers (Rule 56.1, #29, Ex. L, Jeanne Farnan Dep. pp 11-12). Dr. Farnan testified that as long as Plaintiff was passing his classes, he was demonstrating competency under the criterion based grading model (Rule 56.1, #29, 30, Ex. L, Jeanne Farnan Dep. pg. 27). Plaintiff was entitled to take shelf exams twice in clinical courses and was able to retake clinical

courses once to obtain a passing grade (Rule 56.1, #30, Ex. L Jeanne Farnan Dep. pp. 30-32). Plaintiff passed all of his classes under the published critierion based system, and thus using Plaintiff's alleged poor academic performance compared to his peers was a substantial deviation from the published grading procedures

As to professionalism, Dr. Farnan testified that professionalism is defined by grades given in professionalism courses and through the professionalism concern report process (Rule 56.1, #31, Ex. L Jeanne Farnan Dep. pp.51-53). Professionalism is defined through grades in clerkships and enforcement of the rules and guidelines through the professionalism concern report process (Rule 56.1, #31, Ex. L, Jeanne Farnan Dep. pp. 40-41, 52-53). If there is a violation of the professionalism rules and guidelines, this is demonstrated by issuance a professionalism concern report. (*Id.*) Defendant's reliance on professionalism issues to dismiss Plaintiff not reflected in the professionalism concern report process thus is a substantial deviation from Defendant's published policies regarding professionalism.

Defendant also has a nondiscrimination policy which prohibits discrimination based on disability (Ex. L, Farnan Dep. Dep. Ex. 101, pg. 44). The failure to take into account Plaintiff's successful accommodation and improvement after accommodation as to both professionalism and academics constitutes a substantial departure from that policy.

Finally, Defendant's policies specifically allow for challenging evaluations and seeking feedback (Rule 56.1, #32, Ex. J, James Woodruff Dep. pg. 50, 56). Seeking feedback regarding evaluations is not a professionalism issue (Rule 56.1, #32, Ex. L, Jeanne Farnan Dep. pg. 20). Filing grievances through grievance policies is not a professionalism concern (Rule 56.1, #32, Ex. L, Jeanne Farnan Dep. pg. 21). Defendant has an anti-retaliation policy which prohibits retaliation for filing complaints or challenging evaluations (Rule #56.1, #34, Ex. J, James Woodruff Dep. pg.

67). Yet Defendant used what it saw as a pattern of seeking feedback as to evaluations, trying to have evaluations changed, and filing complaints as unprofessional (Rule 56.1, #35, See Ex. J, James Woodruff Dep. pg. 47-49, 64, 67). This is a substantial departure from the Defendant's stated assessment practices which permit all said conduct.

### G. Plaintiff's Intention to Return to Defendant's Medical Program When the Dismissal is Overturned

Plaintiff intends to reenroll in Defendant's Medical Program when the dismissal is overturned, and is thus suffering continuing adverse effects from the discriminatory dismissal (Ex. D, Robert Hight Aff. #20-21).

## VI. Summary Judgment is Appropriate as To Counts I and III of the Complaint

### A. Summary Judgment is Mandated as to Count I of the Complaint (Violation of the ADAAA).

#### *i.* Defendant Violated Title III of the ADAAA

The Defendant is prohibited from taking adverse actions against Plaintiff on the basis of his disability. 42 USCA 12182. This language was inserted into the ADAAA in 2008 in an effort to expand the protections of disability discrimination to correspond to the standard in other civil rights laws, most notably Title VII. Benfer, Emily. The ADA Amendments Act:An Overview of Recent Changes to the Americans With Disabilities Act, The American Constitution Society for Law and Policy (September, 2009); H.R. Rep. 110-730 at 21 (2008). The Seventh Circuit has not issued a rule of law for circumstances when a defendant discriminated on the basis of disability as one of several reasons for an adverse action. *Kurtzhals v. City of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020). Title VII specifically prohibits discrimination when there are mixed motives for discrimination and allows for remedies for such actions. 42 USCA 2000e-2(m).

Moreover, Title III of the ADAAA (which prohibits discrimination in public accommodations) has expansive language defining discrimination not contained in other

provisions of the ADAAA. 42 USCA 12182(b)(2). Any criteria which tends to screen out Plaintiff's eligibility for the Defendant's program based on disability is discrimination. *Id.* Criteria represent judgments made by a university regarding a person with a disability. *Guckenberger v. Boston University,* 947 F.Supp. 106, 134-135 (D. Mass. 1997); *Emery v. Caravan of Dreams,* 879 F.Supp. 640, 643-644 (N.D. Tx. 1995). Likewise, Defendant must modify all practices and procedures to ensure Plaintiff is afforded his accommodations. *Id.* Moreover, any method of administration which has the effect of discriminating on the basis of disability is prohibited. 42 USCA 12182(b)(1)(D).

