**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-02525 |
| | ) | |
| v. | ) | Honorable Lindsay C. Jenkins |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ROBERT HIGHT**
**MOTION FOR SUMMARY JUDGMENT**

# EXHIBITS A-B

Case: 1:24-cv-02525 Document #: 25 Filed: 10/30/24 Page 1 of 26 PageID #:185

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HIGHT, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO, an Illinois Not for Profit Corporation,<br><br>Defendant. | Case No.: 24-cv-02525<br><br>Honorable Lindsay C. Jenkins<br><br>JURY TRIAL DEMANDED |

**FEDERAL JURISDICTION SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

1. Plaintiff Robert Hight, ("Plaintiff"), by and through his attorneys, MacDonald, Lee & Senechalle, Ltd., files this Complaint against Defendant, University of Chicago ("Defendant"), seeking to vindicate Plaintiff's rights: (1) to be protected from disability discrimination; (2) and (2) for redress for violation of his contractual right as a graduate student enrolled with Defendant. This Complaint is based on personal knowledge as to allegations concerning Plaintiff, and on information and belief as to all other allegations.

## II. PARTIES

2. Plaintiff was, until September 6, 2023, a graduate student in Defendant's Medical Doctor program ("the Medical Program"). Plaintiff currently lives in Cook County, Illinois.

3. Defendant is an Illinois nonprofit corporation that operates a university with its main administrative office and main campus in Chicago, Cook County, Illinois.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction as to Counts I, II, IV, and V of the complaint containing four causes of action which arise under federal statutes, and thus under 28 U.S.C.A. 1331, the Court has jurisdiction over the first two counts of the complaint. As to the remaining count of the complaint, the Court has supplemental jurisdiction over the one state law cause of action in said count because the third cause of action is so related to the first two claims so as to be part of the same case and controversy. The Court thus has jurisdiction over the final count of the Complaint pursuant to its supplemental jurisdiction under 28 U.S.C.A. 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the main office of the Defendant is located in this District.

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Initial Enrollment, Disabilities, and Defendant's Accommodations

6. Plaintiff was accepted into and enrolled in the Medical Program beginning in August 2018 and continuing until September 2023. During that time, Plaintiff was a medical student in the Defendant's Medical Program. Plaintiff was in his final year of the program prior to his dismissal for alleged unprofessional conduct.

7. Plaintiff has multiple disabilities which, if properly accommodated, would allow him to succeed in the Medical Program.

8. Plaintiff's disabilities result from several physical and psychological medical diagnoses. Plaintiff's diagnoses include sickle-cell anemia, asthma, auto-immune conditions, chronic fatigue, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and bipolar disorder. Plaintiff also had surgery for removal of his gall bladder in May 2023. These diagnoses can and did, among other things, interfere with some aspects of Plaintiff's physical and mental

functioning, including Plaintiff’s ability to learn, think, and walk. To wit, Plaintiff’s sickle cell anemia, asthma, and auto-immune conditions cause weakness which makes it difficult to walk, think, and learn. Plaintiff’s chronic fatigue causes tiredness which makes it difficult to walk, think, and learn. Plaintiff’s generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder and bipolar disorder interfere with Plaintiff’s ability to think and learn by dysregulating his emotions.

9. Despite his numerous challenges, Plaintiff has been a successful science student prior to his enrollment in the Medical Program. Plaintiff had graduated from Emory and Tulane Universities with bachelor’s and master’s degrees in biology and was admitted into Defendant’s Medical Program.

10. The Defendant recognized Plaintiff’s physical and psychological impairments affect major life activities which inhibit his ability to learn. However, Plaintiff is able to complete his studies and comply with the requirements of the Medical Program with reasonable accommodations and modifications to Defendant’s Program.

11. Defendant agreed Plaintiff had disabilities; agreed that it is and was subject to the provisions of the ADA and Section 504; and agreed to accommodations at multiple points in time.

12. Defendant initially provided Plaintiff accommodations for breaks during testing and extra time on exams upon enrollment in the Medical Program.

**The Effect of Plaintiff’s Disabilities and Defendant Accommodation of a Medical Leave of Absence**

13. In Summer, 2021, Plaintiff’s physical and psychological disabilities became impossible to cope with when coupled with the stress of the Medical Program.

14. As a result of Plaintiff’s difficulties caused by his disabilities, Plaintiff’s grades suffered, and he received a professionalism concern report associated with absences and failure to report absences. Plaintiff was also put on academic probation.

15. As a result of these issues, Plaintiff requested and received a one-year leave of absence. Defendant agreed to the one-year medical leave of absence in Summer, 2021.

16. Plaintiff returned from his leave of absence in June 2022 and completed all outstanding third year coursework after his return. By April 2023, Plaintiff’s academic performance had improved to such a point that he was removed from academic probation and placed on monitored academic status.

**<u>Plaintiff’s Progress After his Return in June 2022 Until the April 2023, Incident</u>**

17. Plaintiff remained on monitored academic status from April 2023 until his termination in July 2023. After he returned from his leave of absence, Plaintiff was able to both complete his unfinished work and continue to make progress in the Medical Program.

**<u>The Final Incident Which Led to Plaintiff’s Dismissal</u>**

18. On or about April 21, 2023, Plaintiff began taking a new medication. Zolpidem. This medication caused a reaction in an unexpected way. Specifically, while under the influence of the medication, Plaintiff created an e-mail of another medical student and sent an e-mail regarding evaluations and feedback to one of his instructors. The use of this medication impaired Plaintiff’s ability to think and control his emotions and actions and thus impaired multiple major life activities. The effects of the medication reaction caused and resulted in Plaintiff creating and sending the e-mail in question.

19. As a result of this e-mail, Defendant began disciplinary proceedings against Plaintiff which ultimately resulted in Plaintiff’s dismissal from the Medical Program. For the reasons set forth below, the dismissal proceedings and ultimate dismissal both violated disability discrimination

laws and constituted a breach of contract between Plaintiff and Defendant for the reasons discussed below.

**<u>The Contract Between Plaintiff and Defendant</u>**

20. Plaintiff applied and was accepted to Defendant's Medical Program and enrolled in Fall, 2018.

21. Thereafter, Defendant charged tuition and fees to Plaintiff, and Plaintiff paid the tuition and other fees to remain in Defendant's Medical Program.

22. As a result of accommodations, Plaintiff was able to successfully complete the academic requirements of the Medical Program.

23. Defendant published handbooks, catalogs, and policy manuals which became part of a contract between Plaintiff and Defendant.

**<u>The Disciplinary Proceedings Before the CAP</u>**

24. On or about late June or early July 2023, the disciplinary proceedings against Plaintiff, were referred to the Committee on Academic Promotions("CAP").

25. The CAP met on July 14, 2023, after soliciting Plaintiff's arguments as to why he should not be dismissed.

26. On July 19, 2023, the CAP decided to dismiss Plaintiff from the Medical Program. The CAP listed four reasons in support of CAP's decision to dismiss Plaintiff from Defendant's Medical Program. Specifically, the stated reasons which the CAP used to support its decision to dismiss Plaintiff were: (1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies.

27. Most of the reasons for dismissal were caused by Plaintiff's disabilities and/or caused by the ongoing process of providing Plaintiff with appropriate accommodations.

28. Specifically, Plaintiff's professionalism concern complaints (including the one for which he was dismissed) were caused by manifestations of his disabilities. CAP specifically did not make a determination based on objective facts on whether the final professionalism complaint was caused by the medication reaction set forth in Paragraph 18. CAP likewise did not make a determination as to whether medication reaction which caused the final professionalism concern could be accommodated.

29. Plaintiff's monitored academic status was also a direct result of the process where Defendant and Plaintiff worked through and determined appropriate accommodations for Plaintiff. Moreover, after Plaintiff's leave of absence and accommodations, Plaintiff was able to complete his academic work successfully.

30. In making its decision to dismiss, CAP did not make any objective determination whether the reasons for Plaintiff's dismissal were caused by Plaintiff's disability and/or whether Plaintiff's disabilities could have been accommodated.

31. In making its decision to dismiss, CAP did not make any objective determination as to whether Plaintiff's previous academic and professionalism complaints had been ameliorated by the accommodations provided by Defendant.

**<u>Plaintiff's Appeal to the Academic Appeal Committee</u>**

32. Plaintiff timely appealed the CAP decision to dismiss to the Defendant's Academic Appeal Committee ("AAC").

33. Plaintiff was not given the ten days to respond directly to CAP as allowed by the University's Academic Guidelines.

34. Plaintiff was allowed to file a written appeal of the CAP's decision which he completed on August 9, 2023. In his written appeal, Plaintiff pointed out: (1) that the last incident which led to dismissal was a manifestation of his disability; (2) that the previous professionalism complaint was likewise caused and/or exacerbated by disability; and (3) that any claim of academic problems was not supported by evidence after Plaintiff's return from his leave of absence.

35. Plaintiff also produced numerous evaluations and statements showing that Plaintiff could succeed in the program with appropriate accommodations.

36. On September 6, 2023, the AAC affirmed the CAP's decision to dismiss Plaintiff.

37. The AAC did not make any effort to determine whether his professionalism complaints (especially the final professionalism complaint) were manifestations of disability. The AAC likewise did not determine whether the manifestations could be accommodated. The AAC also did not consider that Plaintiff was able to complete his studies with the accommodations provided.

38. Rather, the AAC rejected Plaintiff's assertions regarding his disability by relying on various post hoc reasons for dismissing Plaintiff including alleged professionalism concerns which none of Defendants' agents considered important enough to bring up at the time the alleged conduct occurred. The AAC also relied on Plaintiff's protected conduct to request feedback and challenge evaluations to dismiss Plaintiff.