Here, the ADAAA amendments expanding the definition of disability discrimination combined with the additional prohibitions in 42 USCA 12182(b)(2) operate to require summary judgment against Defendant regardless of whether the Defendant prevails on the medical reaction issue as a basis for discrimination. Specifically, Defendant used, as some of the bases for Plaintiff's dismissal, actions which occurred prior to Defendant's successful accommodation of one of Plaintiff's disabilities. When a defendant successfully accommodates a disability and then subsequently uses unaccommodated conduct to take adverse actions against a plaintiff, this is disability discrimination as a matter of law. *Isbell v. John Crane, Inc.* 30 F.Supp.3d 725, 734-736 (N.D. Ill. 2014). This is especially true in public accommodation cases where a defendant is required to modify its practices and procedures to ensure a plaintiff is afforded his or her accommodations. 42 USCA 12182(b)(2).

Yet that is what Defendant did in this case. This is a case where Plaintiff had multiple disabilities within the meaning of the ADAAA which manifested over separate periods of time. Specifically, Plaintiff initially was accommodated through testing accommodations and, eventually, a leave of absence. The leave of absence, as admitted by the Defendant, was highly

effective in accommodating Plaintiff's disability. Plaintiff's academic performance and professionalism improved markedly after returning from his leave of absence. Plaintiff passed all of his classes and was removed from academic probation after his leave of absence accommodation. Nonetheless, Defendant: (1) used pre-leave accommodation academic and professionalism difficulties as one reason to dismiss Plaintiff; and then (3) used Plaintiff's preleave unaccommodated conduct as several of the reasons to take an adverse action against Plaintiff (dismissal from the Defendant' medical program). This is disability discrimination as a matter of law. It is also: (1) using criteria for dismissal which either did screen out or tended to screen out Plaintiff from participation in Defendant's medical program; (2) a failure to modify Defendant's dismissal procedures to afford Plaintiff his accommodations; and (3) a method of administration which had the effect of discriminating against Plaintiff based on his disability. As such, Plaintiff is entitled to summary judgment on Plaintiff's ADAAA claim under Title III of the ADAAA. *Isbell v. John Crane, Inc.* 30 F.Supp.3d 725, 734-736 (N.D. Ill. 2014).

**ii. <u>Plaintiff is Entitled to a Permanent Injunction under Title III of the ADAAA</u>**

In Title III cases, Plaintiff is entitled to seek a preliminary and permanent injunction to restore the last peaceable status quo between the parties. *Doe v. Samuel Merritt University,* 921 F.Supp.2d 958, 962-963 (N.D. Cal. 2010). In university dismissal cases, this is the time period before a plaintiff student was dismissed from the university. *Id. See also Amir v. St Louis University,* 184 F.3d 1017 (8th Cir. 1999). Since Plaintiff seeks to reenroll in the Defendant's program after the dismissal is overturned, there are continuing adverse effects to Plaintiff justifying a permanent injunction.In determining whether a permanent injunction should issue, the Court applies the following standard set forth in *Plummer v. American Institute of Certified Public Accountants,* 97 F.3d 220, 229 (7th Cir. 1996):

> A court must consider four traditional criteria in deciding whether to grant injunctive relief: (1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of the injunction will harm the public interest. *N.L.R.B. v. Electro-Voice, Inc., 83 F.3d 1559, 1567 (7th Cir. 1996)*; *Faheem-El v. Klincar, 841 F.2d 712, 716 (7th Cir. 1988)*. A permanent injunction (as opposed to a preliminary injunction or a temporary restraining order) is not provisional in nature, but rather is a final judgment. *Walgreen Co. v. Sara Creek Property Co., 966 F.2d 273, 275 (7th Cir. 1992)*. Thus, when the plaintiff is seeking a permanent injunction, the first of the four traditional factors is slightly modified, for the issue is not whether the plaintiff has demonstrated a reasonable likelihood of success on the merits, but whether he has in fact succeeded on the merits. *See Amoco v. Village of Gambell, 480 U.S. 531, 94 L. Ed. 2d 542, 107 S. Ct. 1396, 1404* ***[**33]*** *n.12 (1987)*.

As discussed above, Plaintiff is entitled to judgment on the merits In Title III cases, remedies are unavailable at law pursuant to the plain language of the statute. *Rose v. Cahee,* 727 F.Supp.2d 728, 740 (E.D. Wis. 2010). As such, prong 2 of the test for injunctive relief is met as a matter of law. *Id.* As for prongs 3 and 4, the equities favor the public interest is served by entering a injunction to prohibit disability discrimination. *Cazares v. Organic Cotton Mart LLC,* 2026 U.S. Dist. Lexis 157722 at 6-7 (E.D. Wis. July 16, 2026). Moreover, Plaintiff has repeatedly asserted that he desires to reenroll to the Defendant's Medical Program if he is permitted to do so after the improper dismissal is overturned. As such, Plaintiff has alleged the continuing adverse effects of the dismissal decision necessary for a permanent injunction to issue.