**<u>Procedural Irregularities in Violation of Defendant's Policies</u>**

39. The CAP and AAC decisions were tainted by multiple procedural violations of the Defendant's own policies including:

a. The Defendant, through AAC and CAP, used as a basis supporting dismissal, that Plaintiff used the Defendant's University Grievance Policy for Graduate Students. Plaintiff requested clarification and feedback for grades and evaluations, Plaintiff followed the published policy sections titled "Complaints or Disputes about Grades

and Academic Evaluations" and "Informal Resolution Options." The CAP and AAC then listed instances of Plaintiff requesting feedback for grades and evaluations as supporting evidence for his dismissal. This is in violation of the University Grievance Policy's "Statement of Non-Retaliation."

b. Defendant retaliated against Plaintiff in violation of its own Student Treatment Policy published by the Medical Program. Plaintiff reported two residents for mistreatment, following the section titled "Reporting Mistreatment" in the Student Treatment Policy. The Defendant, through the CAP and AAC, listed those instances as supporting evidence for his dismissal. This is in violation of "Reporting Mistreatment" subsection 5, which states, "The University prohibits retaliation against any person who exercises any rights or responsibilities under this policy."

c. The Defendant failed to disclose known information that could impact his standing as a student prior to CAP's meeting to dismiss Plaintiff, as required by page 21 of the Defendant's Academic Guidelines. Information known to the Dean before the meeting and deliberated at the meeting was not disclosed to Plaintiff until after the meeting in violation of the Academic Guidelines.

d. The Defendant failed to allow Plaintiff ten (10) days to respond to CAP's decision to dismiss him (before the formal appeal), as outlined on page 21 of the Academic Guidelines. The Defendant took advantage of this failure. To wit, the AAC stated in response to Plaintiff's formal appeal that Plaintiff failed to provide information regarding his prescription medication reaction to CAP. Plaintiff would have been able to provide such information if given the allowed 10 days to respond to the CAP's decision.

e. The Defendant failed to allow Plaintiff ten (10) days before CAP's decision became effective as allowed by page 21 of the Academic Guidelines. His dismissal became effective immediately with access to campus completely revoked.

f. The Defendant failed to notify the Plaintiff of all committee members of the CAP and AAC. The University Student Manual section on Area Disciplinary Systems indicates: "The Dean of Students (or designee) will notify the respondent of the members of the Area Disciplinary Committee as soon as practicable before the hearing." The Defendant's failure prevented Plaintiff from being able to request a substitution if the participation of any individual on the Committee poses a conflict of interest. Plaintiff was never notified of the committee members, depriving him of his right to request substitution despite having prior substantive interactions with at least two committee members.

g. Plaintiff was not allowed to make an appeal and oral presentation to the AAC. Page 26 of the Academic Guidelines states: "The student may request to appear before the Academic Appeal Committee to answer questions or to present any new relevant information. This request will be granted unless the appearance would raise issues of safety for the committee members." Plaintiff was not allowed to present information to the AAC. He was allowed only three (3) minutes to introduce himself, which was wholly insufficient given the gravity of the appeal and the amount of information Plaintiff had prepared to present.

h. Defendant's handbook contains an insertion that the handbook does not constitute a contract. The Defendant's simultaneous: (1) promise of procedural protections in said handbook; (2) with a claim that the procedural protections are not enforceable contractual promises; constitutes bad faith.

i. Defendant has a published policy which prohibits disability discrimination as defined by the anti-discrimination laws.

**FIRST CLAIM FOR RELIEF**

**Violation of the Americans with Disabilities Act and Americans with Disabilities Amendments Act, Title III- Discrimination on the basis of disability and Refusal to Accommodate (Pleaded from Amended Complaint in Full in Order to Preserve Issues for Appeal)**

40. Plaintiff incorporates by reference Paragraphs 1-39 above.

41. Plaintiff has disabilities and is a member of the protected class under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act ("ADA and ADAAA"). 42 U.S.C.A. Sec. 12101 et seq. He has impairments that affect major life activities; or in the alternative, has a record of said impairments; and/or, in the alternative, was regarded by the Defendants as having impairments which affected his major life activities. Plaintiff's impairments are set forth above in Paragraph 8 and 18 and 19 of the Second Amended Complaint.

42. Plaintiff's impairments affect major life activities of learning, walking, thinking, and working. Defendant agrees that Plaintiff has disabilities within the meaning of the statute and has agreed to provide accommodations to Plaintiff.

43. Defendant is in the business of providing public accommodations within the meaning of Title III of the ADA and ADAAA. As a result, Defendant is required to not discriminate based on disability and to provide reasonable modifications to its Medical Program in order to allow Plaintiff to participate in the Program.

44. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

45. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

46. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence.

47. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism were subject to reasonable modifications to accommodate Plaintiff's disability.

48. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable modifications could and had accommodated Plaintiff allowing him to succeed in the Medical Program.

49. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and then determining whether reasonable modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff.

50. Defendant's actual reasons for dismissal were (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance. The final professionalism concern complaint could have been accommodated through reasonable modifications of the Medical Program as required by the ADA and ADAAA. Plaintiff's deficiencies in his academic performance were accommodated, and Plaintiff was succeeding academically in the Medical Program. Nonetheless, Plaintiff was dismissed from the Medical Program.

51. Upon information and belief, Defendant's additional reasons for dismissal (apart from those in Paragraph 50) listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

52. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of disability which could have been accommodated.

53. Defendant is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. Defendant is engaged in an industry affecting commerce and, at all times pertinent hereto, was providing public accommodations within the meaning of the ADA and ADAAA.

54. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

55. Plaintiff is subject to irreparable harm in not being able to complete his studies.

56. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

57. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

58. Plaintiff is entitled to injunctive relief under 28 CFR 36.501 for violations of the ADA and ADAAA.

59. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

WHEREFORE, Plaintiff, Robert Hight, respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as student in Defendant's Medical Program and entry of an injunction overturning the Defendant's decision to expel Plaintiff from Defendant's Medical Program;

B. Declaratory relief removing all professionalism complaints and all disciplinary proceedings from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

## SECOND CLAIM FOR RELIEF

**Violation of Section 504 of the Rehabilitation Act of 1973 for Discrimination on the Basis of Disability and Refusal to Accommodate Disability (Pleaded in Full in order to Preserve Claims for Appeal)**

60. Plaintiff incorporates by reference, Paragraphs 1-59 above.

61. Plaintiff has a disability/handicap and is a member of the protected class under Section 504 of the Rehabilitation act of 1973 ("Section 504"). 29 U.S.C.A. 794. He has an impairment that affects major life activities; or in the alternative, has a record of said impairment; and/or, in the alternative, was regarded by the Defendants as having an impairment which affected his major life activities for the reasons set forth above. Plaintiff's impairments are listed in Paragraphs 8 and 18-19 of the Second Amended Complaint.

62. Defendant receives federal aid in the form of federal tuition grants, guaranteed federal tuition loans and other federal student aid programs. Defendant also receives research grants from the federal government. Defendant is thus subject to the requirements of Section 504 to accommodate students with handicaps.

63. Beginning in 2018, Defendant agreed to accommodate Plaintiff's handicaps and admitted Defendant was subject to the requirements of Section 504.

64. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

65. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

66. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence. Plaintiff can perform the academic requirements of Defendant's Medical program with reasonable accommodations.

67. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism could be reasonably accommodated.

68. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable accommodations could be and had been allowing Plaintiff to succeed in the Medical Program

69. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and determining whether reasonable

modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff

70. Defendant's actual reasons for dismissal were (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance. The final professionalism complaint could have been accommodated, and Plaintiff's academic performance deficiencies were accommodated through reasonable accommodations of the Medical Program as required by Section 504. Nonetheless, Plaintiff was dismissed from the Program.

71. Upon information and belief, Defendant's additional reasons for dismissal listed by the CAP and AAC (apart from those in Paragraph 70 of the Amended Complaint) were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

72. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of disability which could have been accommodated.

73. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

74. Plaintiff is subject to irreparable harm in not being able to complete his studies.

75. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

76. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

77. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

78. Defendant's agents have discriminated against Plaintiff in lieu of properly accommodating Plaintiff's disabilities as required by Section 504 by harassing Plaintiff, disciplining Plaintiff; and ultimately dismissing Plaintiff from the Medical Program.

79. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner or would have been able to perform his academic duties with a reasonable accommodation.

80. Plaintiff has a handicap within the meaning of Section 504 of the Rehabilitation Act of 1973.

81. Plaintiff has a statutory right to be free from discrimination. Plaintiff will be subject to irreparable harm if the Court fails to enjoin further discrimination or craft other relief necessary to make Plaintiff whole. 29 U.S.C.A. 794(a). Plaintiff thus seeks an injunction and reinstatement to the Program to allow Plaintiff to complete his studies.

82. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of time, earning potential, and loss of tuition and fees, and emotional distress and will suffer further if he is not reinstated to the Medical Program.

WHEREFORE, Plaintiff, Robert Hight respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as a graduate student in the Program with all rights and privileges;

B. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

C.. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for liquidated damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**THIRD CLAIM FOR RELIEF**
**Breach of Tuition Contract Under Illinois State Law (Pleaded from the Amended Complaint in Full in Order to Preserve issues for Appeal)**

82. Plaintiffs restate and reallege Paragraphs 1-82 above.

83. Plaintiff entered into a tuition contract with Defendant by applying to the Program in 2018 and paying tuition and fees to the Defendant until his dismissal.

84. Plaintiff was completing the academic requirements of the Program satisfactorily until his improper expulsion on September 6, 2023.

84. Defendant published academic guidelines and handbooks for the Medical Program. The relevant portions of said policies are fully set forth in Paragraph 39 of this Amended Complaint.

85. Defendant's policy protects Plaintiff from discrimination based on disability and guarantee the right to reasonable accommodation for Plaintiff's disabilities.

86. For the reasons set forth above in Counts I and II, Plaintiff has violated the disability discrimination laws and thus breached the tuition contract with Plaintiff.

87. Defendant's publications constitute contractual promises to Plaintiff. Defendant breached its promise to not discriminate against Plaintiff based on his disability. Defendant's professionalism complaints and subsequent discipline and dismissal were a breach of contract for the reasons set forth in Counts I and II. Plaintiff's dismissal was undertaken in bad faith and for arbitrary reasons.

88. Defendant also provided procedural protections which it violated in dismissing Plaintiff as set forth in Paragraph 39 of this Amended Complaint.

89. Defendant violated the procedural protections set forth in Defendant's published material when conducting Plaintiff's dismissal proceedings.

90. Defendant's disregard and failure to follow its own published procedures resulted in Plaintiff's dismissal for arbitrary and bad faith reasons.

91. Plaintiff has a clear right to finish his studies in light of the breaches of contract.

92. Plaintiff is subject to irreparable harm if he is not immediately reinstated to the Program.

93. Plaintiff has a right to specific performance given the unique nature of the services provided.

94. In the alternative to the allegations in Paragraph 93, Plaintiff has been damaged by the breaches of contract in the form of lost possible wages, lost opportunities, and lost time as a result of Defendant's breaches of contract.

WHEREFORE, Plaintiff, Robert Hight, requests the following of the Court:

A. That a judgment of breach of contract be entered against the Defendant;

B. That the Court order and mandate the Plaintiff be fully reinstated to his position in the Program with all rights and privileges;

C. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

D. In the alternative, that Plaintiff be awarded damages for Defendant's breach of contract.

E. For such further and additional relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
## Violation of the Americans with Disabilities Act and Americans with Disabilities Amendments Act, Title III- Discrimination for Refusal to Enter into Process to Determine Whether Reaction to Medication Could Be Accommodated and to Accommodate Reaction to Medication

95. Plaintiff incorporates by reference Paragraphs 1-94 above.

96. Plaintiff has disabilities and is a member of the protected class under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act ("ADA and ADAAA"). 42 U.S.C.A. Sec. 12101 et seq. He has impairments that affect major life activities; or in the alternative, has a record of said impairments; and/or, in the alternative, was regarded by the Defendants as having impairments which affected his major life activities. Plaintiff's impairments are set forth above in Paragraph 8 and 18 and 19 of the Second Amended Complaint.