## B. Summary Judgment is Mandated as to Count III of the Complaint as to Liability (Breach of Contract)

### *i.* The Procedural Posture of the Case as to Plaintiff's Breach of Contract Claim

As an initial matter, the Plaintiff needs to explain the procedural posture of the case and why the previous rulings of this Court do not bar summary judgment on Plaintiff's breach of contract claim.

***ii.*** **<u>The Initial Ruling on Defendant's Motion to Dismiss and Subsequent Rulings</u>**

First, on October 31, 2024, (Docket #34), the Court dismissed some aspects of Plaintiff's breach of contract claim. Plaintiff subsequently filed a motion to reconsider or clarify which was fully briefed. On January 22, 2025, the Court denied said motion to reconsider (Docket #50). Importantly, the Court never ruled on whether Plaintiff could prove a breach of contract claim by proving that Plaintiff was successfully completing his studies and progressing towards receipt of a degree, but was dismissed for arbitrary and capricious reasons.

In ruling on the motion to reconsider, the Court noted that there seems to be a divergence between the Illinois state and federal courts regarding Illinois breach of tuition contract cases (Docket #50). However, the United States Supreme Court forbids such a divergence. *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177-180(1940). It is impermissible for state law to be different in the federal courts and in the state courts. *Id.* at 180. When a federal district court determines an issue of Illinois state law, the district court's job is to sit as an Illinois state court. *Commissioner v. Estate of Bosch,* 387 U.S 456, 465 (1967). A district court is not permitted to depart from binding state precedent because of a divergent opinion from a Federal Circuit Court of Appeals. *Fidelity Union Trust Co.,* 311 U.S. at 180. As discussed below, Plaintiff has proved his case under Illinois state law precedents.

***iii.*** **<u>The Court's Denial of Plaintiff's Motion for Leave to File Third Amended Complaint</u>**

As discussed below, the Illinois Supreme Court and the Illinois intermediate courts have allowed a breach of contract claim for dismissal for arbitrary and capicious reasons. The Illinois Appellate Court and Court of Claims has repeatedly interpreted Supreme Court precedent regarding a dismissal for arbitrary and capricious reasons. The Illinois Appellate Court based its To plead and prove a claim for arbitrary and capricious dismissal, the plaintiff only need plead and

prove: (1) Plaintiff was accepted to Defendant's medical Program and paid his tuition; (2) plaintiff had completed or was satisfactorily completing the requirements of the program to obtain a degree; (2) plaintiff had completed or was prevented from completing the program; (3) for arbitrary, capricious, or bad faith reasons. *Johnson v. Lincoln Christian College,* 150 Ill.App.3d 733, 738; *Bosch v. Northshore* 2019 IL App(1st) 190070, Par. 39-41. Illinois is a fact pleading jurisdiction which requires a complaint to contain all ultimate facts allowing a plaintiff to prevail. *Blevins v. Marcheschi,* 2018 IL App(2nd) 170340, Par 29. This is a more stringent pleading standard than the notice pleading standards of the Federal Rules of Civil Procedure. Thus, under Illinois law, these are the only ultimate facts which Plaintiff needs to plead and prove are set forth above. *Johnson v. Lincoln Christian College*, 150 Ill.App.3d at 738; *Bosch v. Northshore University Health System,* 2019 IL App(1st) 190070, Par. 39-41. Both Federal Civil Procedure and Illinois Civil Procedure do not require a plaintiff to plead evidentiary facts in a complaint. *Bible v. United States Aid Funds, Inc.,* 799 F.3d 633, 639 (7th Cir. 2015)(plaintiff need only plead facts which allow court to draw reasonable inference of possibility of relief).

Violations of a university's own procedures and other evidence of arbitrary conduct are evidentiary facts in support of a complaint, not ultimate facts which must be pleaded in a complaint. *Id.* As such, Plaintiff's complaints preserved his right to bring his breach of contract claim for an arbitrary and capricious dismissal.

***iv.*** **The Court Must Follow the Precedents of the Illinois Supreme Court and the Illinois Intermediate Courts in this Case**

In adjudicating Illinois state law claims, the Supreme Court has repeatedly held that federal district and circuit courts are bound to follow state law. *West v. American Telephone & Telegraph, Inc.,* 311 U.S. 223, 236-239, (1940); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177-180

(1940); *ADT Security Services, Inc. v. Lisle-Woodridge Fire Protection District,* 672 F.3d 492, 498 (7th Cir. 2011).