97. Plaintiff's impairments affect major life activities of learning, walking, thinking, and working. Defendant agrees that Plaintiff has disabilities within the meaning of the statute and has agreed to provide accommodations to Plaintiff.

98. Defendant is in the business of providing public accommodations within the meaning of Title III of the ADA and ADAAA. As a result, Defendant is required to not discriminate based on disability and to provide reasonable modifications to its Medical Program in order to allow Plaintiff to participate in the Program.

99. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence.

100. Plaintiff's reaction to a medication described in Paragraph 18 and 19 of this Second Amended Complaint is a disability within the meaning of the ADA and the ADAAA. Plaintiff's reaction to the medication is an impairment which affects the major life activities of thinking, walking, learning, impulse control, and remembering past actions ("Hereinafter referred to as "Medication Reaction Disability").

101. Plaintiff first learned of his Medication Reaction Disability after the incident on April 21, 2023, described in Paragraphs 18 and 19 of the Second Amended Complaint.

102. Thereafter, Plaintiff was subjected to a professionalism complaint and discipline beginning in June, 2023 for a manifestation of the Medication Reaction Disability. To wit, Plaintiff was subjected to discipline for creating and sending e-mails under another student's e-mail while under the influence of the reaction to medication described in Paragraphs 18 and 19 of the Second Amended Complaint.

103. In light of the circumstances of Plaintiff's learning of the Medication Reaction Disability and the University's choice to seek discipline against and dismissal of Plaintiff, the appropriate avenue to seek a modification as to the discipline to be imposed, was in the disciplinary proceedings against Plaintiff (the CAP and AAC proceedings).

104. In said disciplinary proceedings, the University initially refused to provide Plaintiff with his procedural rights to address the CAP regarding his Medical Reaction Disability as described in Paragraph 39 of the Second Amended Complaint.

105. Thereafter, Plaintiff requested modifications to the discipline to be imposed on him before the AAC based on the fact that the conduct which led to the disciplinary proceedings was a manifestation of the Medical Reaction Disability.

106. The AAC rejected outright any modification of discipline based on the fact that Plaintiff's conduct was an unforeseeable manifestation of the Medical Reaction Disability. The AAC made no attempt to determine whether the University's imposition of discipline should be modified in light of the fact that Plaintiff's conduct resulted from a manifestation of the Medical Reaction Disability.

107. Rather than: (a) carry out an objective assessment as to the effect of Plaintiff's Medical Reaction Disability on Plaintiff's ability to comply with Defendant's rules; (b) determine whether such a manifestation could be accommodated through reasonable modifications to the Medical

Program; (c) which could allow Plaintiff to succeed; Defendant used a manifestation of Plaintiff's Medical Reaction Disability as a reason to dismiss Plaintiff from the Medical Program.

108. The ADA and ADAAA require the University to conduct an individualized assessment based on objective factors to determine whether the manifestations of the Medical Reaction Disability could have been accommodated before disciplining and dismissing Plaintiff. The University made no such determination after Plaintiff requested a modification of disciplinary sanctions because of the Medical Reaction Disability.

109. The final professionalism concern complaint could have been accommodated through reasonable modifications of the Medical Program as required by the ADA and ADAAA. To wit: (a) the only necessary modification was a recognition by the University that Plaintiff's conduct was caused by a manifestation of Plaintiff's Medical Reaction Disability which would not happen again unless Plaintiff took the medication again; and (b) a decision to waive discipline and dismissal if Plaintiff agreed not to take the medication again.

110. Upon information and belief, Defendant's additional reasons for dismissal (apart from the manifestation of the Medical Reaction Disability) listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of the Medical Reaction Disability which could have been accommodated.

111. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of the Medical Reaction Disability which could have been accommodated but was not accommodated through reasonable modifications.

112. Defendant is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. Defendant is engaged in an industry affecting commerce and, at all times pertinent hereto, was providing public accommodations within the meaning of the ADA and ADAAA.

113. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

114. Plaintiff is subject to irreparable harm in not being able to complete his studies.

115. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

116. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

117. Plaintiff is entitled to injunctive relief under 28 CFR 36.501 for violations of the ADA and ADAAA.

118. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

WHEREFORE, Plaintiff, Robert Hight, respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as student in Defendant's Medical Program and entry of an injunction overturning the Defendant's decision to expel Plaintiff from Defendant's Medical Program;

B. Declaratory relief removing all professionalism complaints and all disciplinary proceedings from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for attorneys' fees and costs, and any other relief this Court deems appropriate.

Case 1:24-cv-02525 Document #: 375-1 Filed: 10/30/24 Page 23 of 59 PageID #:3356

**FIFTH CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act of 1973 for Discrimination on the Basis of Disability Discrimination for Refusal to Enter into Process to Determine Whether Reaction to Medication Could Be Accommodated and to Accommodate Reaction to Medication and Refusal to Accommodate Disability**

119. Plaintiff incorporates by reference, Paragraphs 1-118 above.

120. Plaintiff has a disability/handicap and is a member of the protected class under Section 504 of the Rehabilitation act of 1973 ("Section 504"). 29 U.S.C.A. 794. He has an impairment that affects major life activities; or in the alternative, has a record of said impairment; and/or, in the alternative, was regarded by the Defendants as having an impairment which affected his major life activities for the reasons set forth above. Plaintiff's impairments are listed in Paragraphs 8 and 18-19 of the Second Amended Complaint.

121. Defendant receives federal aid in the form of federal tuition grants, guaranteed federal tuition loans and other federal student aid programs. Defendant also receives research grants from the federal government. Defendant is thus subject to the requirements of Section 504 to accommodate students with handicaps.

122. For the reasons set forth in Paragraphs 95-118 of this Second Amended Complaint, the University violated Section 504 as well as the ADA and ADAAA by: (a) refusing to consider modifications of the disciplinary process to determine whether Plaintiff's Medical Reaction Disability could have been accommodated; and (b) imposition of discipline after Plaintiff made such request in the disciplinary proceedings.

123. Defendant would not have dismissed Plaintiff but for the final professionalism concern which resulted directly from the manifestation of the Medical Reaction Disability which could have been accommodated.

124. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would

have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

125. Plaintiff is subject to irreparable harm in not being able to complete his studies.

126. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

127. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

128. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

129. Defendant's agents have discriminated against Plaintiff in lieu of properly accommodating Plaintiff's disabilities as required by Section 504 by harassing Plaintiff, disciplining Plaintiff; refusing to reasonably accommodate Plaintiff through modifications of the disciplinary process; and ultimately dismissing Plaintiff from the Medical Program.

130. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner or would have been able to perform his academic duties with a reasonable accommodation.

131. Plaintiff has a handicap within the meaning of Section 504 of the Rehabilitation Act of 1973.

132. Plaintiff has a statutory right to be free from discrimination. Plaintiff will be subject to irreparable harm if the Court fails to enjoin further discrimination or craft other relief necessary to make Plaintiff whole. 29 U.S.C.A. 794(a). Plaintiff thus seeks an injunction and reinstatement to the Program to allow Plaintiff to complete his studies.

133. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of time, earning potential, and loss of tuition and fees, and emotional distress and will suffer further if he is not reinstated to the Medical Program.

WHEREFORE, Plaintiff, Robert Hight respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as a graduate student in the Program with all rights and privileges;

B. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

C.. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for compensatory damages, liquidated damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**95. DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,
By: ________/S Joseph P. Selbka__________
One of Plaintiff's Attorneys

Joseph P. Selbka
MACDONALD, LEE & SENECHALLE, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
Attorney No.: 06238063
pleadings@pmllegal.com
(847) 310-0025

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT HIGHT, an Individual,

Plaintiff,

v.

THE UNIVERSITY OF CHICAGO, an Illinois Not for Profit Corporation,

Defendant.

Case No.: 24-cv-02525

Honorable Lindsay C. Jenkins

JURY TRIAL DEMANDED

**DEFENDANT THE UNIVERSITY OF CHICAGO'S AMENDED**
**ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT**

Defendant the University of Chicago (the "University"), through its undersigned attorneys, hereby answers Plaintiff's Second Amended Complaint ("Complaint" or "SAC") as follows:

## I. INTRODUCTION

1. Plaintiff Robert Hight, ("Plaintiff"), by and through his attorneys, MacDonald, Lee & Senechalle, Ltd., files this Complaint against Defendant, University of Chicago ("Defendant"), seeking to vindicate Plaintiff's rights: (1) to be protected from disability discrimination; (2) [sic] and (2) for redress for violation of his contractual right as a graduate student enrolled with Defendant. This Complaint is based on personal knowledge as to allegations concerning Plaintiff, and on information and belief as to all other allegations.

**ANSWER:** The University admits that Plaintiff has filed the Complaint against the University. The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations regarding his purpose for filing the Complaint or his basis of knowledge, and therefore denies them. The University denies that it engaged in disability discrimination, violated Plaintiff's contractual rights, or engaged in any other unlawful action with regard to Plaintiff. The University also denies that Plaintiff is entitled to any of the relief he seeks in the Complaint. The University denies any remaining allegations in Paragraph 1.

## II. PARTIES

2. Plaintiff was, until September 6, 2023, a graduate student in Defendant's Medical Doctor program ("the Medical Program"). Plaintiff currently lives in Cook County, Illinois.

**ANSWER:** The University admits that Plaintiff was a student at the University's Pritzker School of Medicine ("Pritzker" or "PSOM") in the Doctor of Medicine degree program ("MD Program" or "Medical Program") until his dismissal, which was affirmed on appeal on September 6, 2023. Upon information and belief, the University states that Plaintiff currently lives in the State of Tennessee and thus denies the allegation that he currently lives in Cook County, Illinois. The University denies any remaining allegations in Paragraph 2.

3. Defendant is an Illinois nonprofit corporation that operates a university with its main administrative office and main campus in Chicago, Cook County, Illinois.

**ANSWER:** The University admits the allegations in Paragraph 3.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction as to Counts I, II, IV, and V of the complaint containing four causes of action which arise under federal statutes, and thus under 28 U.S.C.A. 1331, the Court has jurisdiction over the first two counts of the complaint. As to the remaining count of the complaint, the Court has supplemental jurisdiction over the one state law cause of action in said count because the third cause of action is so related to the first two claims so as to be part of the same case and controversy. The Court thus has jurisdiction over the final count of the Complaint pursuant to its supplemental jurisdiction under 28 U.S.C.A. 1367.

**ANSWER:** Paragraph 4 states a legal conclusion to which no response is required. To the extent a response is deemed to be required, the University admits that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, on the basis that Plaintiff purports to bring certain claims in this action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and Title III of the Americans with Disabilities Act, 42 U.S.C.A. Sec. 12101 *et seq*. ("ADA"), which are both federal laws. These claims are set forth in Counts I, II, IV and V, except to the extent that the failure-to-accommodate claims in Counts I and II have been dismissed. *See* Dkt. 34. The

University further admits that this Court has supplemental jurisdiction over Plaintiff's claim in Count III for common law breach of contract pursuant to 28 U.S.C. § 1367. The University denies that it has violated the any laws of the United States or the State of Illinois, including but not limited to Section 504 or the ADA, and further denies that it has breached any contract with Plaintiff. The University denies any remaining allegations in Paragraph 4.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) [sic] because a substantial part of the events or omissions giving rise to the claims occurred in this District and the main office of the Defendant is located in this District.