When the Illinois Supreme Court has established a rule of law on a state law issue, the Court is required to apply pronouncement of the Illinois Supreme Court. *Commissioner v. Estate of Bosch,* 387 U.S 456, 465 (1967); *Hill v. International Harvester Co.,* 798 F.2d 256, ftnte 12 (7th Cir. 1986). Under Illinois law, any dicta in any Illinois Supreme Court opinion are binding precedent on the lower courts. *People v. Wiliams,* 204 Ill.2d 191, 206-207 (2003); *Cates v. Cates,* 156 Ill.2d 76, 80 (1993). This rule applies to both diversity cases and cases where the Court is exercising supplemental jurisdiction over state law claims. *Epic Systems Corp. v. Tata Consulting Services, Ltd.,* 980 F.3d 1117, 1128 (7th Cir. 2020); *Timmerman v. Modern Industries, Inc.,* 960 F.2d 692, 696 (7th Cir. 1992). Moreover, the Court is required treat the decisions of Illinois intermediate courts as binding precedent unless there is some reason to believe the Illinois Supreme Court would rule to the contrary. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1968) *Fidelity Union Trust Co.,* 311 U.S. at 177-181; *ADT Security Services, Inc.* 672 F.3d at 498.

***v. Gociman v. Loyola University* Has No Application to this Case**

As discussed above, the Illinois Courts (including the Illinois Supreme Court) recognize that a university breaches its contract for dismissal of a student for arbitrary or capricious or bad faith reasons. In ruling on a motion to dismiss, this Court relied on *Gociman v. Loyola University of Chicago,* 41 F.4th 873 (7th Cir. 2022), has nothing to do with this case in that *Gociman* did not concern a breach of contract based on student dismissals. As discussed above, there are different ways to prove a breach of tuition contract under Illinois law. *Bosch,* 2019 IL App(1st) 190070, Par. 31-32. The method proven by Plaintiff has been approved by the Illinois Supreme Court, and thus, the Court must follow said precedent.

***vi.*** **<u>Under Illinois Law, a Student Dismissal for Arbitrary Reasons is a Breach of Contract as the Illinois Supreme Court has Stated and The Illinois Appellate Court has Repeatedly Affirmed</u>**

There are multiple ways to plead and prove a breach of tuition contract between a university and its students under Illinois law. *Bosch v. Northshore University Health System* 2019 IL App(1st) 190070 Par. 31-32. Plaintiff is seeking to prove a breach of contract in a way specifically approved by the Illinois Supreme Court. The Illinois Supreme Court has specifically stated that a university must comply with its published procedures in dealing with its students and said procedures cannot be arbitrarily disregarded. *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 328- 332 (1977). In said opinion, the Illinois Supreme Court also held that a university has contractual duties to a student which cannot be arbitrarily disregarded. *Id.* at 332. The Illinois Supreme Court further stated that some of those duties are in the published procedures of the university. *Id*. In *Steinberg,* the Illinois Supreme Court specifically cited with approval *DeMarco v. University of Health Sciences*. In *DeMarco v. University of Health Sciences,* 40 Ill.App.3d 474, 480 (1976), the Illinois Appellate Court held:

> The record shows the court considered the academic qualifications of DeMarco, and compared his accomplishments with the degree requirements found in the 1941 bulletin of the school which comprised the terms of the contract between the school and DeMarco. A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced.. . .a plaintiff is not without a remedy when it is alleged that a decision to dismiss a student, supposedly for academic deficiencies, was made arbitrarily and capriciously and in bad faith.

In 1998, the Illinois Appellate Court handed down *Brody v. Finch University of Health Sciences/the Chicago Medical School,* 298 Ill.App.3d 146 (1998) *leave to appeal denied* 179 Ill.2d 578(1998). In *Brody,* the Appellate Court specifically held at 298 Ill.App.3d at 155-156:

> A contractual relationship exists between a college or university and its students, and the terms of the contract are generally set forth in the school's catalogs, bulletins, and brochures. . .The contractual relationship between the school and its students places duties upon both parties; these duties cannot be arbitrarily disregarded and may be judicially enforced. . .
>
> . . .Defendant argues that if a contract does exist between it and plaintiff, it is entirely contained within its catalog and brochure.. . .We find defendant's position lacks merit. . . .Third, documents distributed by a school are only a *part* of the contract between the student and the school. *Johnson v. Lincoln Christian College, 150 Ill. App. 3d 733, 738, 103 Ill. Dec. 842, 501 N.E.2d 1380 (1986)*.