**ANSWER:** Paragraph 5 states a legal conclusion to which no response is required. To the extent a response is deemed to be required, the University admits that venue is proper in the Northern District of Illinois. The University denies any remaining allegations in Paragraph 5.

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Initial Enrollment, Disabilities, and Defendant's Accommodations

6. Plaintiff was accepted into and enrolled in the Medical Program beginning in August 2018 and continuing until September 2023. During that time, Plaintiff was a medical student in the Defendant's Medical Program. Plaintiff was in his final year of the program prior to his dismissal for alleged unprofessional conduct.

**ANSWER:** The University admits that Plaintiff was admitted into the MD Program and enrolled in that Program beginning in August 2018 and states that Plaintiff took a one-year leave of absence from the MD Program beginning in summer 2021 and ending in June 2022, after which time Plaintiff continued his studies in the MD Program. The University admits that Plaintiff's enrollment in the MD Program ended upon his dismissal, which was affirmed on appeal in September 2023. The University admits that Plaintiff's dismissal occurred in what would have been his final year in the MD Program. The University admits that the basis of Plaintiff's dismissal included, but was not limited to, Plaintiff's unprofessional conduct and further states that Plaintiff's dismissal was also based on his significant and sustained academic performance deficiencies. The University denies any

Case 1:24-cv-02525 Document #: 127 Filed: 01/22/25 Page 4 of 53 PageID #:568

remaining allegations in Paragraph 6.

7. Plaintiff has multiple disabilities which, if properly accommodated, would allow him to succeed in the Medical Program.

**ANSWER:** The University denies the allegations in Paragraph 7.

8. Plaintiff's disabilities result from several physical and psychological medical diagnoses. Plaintiff's diagnoses include sickle-cell anemia, asthma, auto-immune conditions, chronic fatigue, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and bipolar disorder. Plaintiff also had surgery for removal of his gall bladder in May 2023. These diagnoses can and did, among other things, interfere with some aspects of Plaintiff's physical and mental functioning, including Plaintiff's ability to learn, think, and walk. To wit, Plaintiff's sickle cell anemia, asthma, and auto-immune conditions cause weakness which makes it difficult to walk, think, and learn. Plaintiff's chronic fatigue causes tiredness which makes it difficult to walk, think, and learn. Plaintiff's generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder and bipolar disorder interfere with Plaintiff's ability to think and learn by dysregulating his emotions.

**ANSWER:** The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 8 and therefore denies them.

9. Despite his numerous challenges, Plaintiff has been a successful science student prior to his enrollment in the Medical Program. Plaintiff had graduated from Emory and Tulane Universities with bachelor's and master's degrees in biology and was admitted into Defendant's Medical Program.

**ANSWER:** The University admits that Plaintiff was admitted to PSOM's MD Program. The University otherwise lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 9 and therefore denies them.

10. The Defendant recognized Plaintiff's physical and psychological impairments affect major life activities which inhibit his ability to learn. However, Plaintiff is able to complete his studies and comply with the requirements of the Medical Program with reasonable accommodations and modifications to Defendant's Program.

**ANSWER:** The University admits that Plaintiff submitted paperwork to the University's Student Disability Services ("SDS") office regarding certain medical conditions and SDS determined Plaintiff was eligible for certain accommodations. The University denies that Plaintiff was "able to complete his studies and comply with the requirements of the Medical Program with reasonable

accommodations and modifications to Defendant's Program." The University denies any remaining allegations in Paragraph 10.

11. Defendant agreed Plaintiff had disabilities; agreed that it is and was subject to the provisions of the ADA and Section 504; and agreed to accommodations at multiple points in time.

**ANSWER:** The University admits that Plaintiff submitted paperwork to the University's Student Disability Services ("SDS") office regarding certain medical conditions, that SDS determined Plaintiff was eligible for certain accommodations, and that on such basis SDS granted Plaintiff accommodations. The University further admits that it is subject to Section 504 and Title III of the ADA. The University denies any remaining allegations in Paragraph 11.

12. Defendant initially provided Plaintiff accommodations for breaks during testing and extra time on exams upon enrollment in the Medical Program.

**ANSWER:** The University admits the allegations in Paragraph 12.

**<u>The Effect of Plaintiff's Disabilities and Defendant Accommodation of a Medical Leave of Absence</u>**

13. In Summer, 2021, Plaintiff's physical and psychological disabilities became impossible to cope with when coupled with the stress of the Medical Program.

**ANSWER:** The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 13 and therefore denies them.

14. As a result of Plaintiff's difficulties caused by his disabilities, Plaintiff's grades suffered, and he received a professionalism concern report associated with absences and failure to report absences. Plaintiff was also put on academic probation.

**ANSWER:** The University admits that Plaintiff failed the pediatrics shelf exam in November 2020 and that Plaintiff failed the obstetrics and gynecology ("Ob/Gyn") shelf exam in April of 2021. The University admits that Plaintiff received a professionalism concern report ("PCR") in December of 2020 and that the basis for the PCR was Plaintiff's failure to report absences, failure to take responsibility for his errors, and dishonesty. The University also admits that Plaintiff

was put on academic probation on or about July 23, 2021. The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 14 that his course failures, the PCR, his placement on academic probation, or any other performance deficiencies were "a result of Plaintiff's difficulties caused by his disabilities" and therefore denies them. The University denies any remaining allegations in Paragraph 14.

15. As a result of these issues, Plaintiff requested and received a one-year leave of absence. Defendant agreed to the one-year medical leave of absence in Summer, 2021.

**ANSWER:** The University admits that Plaintiff requested and received, with the University's agreement, a one-year leave of absence, which started in summer 2021 and ended in June 2022. The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation in Paragraph 15 that his leave of absence was "a result of these issues" and therefore denies them.

16. Plaintiff returned from his leave of absence in June 2022 and completed all outstanding third year coursework after his return. By April 2023, Plaintiff's academic performance had improved to such a point that he was removed from academic probation and placed on monitored academic status.

**ANSWER:** The University admits that Plaintiff returned from his leave of absence in June 2022. To the extent the allegation that Plaintiff "completed all outstanding third year coursework after his return" is to be interpreted as an allegation that Plaintiff's coursework was completed immediately after his return, the University denies such allegation and states that Plaintiff had completed his third-year coursework by the end of the Spring 2023 quarter. The University admits that Plaintiff was removed from academic probation and placed on monitored academic status in April 2023. The University denies the remaining allegations in Paragraph 16.

**<u>Plaintiff's Progress After his Return in June 2022 Until the April 2023, Incident</u>**

17. Plaintiff remained on monitored academic status from April 2023 until his termination in July 2023. After he returned from his leave of absence, Plaintiff was able to both complete his unfinished

work and continue to make progress in the Medical Program.

**ANSWER:** The University admits that Plaintiff remained on monitored academic status from April 2023 until his dismissal in July 2023. The University denies the remaining allegations in Paragraph 17.

**<u>The Final Incident Which Led to Plaintiff's Dismissal</u>**

18. On or about April 21, 2023, Plaintiff began taking a new medication. Zolpidem. This medication caused a reaction in an unexpected way. Specifically, while under the influence of the medication, Plaintiff created an e-mail of another medical student and sent an e-mail regarding evaluations and feedback to one of his instructors. The use of this medication impaired Plaintiff's ability to think and control his emotions and actions and thus impaired multiple major life activities. The effects of the medication reaction caused and resulted in Plaintiff creating and sending the e-mail in question.

**ANSWER:** The University admits that on April 30, 2023, Plaintiff sent an email to an Ob/Gyn resident from an email account created by Plaintiff that used another PSOM medical student's name in the email address rather than using Plaintiff's own email address. The University admits that this email was "regarding" evaluations and feedback in that it criticized the resident for her evaluation of medical students and for not giving more "honors" grades. The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 18 and therefore denies them.

19. As a result of this e-mail, Defendant began disciplinary proceedings against Plaintiff which ultimately resulted in Plaintiff's dismissal from the Medical Program. For the reasons set forth below, the dismissal proceedings and ultimate dismissal both violated disability discrimination laws and constituted a breach of contract between Plaintiff and Defendant for the reasons discussed below.

**ANSWER:** The University admits that proceedings against Plaintiff began after an investigation revealed that Plaintiff sent an email using another PSOM medical student's name in the email address rather than using Plaintiff's own email address. The University admits that the proceedings in question resulted in Plaintiff's dismissal from the Medical Program. The University denies any remaining allegations in Paragraph 19.

**The Contract Between Plaintiff and Defendant**

20. Plaintiff applied and was accepted to Defendant's Medical Program and enrolled in Fall, 2018.

**ANSWER:** The University admits that Plaintiff applied for and was accepted to the Medical Program and that Plaintiff enrolled in the Medical Program in Fall 2018. The University denies any remaining allegations in Paragraph 20.

21. Thereafter, Defendant charged tuition and fees to Plaintiff, and Plaintiff paid the tuition and other fees to remain in Defendant's Medical Program.

**ANSWER:** The University admits that it charges each student in the Medical Program tuition and fees and states that Plaintiff received a full tuition scholarship from the University that covered the cost of his tuition for the Medical Program. The University admits that Plaintiff paid certain fees to the University and was responsible for his own living and other indirect expenses during his time as a student in the Medical Program. The University denies that Plaintiff paid any tuition to the University for the Medical Program and denies any remaining allegations in Paragraph 21.

22. As a result of accommodations, Plaintiff was able to successfully complete the academic requirements of the Medical Program.

**ANSWER:** The University admits that it provided accommodations to Plaintiff but denies the remaining allegations in Paragraph 22.

23. Defendant published handbooks, catalogs, and policy manuals which became part of a contract between Plaintiff and Defendant.

**ANSWER:** The University admits that it publishes certain handbooks, catalogs, and policy manual but denies the remaining allegations in Paragraph 23.

**The Disciplinary Proceedings Before the CAP**

24. On or about late June or early July 2023, the disciplinary proceedings against Plaintiff, were

referred to the Committee on Academic Promotions("CAP").

**ANSWER:** The University denies the characterization of the CAP proceeding as a purely "disciplinary" proceeding, as CAP is responsible for the overall evaluation of student performance in the Medical Program, determination of appropriate remediation for academic difficulty, and oversight of academic issues related to student retention and progress. The University admits that Plaintiff was brought before CAP in or about June 2023 or July 2023 due to his failure to meet Pritzker's academic and professionalism standards. The University denies any remaining allegations in Paragraph 24.