The losing university-Defendant in *Brody* sought leave to appeal to the Illinois Supreme Court which denied the defendant-university's petition. The Illinois Supreme Court thus had the ability to review, modify or reverse the Illinois Appellate Court but chose not to do so. 179 Ill.2d 578(1998). The Seventh Circuit has recognized this manner of pleading and proving a breach of tuition contract. *Galdikas v. Fagan,* 342 F.3d 684, 692 (7th Cir. 2003). Over the course of the past fifty years, the Illinois Appellate Court and Court of Claims have held on numerous occasions that an arbitrary or capricious or bad faith dismissal is an actionable breach of contract. *Tanner v. Board of Trustees of the University of Illinois* 48 Ill.App.3d 680, 682-683 (1977); *Demarco v. v. University of Health Sciences,* 40 Ill.App.3d at 480*; Brody Finch University of Health Sciences/the Chicago Medical School,* 298 Ill.App.3d at 155-156*; Bosch v. Northshore Unviersity Health System,* 2019 Ill App(1st) 190070, Par. 28-38; *Johnson v. Lincoln Christian College,* 150 Ill. App.3d at 738.

The Illinois intermediate courts (the Illinois Appellate Court and the Illinois Court of Claims) have explained Illinois law as to pleading and proving breach of contract for arbitrary dismissals based on the binding precedent of the Illinois Supreme Court. There is no reason to believe the Illinois Supreme Court would rule differently as the Illinois Supreme Court has cited some of these precedents with approval and has had multiple opportunities to overturn said precedents. The

Illinois Supreme Court has never done so, and thus the precedents set by Illinois intermediate courts are binding precedent on this District Court when applying Illinois law. *West v. American Telephone & Telegraph, Inc.,* 311 U.S. 223, 236-239, (1940); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177-180(1940)

### *vii.* Illinois Precedent Regarding Evidence to Prove a Breach of Contract for an Arbitrary Dismissal

#### a. Departure from a University's Evaluation Procedures is Conclusive Evidence of Arbitrary and Capricious Conduct

First and foremost, Illinois courts look to whether a student was dismissed in violation of or in substantial deviation from Defendant's own procedures to determine whether there is evidence or an arbitrary and capricious dismissal. *Bosch v. Northshore* 2019 Ill App(1st) 190070, Par.39*; Demarco v. University of Health Sciences,* 40 Ill.App.3d at 480*; Bullock v. State of Illinois,* 54 Ill. Ct. CL 292, 294 (2002), *and Singletary v. Southern Illinois University,* 62 Ill.Ct. Cl. 198, 200-201 (2010):

> Thus, when a university establishes fixed rules and standards for assessment and then departs from those fixed rules and standards, this is arbitrary and capricious conduct. "The educational contract between the student and the educational institution inherently and implicitly adopts the academic standards of the institution... That, indeed, is a critical element of the student's contractual bargain with the institution: he or she agrees to be judged academically according to the prevailing (or duly established) standards of academic performance. Among other things, the application and enforcement of those academic standards are one of the underlying premises of higher education programs that maintains the value of the degree or certificate that the student agrees to earn. Thus the court enforces the parties' educational bargain by upholding the academic standards set by the academic professionals.

To quote the Illinois Appellate Court in *Bosch v. Northshore University Health System,* 2019 IL App(1st) 190070, Par. 39:

> That doesn't mean that other promises, contained in written materials distributed by the School, couldn't also play a role in a case like this involving wrongful dismissal.

> Of course, they could. For example, a student might point to a set of procedural protections contained in a student handbook, allege that the school failed to follow them, and offer the school's substantial deviation from published procedures as evidence of the arbitrary and capricious nature of the school's academic decision.

To quote the Illinois Appellate Court in *Demarco v. University of Health Sciences,* 40 Ill.App.3d 474, 480 (1976):

> The record shows the court considered the academic qualifications of DeMarco, and compared his accomplishments with the degree requirements found in the 1941 bulletin of the school which comprised the terms of the contract between the school and DeMarco. A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced. ( *People ex rel. Cecil v. Bellevue Hospital Medical College (N.Y. 1891), 60 Hun. 107, 14 N.Y.S. 490*; *Baltimore University v. Colton (1904), 98 Md. 623, 57 A. 14*; *State ex rel. Nelson v. Lincoln Medical College (1908), 81 Neb. 533, 116 N.W. 294*.) In the case of *Greenhill v. Bailey (S.D. Iowa 1974), 378 F. Supp. 632*, the court noted that a decision of the school authorities relating to the academic qualifications of the students will not be reviewed, but a plaintiff is not without a remedy when it is alleged that a decision to dismiss a student, supposedly for academic deficiencies, was made arbitrarily and capriciously and in bad faith. Also see *Connelly v. University of Vermont and State Agricultural College (D. Vt. 1965), 244 F.Supp. 156*.

The above stated precedents make clear that when a university substantially departs from its own procedures in dismissing a student, this is conclusive evidence of arbitrary, capricious, and bad faith conduct.

Here, Dr. Farnan's testimony (as corporate representative of Defendant) as to Defendant's policies combined with Dr. Woodruff's testimony and the academic standards of the Defendant conclusively show that most of the reasons for Plaintiff's dismissals were in violation of the Defendant's own procedures.