25. The CAP met on July 14, 2023, after soliciting Plaintiff's arguments as to why he should not be dismissed.

**ANSWER:** The University admits the allegations in Paragraph 25.

26. On July 19, 2023, the CAP decided to dismiss Plaintiff from the Medical Program. The CAP listed four reasons in support of CAP's decision to dismiss Plaintiff from Defendant's Medical Program. Specifically, the stated reasons which the CAP used to support its decision to dismiss Plaintiff were: (1) repeated unprofessional behavior; (2) the egregious nature of the final professionalism complaint; (3) unprofessional behavior while on Monitored Academic Status; and (4) significant and sustained academic performance deficiencies.

**ANSWER:** The University admits the allegations in Paragraph 26.

27. Most of the reasons for dismissal were caused by Plaintiff's disabilities and/or caused by the ongoing process of providing Plaintiff with appropriate accommodations.

**ANSWER:** The University denies the allegations in Paragraph 27.

28. Specifically, Plaintiff's professionalism concern complaints (including the one for which he was dismissed) were caused by manifestations of his disabilities. CAP specifically did not make a determination based on objective facts on whether the final professionalism complaint was caused by the medication reaction set forth in Paragraph 18. CAP likewise did not make a determination as to whether medication reaction which caused the final professionalism concern could be accommodated.

**ANSWER:** The University denies the allegations in Paragraph 28 and denies that CAP was legally obligated to make the "determinations" referenced in Paragraph 28.

29. Plaintiff's monitored academic status was also a direct result of the process where Defendant

and Plaintiff worked through and determined appropriate accommodations for Plaintiff. Moreover, after Plaintiff's leave of absence and accommodations, Plaintiff was able to complete his academic work successfully.

**ANSWER:** The University denies the allegations in Paragraph 29.

30. In making its decision to dismiss, CAP did not make any objective determination whether the reasons for Plaintiff's dismissal were caused by Plaintiff's disability and/or whether Plaintiff's disabilities could have been accommodated.

**ANSWER:** The University denies the allegations in Paragraph 30 and denies that CAP was legally obligated to make the "determination" referenced in Paragraph 30.

31. In making its decision to dismiss, CAP did not make any objective determination as to whether Plaintiff's previous academic and professionalism complaints had been ameliorated by the accommodations provided by Defendant.

**ANSWER:** The University denies the allegations in Paragraph 28 and denies that CAP was legally obligated to make the "determination" referenced in Paragraph 28.

**<u>Plaintiff's Appeal to the Academic Appeal Committee</u>**

32. Plaintiff timely appealed the CAP decision to dismiss to the Defendant's Academic Appeal Committee ("AAC").

**ANSWER:** The University admits the allegations in Paragraph 32.

33. Plaintiff was not given the ten days to respond directly to CAP as allowed by the University's Academic Guidelines.

**ANSWER:** The University denies the allegations in Paragraph 33.

34. Plaintiff was allowed to file a written appeal of the CAP's decision which he completed on August 9, 2023. In his written appeal, Plaintiff pointed out: (1) that the last incident which led to dismissal was a manifestation of his disability; (2) that the previous professionalism complaint was likewise caused and/or exacerbated by disability; and (3) that any claim of academic problems was not supported by evidence after Plaintiff's return from his leave of absence.

**ANSWER:** The University admits that Plaintiff was allowed to file a written appeal of the CAP's decision. The University lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 34 regarding when he completed his written appeal and

therefore denies them. The University denies any characterization of his written appeal that is inconsistent with the actual text of that document and denies any remaining allegations in Paragraph 34.

35. Plaintiff also produced numerous evaluations and statements showing that Plaintiff could succeed in the program with appropriate accommodations.

**ANSWER:** The University admits that Plaintiff submitted with his appeal selected evaluations given to Plaintiff and letters Plaintiff solicited from others on his behalf. The University denies that these evaluations and letters showed that Plaintiff could succeed in the program, with or without appropriate accommodations, and denies any remaining allegations in Paragraph 35.

36. On September 6, 2023, the AAC affirmed the CAP's decision to dismiss Plaintiff.

**ANSWER:** The University admits the allegations in Paragraph 36.

37. The AAC did not make any effort to determine whether his professionalism complaints (especially the final professionalism complaint) were manifestations of disability. The AAC likewise did not determine whether the manifestations could be accommodated. The AAC also did not consider that Plaintiff was able to complete his studies with the accommodations provided.

**ANSWER:** The University denies the allegations in Paragraph 37 and denies that CAP was legally obligated to make the "determination" referenced in Paragraph 37.

38. Rather, the AAC rejected Plaintiff's assertions regarding his disability by relying on various post hoc reasons for dismissing Plaintiff including alleged professionalism concerns which none of Defendants' agents considered important enough to bring up at the time the alleged conduct occurred. The AAC also relied on Plaintiff's protected conduct to request feedback and challenge evaluations to dismiss Plaintiff.

**ANSWER:** The University denies the allegations in Paragraph 37.

**Procedural Irregularities in Violation of Defendant's Policies**

39. The CAP and AAC decisions were tainted by multiple procedural violations of the Defendant's own policies including:

**ANSWER:** The University denies the allegations in Paragraph 39.

a. The Defendant, through AAC and CAP, used as a basis supporting dismissal, that

Plaintiff used the Defendant's University Grievance Policy for Graduate Students. Plaintiff requested clarification and feedback for grades and evaluations, Plaintiff followed the published policy sections titled "Complaints or Disputes about Grades and Academic Evaluations" and "Informal Resolution Options." The CAP and AAC then listed instances of Plaintiff requesting feedback for grades and evaluations as supporting evidence for his dismissal. This is in violation of the University Grievance Policy's "Statement of Non-Retaliation."

**ANSWER:** The University denies the allegations in Paragraph 39(a).

b. Defendant retaliated against Plaintiff in violation of its own Student Treatment Policy published by the Medical Program. Plaintiff reported two residents for mistreatment, following the section titled "Reporting Mistreatment" in the Student Treatment Policy. The Defendant, through the CAP and AAC, listed those instances as supporting evidence for his dismissal. This is in violation of "Reporting Mistreatment" subsection 5, which states, "The University prohibits retaliation against any person who exercises any rights or responsibilities under this policy."

**ANSWER:** The University denies the allegations in Paragraph 39(b).

c. The Defendant failed to disclose known information that could impact his standing as a student prior to CAP's meeting to dismiss Plaintiff, as required by page 21 of the Defendant's Academic Guidelines. Information known to the Dean before the meeting and deliberated at the meeting was not disclosed to Plaintiff until after the meeting in violation of the Academic Guidelines.

**ANSWER:** The University denies the allegations in Paragraph 39(c).

d. The Defendant failed to allow Plaintiff ten (10) days to respond to CAP's decision to dismiss him (before the formal appeal), as outlined on page 21 of the Academic Guidelines. The Defendant took advantage of this failure. To wit, the AAC stated in response to Plaintiff's formal appeal that Plaintiff failed to provide information regarding his prescription medication reaction to CAP. Plaintiff would have been able to provide such information if given the allowed 10 days to respond to the CAP's decision.

**ANSWER:** The University denies the allegations in Paragraph 39(d).

e. The Defendant failed to allow Plaintiff ten (10) days before CAP's decision became effective as allowed by page 21 of the Academic Guidelines. His dismissal became effective immediately with access to campus completely revoked.

**ANSWER:** The University denies the allegations in Paragraph 39(e).

f. The Defendant failed to notify the Plaintiff of all committee members of the CAP and AAC. The University Student Manual section on Area Disciplinary Systems indicates: "The Dean of Students (or designee) will notify the respondent of the members of the Area Disciplinary Committee as soon as practicable before the hearing." The Defendant's failure prevented Plaintiff from being able to request a substitution if the

participation of any individual on the Committee poses a conflict of interest. Plaintiff was never notified of the committee members, depriving him of his right to request substitution despite having prior substantive interactions with at least two committee members.

**ANSWER:** The University admits that the University did not notify Plaintiff of the members of the CAP and AAC prior to the meetings of those committees at which the committees addressed Plaintiff's academic performance and denies that the applicable procedures required any such notification to Plaintiff. The University denies that the University Student Manual section on Area Disciplinary Systems applied to the proceedings before the CAP and AAC relating to Plaintiff and denies the remaining allegations in Paragraph 39(f).

g. Plaintiff was not allowed to make an appeal and oral presentation to the AAC. Page 26 of the Academic Guidelines states: "The student may request to appear before the Academic Appeal Committee to answer questions or to present any new relevant information. This request will be granted unless the appearance would raise issues of safety for the committee members." Plaintiff was not allowed to present information to the AAC. He was allowed only three (3) minutes to introduce himself, which was wholly insufficient given the gravity of the appeal and the amount of information Plaintiff had prepared to present.

**ANSWER:** The University denies the allegations in Paragraph 36(g).

h. Defendant's handbook contains an insertion that the handbook does not constitute a contract. The Defendant's simultaneous: (1) promise of procedural protections in said handbook; (2) with a claim that the procedural protections are not enforceable contractual promises; constitutes bad faith.

**ANSWER:** The University admits that its handbook does not constitute a contract. The University denies that it acted in bad faith and denies the remaining allegations in Paragraph 39(h).

i. Defendant has a published policy which prohibits disability discrimination as defined by the anti-discrimination laws.

**ANSWER:** The University admits the allegations in Paragraph 39(i) but denies that its anti-discrimination policy can support a breach of contract claim, as held by this Court. *See* Dkt. 34. The University denies any remaining allegations in Paragraph 39(i).

**FIRST CLAIM FOR RELIEF**
**Violation of the Americans with Disabilities Act and Americans with Disabilities Amendments Act, Title III- Discrimination on the basis of disability and Refusal to Accommodate (Pleaded from Amended Complaint in Full in Order to Preserve Issues for Appeal)**

40. Plaintiff incorporates by reference Paragraphs 1-39 above.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 40 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 40 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are denied. To the extent Count I remains pending as a claim for disability discrimination, the University hereby incorporates its answers to the allegations in the preceding paragraphs.

41. Plaintiff has disabilities and is a member of the protected class under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act ("ADA and ADAAA"). 42 U.S.C.A. Sec. 12101 et seq. He has impairments that affect major life activities; or in the alternative, has a record of said impairments; and/or, in the alternative, was regarded by the Defendants as having impairments which affected his major life activities. Plaintiff's impairments are set forth above in Paragraph 8 and 18 and 19 of the Second Amended Complaint.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 41 pertains to the failure-to-accommodate claim in Count I, no

response to Paragraph 41 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, Paragraph 41 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 41.

42. Plaintiff's impairments affect major life activities of learning, walking, thinking, and working. Defendant agrees that Plaintiff has disabilities within the meaning of the statute and has agreed to provide accommodations to Plaintiff.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 42 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 42 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies that it "agrees that Plaintiff has disabilities within the meaning of the statute" and states that whether Plaintiff has disabilities within the meaning of the ADA is a legal conclusion to which no response is required. The University admits that Plaintiff submitted paperwork to the University's SDS office regarding certain medical conditions, that SDS determined Plaintiff was eligible for certain accommodations, and that on such basis SDS granted Plaintiff accommodations. The University denies any remaining allegations in Paragraph 97.