First, one of the reasons for Plaintiff's dismissal was his alleged poor academic performance. However, Plaintiff passed all of his classes according to Defendant's procedures. The only basis for Plaintiff's dismissal based on academic ability was his alleged weakness compared to his peers.

Dr. Farnan admitted that comparing Plaintiff's grades to his peers is irrelevant under Defendant's published academic criteria. Moreover, if Plaintiff passed all his classes, this defines satisfactory academic achievement under Defendant's grading system. Plaintiff's academic record was completely satisfactory under the procedures of the Defendant as admitted by Defendant's corporate representative. Using Plaintiff's academic performance as a reason for dismissal was thus arbitrary and capricious. *Demarco,* 40 Ill.App.3d at 480*; Bosch,* 2019 IL App(1st) 190070, Par. 39).

Second, one of the reasons for Plaintiff's dismissal was his alleged lack of professionalism. Dr. Farnan, Defendant's corporate representative testified that Plaintiff's professionalism was defined by: (1) the professionalism grades he received in his classes; (2) professionalism concern reports. Dr. Farnan also testified that Plaintiff was permitted to make complaints regarding grading and said complaints were not unprofessional conduct.

However, some of the reasons for Plaintiff's dismissal for alleged lack of professionalism were: (1) that he filed too many complaints challenging his grades which Defendant admitted is not a violation of professionalism requirements of the Defendant; and (2) matters which were neither part of the professionalism grading process nor the professionalism concern report process; and (3) matters which were caused by unaccommodated disabilities in violation of Defendant's anti-discrimination policies. All of these reasons which were used to dismiss Plaintiff were not actions upon which Plaintiff's professionalism could be judged according to Defendant's own procedures as testified to by Dr. Farnan, Defendant's Corporate Representative.

b. **When a University Violates the Law in Dismissing a Student, this is Arbitrary and Capricious Conduct**

Courts also look to whether a Defendant violated Illinois or Federal law in deciding whether dismissal was arbitrary and capricious. The Illinois Supreme Court has specifically held on at least four occasions that the requirements of all federal and state laws are incorporated as a matter of law into all contracts. *Village of Kirkland v. Kirkland Property Holdings Company, LLC 1,* 2023 IL 128612, Par. 60;. *Sprouli v. State Farm Fire and Casualty Co.,* 2021 IL 126446 Par. 20; *Braye v Archer Daniels Midland co.,* 175 Ill.2d 201, 217 (1997); *Illinois Bankers Life Association v. Collins,* 341 Ill. 548, 552 (1930). As such, whether a university publishes that it will follow the law or not, the requirements of state and federal law are part of the tuition contract and evidence of arbitrary and capricious conduct.

The Illinois Supreme Court found fraudulent conduct to be evidence of arbirtrary and capricious conduct in *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 328- 334 (1977). Likewise, the Appellate Court in *Brody v. Finch University of Health Sciences/the Chicago Medical School,* 298 Ill.App.3d at 157-60, found that fraudulent conduct supported a finding of arbitrary and capricious conduct. In *Frederick v. Northwestern University Dental School,* 247 Ill.App.3d 464, 469-471 (1993), the Appellate Court stated that age discrimination which led to a dismissal would be arbitrary and capricious if proven. In *Bilut v. Northwestern University,* 269 Ill.App.3d 125, 135-136 (1994), the Appellate Court stated a dismissal based on a student's refusal to engage in a sexual relationship with faculty would be arbitrary and capricious conduct.

These findings are in line with the common law generally where courts determine whether organizations with expertise have acted in an arbitrary and capricious manner. *Manufacturers Association v. State Farm Mutual Insurance Co.,* 463 U.S. 29, 43 (1983). For instance, when an administrative agency relies on factors which Congress did not permit the agency to consider, this is arbitrary and capricious conduct. *Id.*

**c. <u>When a University is Required to Use Professional Judgment in Determining Whether to Dismiss a Student, but Fails to do so, This is Arbitrary and Capricious Conduct</u>**

Another basis for a finding of arbitrary and capricious conduct is when a university is required to use professional judgment to evaluate a student but fails to use its judgment and dismisses the student. *Bosch v. Northshore University System* 2019 Il App(1st) 190070, Par. 34, 43-44, 47. The federal courts likewise consider a failure to use professional judgment when judgment is required is arbitrary and capricious conduct. *Manufacturers Association v. State Farm Mutual Insurance Co.,* 463 U.S. 29, 43 (1983) In this case, Defendant admitted that: (1) when Plaintiff pointed out his conduct in sending the final e-mail to Dr. Brockman was caused by a reaction to medication; (2) Defendant admitted they considered a medication reaction as a possibility; (3) Defendant admitted that Plaintiff's culpability for sending the e-mail under Defendant's professionalism standards depended on the nature of the reaction; and (4) no one at the Defendant made such a determination as to Plaintiff's responsibility prior to dismissing Plaintiff.