43. Defendant is in the business of providing public accommodations within the meaning of Title III of the ADA and ADAAA. As a result, Defendant is required to not discriminate based on disability

and to provide reasonable modifications to its Medical Program in order to allow Plaintiff to participate in the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 43 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 43 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University admits it is subject to Title III of the ADA and ADAAA. The University denies Plaintiff's characterization of the requisite legal standards under the ADA and ADAAA and denies any remaining allegations in Paragraph 43.

44. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 44 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 44 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the

extent Count I remains pending as a claim for disability discrimination, Paragraph 44 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 44.

45. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 45 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 45 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, Paragraph 45 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 45.

46. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended

Case: 1:24-cv-02525 Document #: 141 Filed: 01/20/26 Page 44 of 79 PageID #:5583

Complaint. To the extent Paragraph 46 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 46 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 46.

47. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism were subject to reasonable modifications to accommodate Plaintiff's disability.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 47 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 47 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 47.

48. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable modifications could and had accommodated Plaintiff allowing him to succeed in the Medical Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and

brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 48 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 48 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 48.

49. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and then determining whether reasonable modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 49 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 49 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 49.

50. Defendant's actual reasons for dismissal were (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance. The final professionalism concern complaint could have been accommodated through reasonable modifications of the Medical Program as required by the ADA and ADAAA. Plaintiff's deficiencies in his academic performance were accommodated, and Plaintiff was succeeding academically in the Medical Program. Nonetheless, Plaintiff was dismissed from the Medical Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate

claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 50 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 50 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University admits that Plaintiff was dismissed from the Medical Program and admits that Plaintiff received certain academic accommodations. The University denies the remaining allegations in Paragraph 50.

51. Upon information and belief, Defendant's additional reasons for dismissal (apart from those in Paragraph 50) listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 51 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 51 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 51.

52. Defendant would not have dismissed Plaintiff but for the final professionalism concern

Case: 1:24-cv-02525 Document #: 141 Filed: 06/02/25 Page 247 of 579 PageID #:5585

complaint which was caused by a manifestation of disability which could have been accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 52 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 52 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 52.

53. Defendant is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. Defendant is engaged in an industry affecting commerce and, at all times pertinent hereto, was providing public accommodations within the meaning of the ADA and ADAAA.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 53 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 53 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University admits that the University is an Illinois not for profit corporation with its principal administrative office in Cook

County, Illinois. The University states that the remaining allegations are legal conclusions to which no response is required. To the extent any response is required, the University denies the remaining allegations in Paragraph 53.

54. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 54 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 54 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 54.

55. Plaintiff is subject to irreparable harm in not being able to complete his studies.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 55 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 55 is required as the Court has dismissed the failure-to-accommodate claim in

Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, Paragraph 55 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 55.

56. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 56 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 56 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University admits that Plaintiff appealed the decision of the CAP to dismiss him and that his appeal was denied. The University denies any remaining allegations in Paragraph 56.

57. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended

Complaint. To the extent Paragraph 57 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 57 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, Paragraph 57 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 57.

58. Plaintiff is entitled to injunctive relief under 28 CFR 36.501 for violations of the ADA and ADAAA.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 58 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 58 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 58.

59. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and

brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 59 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 59 is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 59.

WHEREFORE, Plaintiff, Robert Hight, respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as student in Defendant's Medical Program and entry of an injunction overturning the Defendant's decision to expel Plaintiff from Defendant's Medical Program;

B. Declaratory relief removing all professionalism complaints and all disciplinary proceedings from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent this paragraph pertains to the failure-to-accommodate claim in Count I, no response to this paragraph is required as the Court has dismissed the failure-to-accommodate claim in Count I, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count I remains pending as a claim for disability discrimination, the University admits that Plaintiff seeks the aforementioned relief but denies that it engaged in any wrongdoing and denies that

Plaintiff is entitled to any such relief or any other relief from the University.

**SECOND CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act of 1973 for Discrimination on the Basis of Disability and Refusal to Accommodate Disability (Pleaded in Full in order to Preserve Claims for Appeal)**

60. Plaintiff incorporates by reference, Paragraphs 1-59 above.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 60 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 60 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University hereby incorporates its answers to the allegations in the preceding paragraphs.

61. Plaintiff has a disability/handicap and is a member of the protected class under Section 504 of the Rehabilitation act of 1973 ("Section 504"). 29 U.S.C.A. 794. He has an impairment that affects major life activities; or in the alternative, has a record of said impairment; and/or, in the alternative, was regarded by the Defendants as having an impairment which affected his major life activities for the reasons set forth above. Plaintiff's impairments are listed in Paragraphs 8 and 18-19 of the Second Amended Complaint.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended

Complaint. To the extent Paragraph 61 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 61 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 61 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 61.

62. Defendant receives federal aid in the form of federal tuition grants, guaranteed federal tuition loans and other federal student aid programs. Defendant also receives research grants from the federal government. Defendant is thus subject to the requirements of Section 504 to accommodate students with handicaps.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 62 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 62 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits the allegations in the first two sentences of Paragraph 62. The University states the remaining allegations are legal conclusions to which no response is required. To the extent any response is required, the University admits that it is subject to Section 504 and denies the remaining allegations in Paragraph 62.

63. Beginning in 2018, Defendant agreed to accommodate Plaintiff's handicaps and admitted Defendant was subject to the requirements of Section 504.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 63 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 63 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits that Plaintiff submitted paperwork to the University's SDS office regarding certain medical conditions, that SDS determined Plaintiff was eligible for certain accommodations, and that on such basis SDS granted Plaintiff accommodations. The University further admits that it is subject to Section 504. The University denies any remaining allegations in Paragraph 63.

64. Part of Defendant's duty in regard to the professionalism complaints was to use objective criteria to determine whether the professionalism complaints were manifestations of a disability and whether such manifestations could be accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 64 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 64 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 64 states a legal

conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 64.

65. Part of Defendant's duty in regard to Plaintiff's academic performance was to determine whether his initial academic issues were manifestations of his disabilities and whether such disabilities could be accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 65 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 65 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 65 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 65.

66. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence. Plaintiff can perform the academic requirements of Defendant's Medical program with reasonable accommodations.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 66 pertains to the failure-to-accommodate claim in Count I, no

response to Paragraph 66 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 66.

67. The CAP and AAC failed to consider whether Plaintiff's professionalism complaints were manifestations of his disability or whether Defendant's Medical Program requirements associated with professionalism could be reasonably accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 67 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 67 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 67.

68. The CAP and AAC failed to consider whether Plaintiff's initial academic problems were manifestations of his disabilities and whether reasonable accommodations could be and had been allowing Plaintiff to succeed in the Medical Program

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended

Complaint. To the extent Paragraph 68 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 68 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 68.

69. Rather than carry out an objective assessment as to the effect of Plaintiff's disabilities on Defendant's professionalism and academic concerns and determining whether reasonable modifications to the Medical Program could allow Plaintiff to succeed, Defendant's agents in the CAP and AAC relied on additional, pretextual reasons to dismiss Plaintiff

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 69 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 69 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 69.

70. Defendant's actual reasons for dismissal were (1) the final professionalism concern complaint; and (2) Plaintiff's alleged poor academic performance. The final professionalism complaint could have been accommodated, and Plaintiff's academic performance deficiencies were accommodated through reasonable accommodations of the Medical Program as required by Section 504. Nonetheless, Plaintiff was dismissed from the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended

Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 70 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 70 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits that Plaintiff was dismissed from the Medical Program and admits that Plaintiff received certain academic accommodations. The University denies the remaining allegations in Paragraph 70.

71. Upon information and belief, Defendant's additional reasons for dismissal listed by the CAP and AAC (apart from those in Paragraph 70 of the Amended Complaint) were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of his disability which could have been accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 71 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 71 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 71.

72. Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of disability which could have been accommodated.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate

claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 72 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 72 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 72.

73. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 73 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 73 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 73.

74. Plaintiff is subject to irreparable harm in not being able to complete his studies.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 74 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 74 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 74 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 74.

75. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 75 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 75 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits that Plaintiff appealed the decision of the CAP to dismiss him and that his appeal was denied. The University denies any remaining allegations in Paragraph 75.

76. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 76 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 76 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 76 states a legal conclusion to which no response is required. To the extent any response is required, the University denies the allegations in Paragraph 76.

77. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 77 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 77 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the

allegations in Paragraph 77.

78. Defendant's agents have discriminated against Plaintiff in lieu of properly accommodating Plaintiff's disabilities as required by Section 504 by harassing Plaintiff, disciplining Plaintiff; and ultimately dismissing Plaintiff from the Medical Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 78 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 78 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 78.

79. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner or would have been able to perform his academic duties with a reasonable accommodation.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 79 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 79 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the

allegations in Paragraph 79.

80. Plaintiff has a handicap within the meaning of Section 504 of the Rehabilitation Act of 1973.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 80 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 80 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, Paragraph 80 states a legal conclusion to which no response is required. To the extent any response is required, the University admits that Plaintiff informed the University that he had certain medical conditions that SDS determined rendered Plaintiff eligible for certain accommodations and that on such basis SDS granted Plaintiff accommodations. The University denies the remaining allegations in Paragraph 80.

81. Plaintiff has a statutory right to be free from discrimination. Plaintiff will be subject to irreparable harm if the Court fails to enjoin further discrimination or craft other relief necessary to make Plaintiff whole. 29 U.S.C.A. 794(a). Plaintiff thus seeks an injunction and reinstatement to the Program to allow Plaintiff to complete his studies.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended

Complaint. To the extent Paragraph 81 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 81 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits that Plaintiff seeks the relief referenced in Paragraph 81. The University denies that he is entitled to such relief or any other relief and denies any remaining allegations in Paragraph 81.

82. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of time, earning potential, and loss of tuition and fees, and emotional distress and will suffer further if he is not reinstated to the Medical Program.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent Paragraph 82 pertains to the failure-to-accommodate claim in Count I, no response to Paragraph 82 is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University denies the allegations in Paragraph 82.

WHEREFORE, Plaintiff, Robert Hight respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as a graduate student in the Program with all rights and privileges;

B. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for liquidated damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**ANSWER:** The University states that the Court dismissed the failure-to-accommodate claims in Count I and II of the First Amended Complaint, *see* Dkt. 34, that the disability discrimination claims in Counts I and II of the First Amended Complaint survived, *id.*, and that in his Second Amended Complaint, Plaintiff has repleaded Counts I and II "in full in order to preserve issues for appeal" and brought amended failure-to-accommodate claims in Counts IV and V of the Second Amended Complaint. To the extent this paragraph pertains to the failure-to-accommodate claim in Count I, no response to this paragraph is required as the Court has dismissed the failure-to-accommodate claim in Count II, *see* Dkt. 34, and on this ground the allegations in this Paragraph are hereby denied. To the extent Count II remains pending as a claim for disability discrimination, the University admits that Plaintiff seeks the aforementioned relief but denies that it engaged in any wrongdoing and denies that Plaintiff is entitled to any such relief or any other relief from the University.