Defendant has admitted that it had to use professional judgment to determine whether Plaintiff was responsible under Defendant's professionalism standards for sending the April 30, 2023 e-mail. Defendant has admitted no one made such a determination. This is arbitrary and caprcious conduct as the Defendant was required to use its judgment to determine Plaintiff's responsibility and failed to do so. This is arbitrary and capricious conduct.

**d. <u>Defendant's Reasons for Dismissal Were Arbitrary and Capricious</u>**

As discussed above, all of the reasons Defendant used to dismiss Plaintiff were arbitrary and capricious. Plaintiff complied with the academic and professionalism standards of the Defendant, but was dismissed regardless. In regard to the final incident (the only incident which arguably

could have been used to dismiss Plaintiff), the Defendant failed to use professional judgment when use of such judgment was required to determine Plaintiff's culpability for the action. In light of this uncontradicted evidence, Plaintiff is entitled to summary judgment as a matter of law as to liability on his breach of contract claim.

## VII. Conclusion

For the factual and legal reasons set forth above, the Plaintiff requests the Court enter summary judgment as to Count I (Violation of the ADAAA) and Count III as to liability (breach of contract).

Respectfully Submitted,

By: ________/S Joseph P. Selbka______________

One of Plaintiff's Attorneys

Joseph P. Selbka
PLUYMERT, MACDONALD, HARGROVE & LEE, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
Attorney No.: 06238063
pleadings@lawpmh.com
(847) 310-0025

**APPENDIX A- Table of Contents**

III. Introduction ........................................ 1

IV. Summary of Arguments ........................................ 1

V. Statement of Facts Which Requite Entry of Summary Judgment on Counts I and III ........ 2

A. Parties and Their Relationship ........................................ 2
B. Plaintiff's Disabilities from August, 2018 to September, 2023 ........................................ 2
C. Plaintiff's Academic Performance and Professionalism from 2018 until his Dismissal ........................................ 5
D. The Final Incident Where Plaintiff Had a Reaction to Medication ........................................ 6
E. The Dismissal Proceedings against Plaintiff and Plaintiff's Dismissal ........................................ 6
   *i.* The Proceedings Before the CAP and the Reasons Given for Dismissal ............ 6
   *ii.* The Reasons Before the AAC and Reasons Given for Dismissal ........................ 7
   *iii.* The Decision of Dean Anderson to Dismiss Plaintiff ........................................ 8
F. Defendant's Academic and Professionalism Standards and Plaintiff's Performance and Deviations from Procedures in Plaintiff's Case During his Dismissal ............... 9
G. Plaintiff's Intention to Return to Defendant's Medical Program When the Dismissal is Overturned ........................................ 10

VI. Summary Judgment is Appropriate as to Counts I and III of the Complaint .................. 10

A. Summary Judgment is Mandated as to Count I of the Complaint (Violation of the ADAAA) ........................................ 10
   *i.* Defendant Violated Title III of the ADAAA ........................................ 10
   *ii.* Plaintiff is Entitled to a Permanent Injunction under Title III of the ADAAA ........ 13
B. Summary Judgment is Mandated as to Count III of the Complaint as to Liability (Breach of Contract) ........................................ 14
   *i.* The Procedural Posture of the Case as to Plaintiff's Breach of Contract Claim 14
   *ii.* The Initial Ruling on Defendant's Motion to Dismiss and Subsequent Rulings ........................................ 14
   *iii.* The Court's Denial of Plaintiff's Motion for Leave to File Third Amended Complaint ........................................ 15
   *iv.* The Court Must Follow the Precedents of the Illinois Supreme Court and the Illinois Intermediate Courts in this Case ........................................ 16
   *v.* *Gociman v. Loyla University* Has No Application to this Case
   *vi.* Under Illinois Law, a Student Dismissal for Arbitrary Reasons is a Breach of Contract as the Illinois Supreme Court has Stated and the Illinois Appellate Court has Repeatedly Affirmed ........................................ 17

*vii*. Illinois Precedent Regarding Evidence to Prove a Breach of Contract for an Arbitrary Dismissal ........ 19

a. Departure from a University's Evaluation Procedure is Conclusive Evidence of Arbitrary and Capricious Conduct ........ 19

b. When a University Violates the Law in Dismissing a Student, this is Arbitrary and Capricious Conduct ........ 22

c. When a University is Required to Use Professional Judgment in Determining Whether to Dismiss a Student, but Fails to do so, This is Arbitrary and Capricious Conduct ........ 23

d. Defendant's Reasons for Dismissal Were Arbitrary and Capricious ...... 24

VII. Conclusion ........ 24

**APPENDIX B- Table of Cases**

*Kurtzhals v. City of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) ........................................... 11