**THIRD CLAIM FOR RELIEF**
**Breach of Tuition Contract Under Illinois State Law (Pleaded from the Amended Complaint in Full in Order to Preserve [I]ssues for Appeal)**

82. Plaintiffs restate and reallege Paragraphs 1-82 above.

**ANSWER:** The University hereby incorporates its answers to the allegations in the preceding paragraphs. The University further notes that this is the second paragraph in the SAC captioned Paragraph 82.

83. Plaintiff entered into a tuition contract with Defendant by applying to the Program in 2018 and paying tuition and fees to the Defendant until his dismissal.

**ANSWER:** Paragraph 83 state a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 83. The University further states that the Court dismissed Plaintiff's breach of contract claim in this Third

Claim for Relief (Count III) to the extent it is premised on a "breach of implied tuition contract" theory. *See* Dkt. 50 at 2-3.

84. Plaintiff was completing the academic requirements of the Program satisfactorily until his improper expulsion on September 6, 2023.

**ANSWER:** The University denies the allegations in Paragraph 84.

84. Defendant published academic guidelines and handbooks for the Medical Program. The relevant portions of said policies are fully set forth in Paragraph 39 of this Amended Complaint.

**ANSWER:** The University admits that it published academic guidelines and handbooks for the Medical Program. The University denies that Paragraph 39 fully and accurately sets forth those policies and denies any remaining allegations in this Paragraph 84. The University further notes that this is the second paragraph in the SAC captioned Paragraph 84.

85. Defendant's policy protects Plaintiff from discrimination based on disability and guarantee the right to reasonable accommodation for Plaintiff's disabilities.

**ANSWER:** The University admits that it has a non-discrimination policy. The University denies the remaining allegations in Paragraph 85. The University further states that the Court dismissed Plaintiff's breach of contract claim in this Third Claim for Relief (Count III) "to the extent the breach is premised on the University's policy of complying with the ADA." Dkt. 34 at 13; *see also* Dkt. 50. The University denies any remaining allegations in Paragraph 85.

86. For the reasons set forth above in Counts I and II, Plaintiff [sic] has violated the disability discrimination laws and thus breached the tuition contract with Plaintiff.

**ANSWER:** The University presumes that Paragraph 86 is meant to allege that the University, not Plaintiff, "has violated the disability discrimination laws and thus breached the tuition contract with Plaintiff" and therefore denies the allegations in Paragraph 86. The University further states that the Court dismissed Plaintiff's breach of contract claim in this Third Claim for Relief (Count III) "to the extent the breach is premised on the University's policy of complying

with the ADA" and to the extent that same claim is premised on a "breach of implied tuition contract" theory. *See* Dkt. 50 at 2-3.

87. Defendant's publications constitute contractual promises to Plaintiff. Defendant breached its promise to not discriminate against Plaintiff based on his disability. Defendant's professionalism complaints and subsequent discipline and dismissal were a breach of contract for the reasons set forth in Counts I and II. Plaintiff's dismissal was undertaken in bad faith and for arbitrary reasons.

**ANSWER:** The University denies the allegations in Paragraph 87.

88. Defendant also provided procedural protections which it violated in dismissing Plaintiff as set forth in Paragraph 39 of this Amended Complaint.

**ANSWER:** The University denies the allegations in Paragraph 88.

89. Defendant violated the procedural protections set forth in Defendant's published material when conducting Plaintiff's dismissal proceedings.

**ANSWER:** The University denies the allegations in Paragraph 89.

90. Defendant's disregard and failure to follow its own published procedures resulted in Plaintiff's dismissal for arbitrary and bad faith reasons.

**ANSWER:** The University denies the allegations in Paragraph 90.

91. Plaintiff has a clear right to finish his studies in light of the breaches of contract.

**ANSWER:** The University denies the allegations in Paragraph 91.

92. Plaintiff is subject to irreparable harm if he is not immediately reinstated to the Program.

**ANSWER:** Paragraph 92 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 92.

93. Plaintiff has a right to specific performance given the unique nature of the services provided.

**ANSWER:** Paragraph 93 states a legal conclusion to which no response is required. To the

extent a response is required, the University denies the allegations in Paragraph 93.

94. In the alternative to the allegations in Paragraph 93, Plaintiff has been damaged by the breaches of contract in the form of lost possible wages, lost opportunities, and lost time as a result of Defendant's breaches of contract.

**ANSWER:** The University denies the allegations in Paragraph 94.

WHEREFORE, Plaintiff, Robert Hight, requests the following of the Court:

A. That a judgment of breach of contract be entered against the Defendant;

B. That the Court order and mandate the Plaintiff be fully reinstated to his position in the Program with all rights and privileges;

C. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

D. In the alternative, that Plaintiff be awarded damages for Defendant's breach of contract.

E. For such further and additional relief as the Court deems appropriate.

**ANSWER:** The University admits that Plaintiff seeks the aforementioned relief but denies that it engaged in any wrongdoing and denies that Plaintiff is entitled to such relief or any other relief from the University.

**FOURTH CLAIM FOR RELIEF**

**Violation of the Americans with Disabilities Act and Americans with Disabilities Amendments Act, Title III – Discrimination for Refusal to Enter into Process to Determine Whether Reaction to Medication Could Be Accommodated and to Accommodate Reaction to Medication**

95. Plaintiff incorporates by reference Paragraphs 1-94 above.

**ANSWER:** The University hereby incorporates its answers to the allegations in the preceding paragraphs.

96. Plaintiff has disabilities and is a member of the protected class under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act ("ADA and ADAAA"). 42 U.S.C.A. Sec. 12101 et seq. He has impairments that affect major life activities; or in the alternative, has a record of said impairments; and/or, in the alternative, was regarded by the Defendants as

having impairments which affected his major life activities. Plaintiff's impairments are set forth above in Paragraph 8 and 18 and 19 of the Second Amended Complaint.

**ANSWER:** Paragraph 96 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 96.

97. Plaintiff's impairments affect major life activities of learning, walking, thinking, and working. Defendant agrees that Plaintiff has disabilities within the meaning of the statute and has agreed to provide accommodations to Plaintiff.

**ANSWER:** The University denies that it "agrees that Plaintiff has disabilities within the meaning of the statute" and states that whether Plaintiff has disabilities within the meaning of the ADA is a legal conclusion to which no response is required. The University admits that Plaintiff submitted paperwork to the University's Student Disability Services ("SDS") office regarding certain medical conditions, that SDS determined Plaintiff was eligible for certain accommodations, and that on such basis SDS granted Plaintiff accommodations. The University denies any remaining allegations in Paragraph 97.

98. Defendant is in the business of providing public accommodations within the meaning of Title III of the ADA and ADAAA. As a result, Defendant is required to not discriminate based on disability and to provide reasonable modifications to its Medical Program in order to allow Plaintiff to participate in the Program.

**ANSWER:** The University admits it is subject to Title III of the ADA and ADAAA. The University denies Plaintiff's characterization of the requisite legal standards under the ADA and ADAAA and denies any remaining allegations in Paragraph 98.

99. Plaintiff can complete his studies and comply with the requirements of the Medical Program if he were provided reasonable accommodations for his disabilities as has been shown by his academic performance since he returned from his leave of absence.

**ANSWER:** The University denies the allegations in Paragraph 99.

100.Plaintiff's reaction to a medication described in Paragraph 18 and 19 of this Second Amended Complaint is a disability within the meaning of the ADA and the ADAAA. Plaintiff's reaction to the medication is an impairment which affects the major life activities of thinking, walking, learning, impulse control, and remembering past actions ("Hereinafter referred to as

"Medication Reaction Disability").

**ANSWER:** Paragraph 100 states legal conclusions to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 100.

101. Plaintiff first learned of his Medication Reaction Disability after the incident on April 21, 2023, described in Paragraphs 18 and 19 of the Second Amended Complaint.

**ANSWER:** The University denies the characterization in Paragraph 101 of a "medication reaction" as a disability. The University otherwise lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 101 and therefore denies them.

102. Thereafter, Plaintiff was subjected to a professionalism complaint and discipline beginning in June, 2023 for a manifestation of the Medication Reaction Disability. To wit, Plaintiff was subjected to discipline for creating and sending e-mails under another student's e-mail while under the influence of the reaction to medication described in Paragraphs 18 and 19 of the Second Amended Complaint.

**ANSWER:** The University admits that on April 30, 2023, Plaintiff sent an email to an Ob/Gyn resident from an email account created by Plaintiff that same day that used another medical student's name in the email address rather than using Plaintiff's own email address. The University further admits that thereafter, Plaintiff was issued a PCR as a result of such conduct. The University otherwise lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in Paragraph 102, and therefore denies them.

103. In light of the circumstances of Plaintiff's learning of the Medication Reaction Disability and the University's choice to seek discipline against and dismissal of Plaintiff, the appropriate avenue to seek a modification as to the discipline to be imposed, was in the disciplinary proceedings against Plaintiff (the CAP and AAC proceedings).

**ANSWER:** The University denies the allegations in Paragraph 103.

104. In said disciplinary proceedings, the University initially refused to provide Plaintiff with his procedural rights to address the CAP regarding his Medical Reaction Disability as described in Paragraph 39 of the Second Amended Complaint.

**ANSWER:** The University denies the allegations in Paragraph 104.

105. Thereafter, Plaintiff requested modifications to the discipline to be imposed on him before the AAC based on the fact that the conduct which led to the disciplinary proceedings was a manifestation of the Medical Reaction Disability.

**ANSWER:** The University denies the allegations in Paragraph 105.

106. The AAC rejected outright any modification of discipline based on the fact that Plaintiff's conduct was an unforeseeable manifestation of the Medical Reaction Disability. The AAC made no attempt to determine whether the University's imposition of discipline should be modified in light of the fact that Plaintiff's conduct resulted from a manifestation of the Medical Reaction Disability.

**ANSWER:** The University denies the allegations in Paragraph 106.

107. Rather than: (a) carry out an objective assessment as to the effect of Plaintiff's Medical Reaction Disability on Plaintiff's ability to comply with Defendant's rules; (b) determine whether such a manifestation could be accommodated through reasonable modifications to the Medical Program; (c) which could allow Plaintiff to succeed; Defendant used a manifestation of Plaintiff's Medical Reaction Disability as a reason to dismiss Plaintiff from the Medical Program.

**ANSWER:** The University denies the allegations in Paragraph 107 and denies that it had any legal obligation to take any of the actions alleged in Paragraph 107.

108. The ADA and ADAAA require the University to conduct an individualized assessment based on objective factors to determine whether the manifestations of the Medical Reaction Disability could have been accommodated before disciplining and dismissing Plaintiff. The University made no such determination after Plaintiff requested a modification of disciplinary sanctions because of the Medical Reaction Disability.