*Guckenberger v. Boston University*, 947 F.Supp. 106, 134-135 (D. Mass. 1997) ................ 11

*Emery v. Caravan of Dreams*, 879 F.Supp. 640, 643-644 (N.D. Tx. 1995) .......................... 11

*Isbell v. John Crane, Inc.*, 30 F.Supp.3d 725, 734-736 (N.D. Ill. 2014) ..........................12, 13

*Doe v. Samuel Merritt University*, 921 F.Supp.2d 958, 962-963 (N.D. Cal. 2010) ............... 13

*Amir v. St Louis University*, 184 F.3d 1017 (8th Cir. 1999) ............................................... 13

*Plummer v. American Institute of Certified Public Accountants*,

97 F.3d 220, 229 (7th Cir. 1996) ......................................................................... 13

*Rose v. Cahee*, 727 F.Supp.2d 728, 740 (E.D. Wis. 2010) ............................................... 14

*Cazares v. Organic Cotton Mart LLC*,

2026 U.S. Dist. Lexis 157722 at 6-7 (E.D. Wis. July 16, 2026) .......................................... 14

*Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177-180 (1940) ....................14, 15, 16, 17, 19

*Commissioner v. Estate of Bosch*, 387 U.S 456, 465 (1967) ........................................... 15

*Johnson v. Lincoln Christian College*, 150 Ill.App.3d 733, 738 ....................................... 15

*Bosch v. Northshore University Health System*,

2019 IL App(1st) 190070, Par. 39-41 ................................................ 15, 17, 19, 20, 21, 23

*Blevins v. Marcheschi*, 2018 IL App(2nd) 170340, Par 29 ............................................... 15

*Bible v. United States Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) .......................... 16

*West v. American Telephone & Telegraph, Inc.*, 311 U.S. 223, 236-239, (1940) ............16, 19

*ADT Security Services, Inc. v. Lisle-Woodridge Fire Protection District*,

672 F.3d 492, 498 (7th Cir. 2011) .......................................................................16, 17

*Commissioner v. Estate of Bosch*, 387 U.S 456, 465 (1967) ........................................... 16

*Hill v. International Harvester Co.*, 798 F.2d 256, ftnte 12 (7th Cir. 1986) .......................... 16

*People v. Wiliams*, 204 Ill.2d 191, 206-207 (2003) ........................................................ 16

*Cates v. Cates*, 156 Ill.2d 76, 80 (1993) ........................................................................ 16

*Epic Systems Corp. v. Tata Consulting Services, Ltd.*, 980 F.3d 1117, 1128 (7th Cir. 2020) . 16

*Timmerman v. Modern Industries, Inc.*, 960 F.2d 692, 696 (7th Cir. 1992) ......................... 16

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1968) ............................................... 17

*Gociman v. Loyola University of Chicago*, 41 F.4th 873 (7th Cir. 2022)............................. 17

*Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 328- 332 (1977)..................... 17, 18, 23

*DeMarco v. University of Health Sciences*, 40 Ill.App.3d 474, 480 (1976) ....18, 19, 20, 21, 21

*Brody v. Finch University of Health Sciences/the Chicago Medical School*,

298 Ill.App.3d 146 (1998) ......................................................................... 18, 19, 23

*Johnson v. Lincoln Christian College*,

150 Ill. App. 3d 733, 738, 103 Ill. Dec. 842, 501 N.E.2d 1380 (1986) ...........................18, 19

*Galdikas v. Fagan*, 342 F.3d 684, 692 (7th Cir. 2003) ...................................................... 19

*Tanner v. Board of Trustees of the University of Illinois*, 48 Ill.App.3d 680, 682-683 (1977) . 19

*Bullock v. State of Illinois*, 54 Ill. Ct. CL 292, 294 (2002) ................................................. 20

*Singletary v. Southern Illinois University*, 62 Ill.Ct. Cl. 198, 200-201 (2010)....................... 20

*Village of Kirkland v. Kirkland Property Holdings Company, LLC 1,* 2023 IL 128612, Par. 60 22

*Sprouli v. State Farm Fire and Casualty Co.,* 2021 IL 126446 Par. 20 ............................... 22

*Braye v Archer Daniels Midland co.,* 175 Ill.2d 201, 217 (1997)....................................... 22

*Illinois Bankers Life Association v. Collins,* 341 Ill. 548, 552 (1930) ................................. 22

*Frederick v. Northwestern University Dental School,* 247 Ill.App.3d 464, 469-471 (1993) .. 23

*Bilut v. Northwestern University,* 269 Ill.App.3d 125, 135-136 (1994)................................ 23

*Manufacturers Association v. State Farm Mutual Insurance Co.*, 463 U.S. 29, 43 (1983) .... 23