**ANSWER:** The University denies the allegations in Paragraph 108.

109. The final professionalism concern complaint could have been accommodated through reasonable modifications of the Medical Program as required by the ADA and ADAAA. To wit: (a) the only necessary modification was a recognition by the University that Plaintiff's conduct was caused by a manifestation of Plaintiff's Medical Reaction Disability which would not happen again unless Plaintiff took the medication again; and (b) a decision to waive discipline and dismissal if Plaintiff agreed not to take the medication again.

**ANSWER:** The University denies the allegations in Paragraph 109.

110. Upon information and belief, Defendant's additional reasons for dismissal (apart from the manifestation of the Medical Reaction Disability) listed by the CAP and AAC were pretextual and were an excuse to avoid accommodating Plaintiff and as a cover to dismiss Plaintiff based upon manifestations of the Medical Reaction Disability which could have been accommodated.

**ANSWER:** The University denies the allegations in Paragraph 110.

111.Defendant would not have dismissed Plaintiff but for the final professionalism concern complaint which was caused by a manifestation of the Medical Reaction Disability which could have been accommodated but was not accommodated through reasonable modifications.

**ANSWER:** The University denies the allegations in Paragraph 111.

112.Defendant is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. Defendant is engaged in an industry affecting commerce and, at all times pertinent hereto, was providing public accommodations within the meaning of the ADA and ADAAA.

**ANSWER:** The University admits that the University is an Illinois not for profit corporation with its principle administrative office in Cook County, Illinois. The University states that the remaining allegations are legal conclusions to which no response is required. To the extent a response is required, the University denies the remaining allegations in Paragraph 112.

113.At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

**ANSWER:** The University denies the allegations in Paragraph 113.

114.Plaintiff is subject to irreparable harm in not being able to complete his studies.

**ANSWER:** Paragraph 114 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 114.

115.Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

**ANSWER:** The University admits that Plaintiff appealed the decision of the CAP to dismiss him and that his appeal was denied. The University denies any remaining allegations in Paragraph 115.

116.The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

**ANSWER:** Paragraph 116 states a legal conclusion to which no response is required. To

the extent a response is required, the University denies the allegations in Paragraph 116.

117. Plaintiff is entitled to injunctive relief under 28 CFR 36.501 for violations of the ADA and ADAAA.

**ANSWER:** The University denies the allegations in Paragraph 117.

118. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

**ANSWER:** The University denies the allegations in Paragraph 118.

WHEREFORE, Plaintiff, Robert Hight, respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as student in Defendant's Medical Program and entry of an injunction overturning the Defendant's decision to expel Plaintiff from Defendant's Medical Program; Declaratory relief removing all professionalism complaints and all disciplinary proceedings from Plaintiff's student files;

B. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

C. An award for attorneys' fees and costs, and any other relief this Court deems appropriate.

**ANSWER:** The University admits that Plaintiff seeks the aforementioned relief but denies that it engaged in any wrongdoing and denies that Plaintiff is entitled to any such relief or any other relief from the University.

## FIFTH CLAIM FOR RELIEF

**Violation of Section 504 of the Rehabilitation Act of 1973 for Discrimination on the Basis of Disability Discrimination for Refusal to Enter into Process to Determine Whether Reaction to Medication Could Be Accommodated and to Accommodate Reaction to Medication and Refusal to Accommodate Disability**

119. Plaintiff incorporates by reference, Paragraphs 1-118 above.

**ANSWER:** The University hereby incorporates its answers to the allegations in the preceding paragraphs.

120. Plaintiff has a disability/handicap and is a member of the protected class under Section 504 of the Rehabilitation act of 1973 ("Section 504"). 29 U.S.C.A. 794. He has an impairment that

affects major life activities; or in the alternative, has a record of said impairment; and/or, in the alternative, was regarded by the Defendants as having an impairment which affected his major life activities for the reasons set forth above. Plaintiff's impairments are listed in Paragraphs 8 and 18-19 of the Second Amended Complaint.

**ANSWER:** Paragraph 120 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 120.

121. Defendant receives federal aid in the form of federal tuition grants, guaranteed federal tuition loans and other federal student aid programs. Defendant also receives research grants from the federal government. Defendant is thus subject to the requirements of Section 504 to accommodate students with handicaps.

**ANSWER:** The University admits the allegations in the first two sentences of Paragraph 121. The University states the remaining allegations are legal conclusions to which no response is required. To the extent a response is required, the University denies the remaining allegations in Paragraph 121.

122. For the reasons set forth in Paragraphs 95-118 of this Second Amended Complaint, the University violated Section 504 as well as the ADA and ADAAA by: (a) refusing to consider modifications of the disciplinary process to determine whether Plaintiff's Medical Reaction Disability could have been accommodated; and (b) imposition of discipline after Plaintiff made such request in the disciplinary proceedings.

**ANSWER:** The University denies the allegations in Paragraph 122.

123. Defendant would not have dismissed Plaintiff but for the final professionalism concern which resulted directly from the manifestation of the Medical Reaction Disability which could have been accommodated.

**ANSWER:** The University denies the allegations in Paragraph 123.

124. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner when provided with a reasonable modification to the Medical Program. Plaintiff would have been able to successfully complete the Medical Program with continuing reasonable modifications and in an environment free of discrimination.

**ANSWER:** The University denies the allegations in Paragraph 124.

125. Plaintiff is subject to irreparable harm in not being able to complete his studies.

**ANSWER:** Paragraph 125 states a legal conclusion to which no response is required. To

the extent a response is required, the University denies the allegations in Paragraph 125.

126. Plaintiff has demanded reinstatement through the appeals process which Defendant has rejected.

**ANSWER:** The University admits that Plaintiff appealed the decision of the CAP to dismiss him and that his appeal was denied. The University denies any remaining allegations in Paragraph 126.

127. The last, peaceable status quo between the parties was Plaintiff attending as a student in the Program.

**ANSWER:** Paragraph 127 states a legal conclusion to which no response is required. To the extent a response is required, the University denies the allegations in Paragraph 127.

128. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of opportunity to complete his degree, and without redress, will be irreparably harmed by the Defendant's illegal expulsion if he is not returned to the Program.

**ANSWER:** The University denies the allegations in Paragraph 128.

129. Defendant's agents have discriminated against Plaintiff in lieu of properly accommodating Plaintiff's disabilities as required by Section 504 by harassing Plaintiff, disciplining Plaintiff; refusing to reasonably accommodate Plaintiff through modifications of the disciplinary process; and ultimately dismissing Plaintiff from the Medical Program.

**ANSWER:** The University denies the allegations in Paragraph 129.

130. At all times pertinent hereto, Plaintiff performed his academic duties in a satisfactory manner or would have been able to perform his academic duties with a reasonable accommodation.

**ANSWER:** The University denies the allegations in Paragraph 130.

131. Plaintiff has a handicap within the meaning of Section 504 of the Rehabilitation Act of 1973.

**ANSWER:** Paragraph 131 states a legal conclusion to which no response is required. To the extent a response is required, the University admits that Plaintiff informed the University that he had certain medical conditions that SDS determined rendered Plaintiff eligible for certain accommodations and that on such basis SDS granted Plaintiff accommodations. The University

denies the remaining allegations in Paragraph 131.

132. Plaintiff has a statutory right to be free from discrimination. Plaintiff will be subject to irreparable harm if the Court fails to enjoin further discrimination or craft other relief necessary to make Plaintiff whole. 29 U.S.C.A. 794(a). Plaintiff thus seeks an injunction and reinstatement to the Program to allow Plaintiff to complete his studies.

**ANSWER:** The University admits that Plaintiff seeks the relief referenced in Paragraph 132. The University denies that he is entitled to such relief or any other relief and denies any remaining allegations in Paragraph 132.

133. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered loss of time, earning potential, and loss of tuition and fees, and emotional distress and will suffer further if he is not reinstated to the Medical Program.

**ANSWER:** The University denies the allegations in Paragraph 133.

WHEREFORE, Plaintiff, Robert Hight respectfully requests that this Court enter an order granting Plaintiff the following:

A. Reinstatement to his position as a graduate student in the Program with all rights and privileges;

B. Declaratory relief removing all professionalism complaints from Plaintiff's student files;

C. In the alternative, that Plaintiff be awarded damages for Defendant's illegal conduct; and

D. An award for compensatory damages, liquidated damages, statutory damages, attorneys' fees and costs, and any other relief this Court deems appropriate.

**ANSWER:** The University admits that Plaintiff seeks the aforementioned relief but denies that it engaged in any wrongdoing and denies that Plaintiff is entitled to any such relief or any other relief from the University.

**95. DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

**ANSWER:** The University admits that Plaintiff demands a jury trial. The University notes that this is the second paragraph captioned Paragraph 95 and that this second Paragraph 95 appears

immediately after Paragraph 133.

## AFFIRMATIVE DEFENSES

By including the defenses listed below, the University does not assume or shift the burden of proof with regard to any of Plaintiff's claims beyond what is required under applicable law.

1. Plaintiff has failed, in whole or in part, to state any claim upon which relief may be granted.

2. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

3. Plaintiff's remaining claims under Section 504 and the ADA (Counts IV and V) are barred because the University would have taken the actions it took regardless of Plaintiff's disability.

4. Count IV is barred as to the University because damages are not available under Title III of the ADA, and Plaintiff is not entitled to the injunctive relief he seeks.

5. Plaintiff is not entitled to the injunctive relief he seeks under any of the claims alleged in the Second Amended Complaint.

6. Plaintiff's claims for damages are barred or reduced to the extent that Plaintiff has failed to mitigate his damages, if any.

7. The proximate cause of Plaintiff's injuries, if any, was not the conduct of the University.

8. Any actions taken with regards to Plaintiff were motivated by legitimate, nondiscriminatory, non-retaliatory, and non-pretextual reasons.

9. Emotional distress damages are not available under the causes of action asserted by Plaintiff, as recognized by the Court. *See* Dkt. 34.

10. To the extent Plaintiff is seeking equitable relief, his claims are barred by the doctrine of unclean hands.

11. Plaintiff is barred from pursuing or recovering under certain claims and/or legal theories set forth in the Second Amended Complaint that have been dismissed by this Court previously. *See* Dkt. 34; Dkt. 50.

The University reserves the right to assert and rely upon any additional affirmative defenses that may become available during the proceedings in this matter and hereby reserves its right to amend its answer and assert any such defenses.

Date: May 12, 2025

Respectfully submitted,

/s/ Scott Warner

Scott L. Warner
Mary E. Deweese
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500 (tel.) | (312) 655-1501 (fax)
scott.warner@huschblackwell.com
mary.deweese@huschblackwell.com

***Attorneys for Defendant University of Chicago***

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all registered counsel of record this 12th day of May, including:

Joseph P. Selbka
MacDonald, Lee, & Senechalle, LTD
2300 Barrington Road, Suite 220
Hoffman Estates, Illinois 60169-2034
pleadings@pmllegal.com
(847) 310-0025

s/ Scott Warner

***Attorney for Defendant***
***University of Chicago***